## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| AMY ST. PIERRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-CV-1173-PB |
| | ) | |
| STEPHEN J. GRIFFIN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………ii

PRELIMINARY STATEMENT……………………………………………………1

FACTUAL BACKGROUND ………………………………………………………2

DISCUSSION……………………………………………………...………………..8

I.    LEGAL STANDARD ON MOTION TO DISMISS………………….…………8

II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR A VIOLATION OF
      THE STORED COMMUNICATIONS ACT……………………………………9

III.  PLAINTIFF CANNOT MAINTAIN AN IDENTITY FRAUD CLAIM,
      PARTICULARLY ONE THAT ARISES OUT OF SOMEONE ELSE'S
      IDENTITY ……………………………………………………………………11

IV.   PLAINTIFF HAS FAILED TO STATE A CLAIM FOR INVASION OF
      PRIVACY…………………………….............................................................13

V.    COUNT IV IS PREMISED ON PROTECTED LITIGATION ACTIVITY BY A
      NON-PARTY AND MUST BE DISMISSED…………………………………..14

VI.   THE DEFAMATION CLAIM IN COUNT V FAILS BECAUSE THE
      STATEMENTS IN MR. GRIFFIN'S BOOK ARE NEITHER DEFAMATORY
      NOR OF AND CONCERNING THE PLAINTIFF……………………………..15

      A.    Plaintiff Cannot Sue for Alleged Defamatory Statements About
            Her Husband...……...…………………………………………………..16
      B.    No Reasonable Reader Could Construe Any of the Statements in
            Front Row to Be Non-Fictional Statements "Of and Concerning" the
            Plaintiff………………………………………………………………...17
      C.    Even Accepting the Allegation that Certain Statements were about the
            Plaintiff, such Statements Are Not Reasonably Susceptible to
            Defamatory Meaning………..…………………………………………19

VII.  PLAINTIFF CANNOT MAINTAIN A TORT CLAIM BASED ON
      STATEMENTS MADE IN STATE COURT PROCEEDINGS………………...23

CONCLUSION………………………………………………………………………..24

CERTIFICATE OF SERVICE …………………………………………………………25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 830 F.2d 294 (D.C. Cir. 1987)........ 18

*Andrews v. Earl's Restaurants USA Inc.*, No. 19-CV-817-PB, 2019 WL 6879214
    (D.N.H. Dec. 17, 2019)................................................................................................... 2, 8, 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 8

*Automated Transactions, LLC v. Am. Bankers Ass'n*, 172 N.H. 528 (2019)............................... 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................... 8

*Blanchard v. Claremont Eagle, Inc.*, 95 N.H. 375 (1949) ............................................................ 20

*Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984)............................................ 23

*Bourne v. Arruda*, No. 10-CV-393-LM, 2011 WL 3423332 (D.N.H. Aug. 4, 2011).................. 16

*Bovino v. MacMillan*, 28 F. Supp. 3d 1170 (D. Colo. 2014) .................................................. 9, 11

*Boyle v. Dwyer*, 172 N.H. 548 (2019)..................................................................................... 20, 21

*Breiding v. Eversource Energy*, 939 F.3d 47 (1st Cir. 2019) ........................................................ 8

*Carney v. Town of Weare*, No. 15-CV-291-LM,  2017 WL 680384 (D.N.H. Feb. 21, 2017)...... 15

*Carter–Clark v. Random House, Inc.*, 196 Misc. 2d 1011, 768 N.Y.S.2d 290 (Sup. Ct. N.Y.
    County 2003)................................................................................................................... 18

*Catalfo v. Jensen*, 657 F. Supp. 463 (D.N.H. 1987) .................................................................... 20

*Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993)................................................... 21

*Collins v. Univ. of New Hampshire*, 664 F.3d 8 (1st Cir. 2011)............................................ 19, 20

*Duchesnaye v. Munro Enters., Inc.*, 125 N.H. 244 (1984) ......................................................... 19

*Farmer v. Lowe's Companies, Inc.*, 188 F. Supp. 2d 612 (W.D.N.C. 2001).......................... 22-23

*Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 88 Cal. Rptr. 2d 843 (1999) ................................ 18

*Flamand v. Am. Int'l Grp., Inc.*, 876 F. Supp. 356 (D.P.R 1994)..................................................16

*Flotech, Inc. v. E.I. DuPont de Nemours & Co.*, 814 F.2d 775 (1st Cir. 1987)...........................16

*Garay v. U.S. Bancorp*, 303 F. Supp. 2d 299 (E.D.N.Y. 2004)......................................................11

*Gelineau v. Bank of New York Mellon as Trustee for Certificateholders of CWABS 2004-5*,
 Civ. Action No. 18-12317-RGS, 2019 WL 233513 (D. Mass. Jan. 16, 2019) ...................8

*Hugel v. Milberg, Weiss, Bershad, Hynes & Lerach, LLP*, 175 F.3d 14 (1st Cir. 1999) ........23-24

*Indep. Mech. Contractors, Inc. v. Gordon T. Burke & Sons, Inc.*, 138 N.H. 110 (1993).............19

*Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*,
 390 F. Supp. 2d 479 (D. Md. 2005) ...................................................................................11

*Lambert v. Providence Journal Co.*, 508 F.2d 656 (1st Cir. 1975) ..............................................20

*Lath v. Oak Brook Condo. Owners' Ass'n*, No. 16-CV-463-LM,
 2017 WL 1051001 (D.N.H. Mar. 20, 2017).................................................................11-12

*Legacy Global Sports, L.P. v. John St. Pierre, et al.*,
 No. 218-2019-CV-00198 (Merrimack Cty.)........................................................................ 2

*Levinsky's v. Wal–Mart Stores, Inc.*, 127 F.3d 122 (1st Cir. 1997)..............................................21

*Linda R.S. v. Richard D.*, 410 U.S. 614 (1973) ...........................................................................12

*Lydon v. Local 103, Int'l Bhd. of Elec. Workers*, 770 F.3d 48 (1st Cir. 2014)...........................8-9

*McCabe v. Rattiner*, 814 F.2d 839 (1st Cir. 1987) .......................................................................22

*McGranahan v. Dahar*, 119 N.H. 758 (1979) .......................................................................15, 24

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990)....................................................................21

*Moore v. Mortg. Elec. Registration Sys., Inc.*, 848 F. Supp. 2d 107 (D.N.H. 2012) ....................13

*Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1 (1st Cir. 2011)................................................8

*Partington v. Bugliosi*, 56 F.3d 1147 (9th Cir. 1995)...................................................................21

*Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724 (1st Cir. 1992) .................................21

*Piccone v. Bartels*, 785 F.3d 766 (1st Cir. 2015)..........................................................................21

*Portier v. NEO Tech. Sols.*, No. 3:17-CV-30111-TSH, 2019 WL 7946103
(D. Mass. Dec. 31, 2019)...................................................................................12

*Provencher v. Buzzell–Plourde Associates*, 142 N.H. 848 (1998) ..............................................15

*Remsburg v. Docusearch, Inc.*, 149 N.H. 148 (2003)...........................................................13, 14

*Riley v. Harr*, 292 F.3d 282 (1st Cir. 2002) ..........................................................................17, 21

*Shefts v. Petrakis*, No. 10-CV-1104, 2012 WL 4049509 (C.D. Ill. Sept. 13, 2012)....................10

*Sherman & Co. v. Salton Maxim Housewares, Inc.*, 94 F. Supp. 2d 817 (E.D. Mich. 2000)....9-10

*Steele v. Ritz*, No. W200802125COAR3CV, 2009 WL 4825183
(Tenn. Ct. App. Dec. 16, 2009) .........................................................................18

*Thomson v. Cash*, 119 N.H. 371 (1979) ......................................................................................20

*TLS Mgmt. v. Rodriguez-Toledo*, 260 F. Supp. 3d 154 (D.P.R. 2016) ........................................10

*Tringali v. Attuso*, No. 14-cv-124-LM, 2014 WL 1653274 (D.N.H. Apr. 24, 2014) ..................11

*Watterson v. Page*, 987 F.2d 1 (1st Cir. 1993) .............................................................................8

*Wesley College v. Pitts*, 974 F. Supp. 375 (D. Del. 1997)...........................................................11

*White v. Ortiz*, No. 13-cv-252-SM, 2015 WL 5331279 (D.N.H. Sep. 14, 2015) ........................14

**Statutes**

RSA 638:26....................................................................................................................................12

**Other Authorities**

16B Am. Jur. Pleading and Practice Forms, Libel and Slander, § 3 (rev. ed. 2000) ....................18

https://support.google.com/a/answer/7212025?hl=en ......................................................................4

Restatement (Second) of Torts...............................................................................................14, 20

Stored Communications Act, 18 U.S.C. § 2701 *et seq.* ........................................................1, 9, 10

**Rules**

Fed. R. Civ. P. 12(b)(6).......................................................................................................... *passim*

Defendant Stephen J. Griffin, by his counsel Pollack Solomon Duffy LLP, respectfully submits this memorandum in support of his motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## Preliminary Statement

With her husband tied up in litigation in Delaware Chancery Court and Massachusetts Bankruptcy Court, plaintiff Amy St. Pierre brought this *pro se* action against the person who succeeded her husband as CEO of Legacy Global Sports, LP ("Legacy Global"). In part, Mrs. St. Pierre lacks standing because she seeks to enforce purported rights belonging to, if anyone, her husband. She claims that Mr. Griffin violated the Stored Communications Act, 18 U.S.C. § 2701 *et seq.* ("SCA"), relying on an allegation that Mr. Griffin passed himself off as her husband when logging into a Legacy Global account on Google Drive, but cannot allege that Mr. Griffin lacked authority to access the former CEO's work account. Instead, she alleges that her husband previously used the work account as well for personal purposes and that Mr. Griffin forwarded some documents in which she had an interest, but the SCA does not remotely reach such activity. She also claims that she has been harassed by the litigation activity with her husband, but she has failed to make adequate allegations to elevate the service of a subpoena and filing of an amended complaint as beyond privileged litigation efforts. Finally, she claims that Mr. Griffin defamed her when publishing a fictional novel using a different name for a character with whom she apparently associates, but even if the prominent disclaimer of fiction were not enough, she fails to allege disparaging comments of and concerning her. A reference to her as a "classy lady," even if sarcastic, is not a disparaging non-opinion statement, nor is an opinion of ignorance or deleting files related to pending litigation. Mr. Griffin's work of fiction is protected free speech

under the First Amendment to the United States Constitution and Article 22 of the New

Hampshire Constitution.

**Factual Background[1]**

*Legacy Global Sports and Its Google Drive Account*

Plaintiff is the spouse of non-party John St. Pierre, who co-founded in 2003 a company

that later became known as Legacy Global, a global $50 million business. (Cmplt. ¶ 7.) Mr. St.

Pierre was the president and CEO of Legacy Global until he was fired for cause on November

28, 2018. (Cmplt. ¶¶ 7, 9.) Plaintiff does not allege having been an employee or director of

Legacy Global at any point in time. Subsequently, Legacy Global brought an action captioned

*Legacy Global Sports, L.P. v. John St. Pierre*, *et al.*, No. 218-2019-CV-00198 (Merrimack Cty.)

(the "JSP Action") against Mr. St. Pierre and others in New Hampshire Superior Court, seeking

damages and equitable relief in connection with illegal competitive activities for which Mr. St.

Pierre used Legacy Global's resources while serving as its President and CEO. (*See* Cmplt. ¶ 9;

Exhibit A (Complaint in JSP Action.) During the 15 years that Mr. St. Pierre was involved with

Legacy Global, he used his Legacy Global email address, "jstpierre@legacyglobalsports.com,"

for business and personal purposes, including to share documents and other items via the

company's Google Drive account, which had been created years earlier by a former Legacy

---

[1] Facts recited herein are taken from the factual allegations of the Complaint, which are assumed to be true solely for the purposes of this motion, as well as materials referenced or relied upon in the Complaint and matters of public record of which the Court may take judicial notice. Certain materials on which Mrs. St. Pierre relies, but which she either failed to attach to her Complaint or attached in incomplete form, are enclosed as Exhibits to the December 28, 2020 Declaration of Phillip Rakhunov, filed herewith. In particular, Mrs. St. Pierre relies on statements in Mr. Griffin's book and on allegations and statements from various submissions made by Legacy Global Sports in a New Hampshire state court proceeding brought against her husband, but she does not provide the Court with copies of most of those materials. In addition, plaintiff relies on Legacy Global's opposition to her efforts to quash a state court subpoena in another action, but supplies only incomplete pages from an exhibit (*see, e.g.,* Cmplt. ¶¶ 23-27 & Exhs. 4-5), which is supplemented herein by the complete submission. Under these circumstances, the Court may properly consider these materials on a 12(b)(6) motion without converting it to a motion for summary judgment. *See Andrews v. Earl's Restaurants USA Inc.*, No. 19-CV-817-PB, 2019 WL 6879214, at *2 (D.N.H. Dec. 17, 2019).

Global user, Skip Schultz, and to which Mrs. St. Pierre had been granted access via her

"amystp25@gmail.com" email account. (Cmplt. ¶¶ 8, 23.)

As alleged, after Legacy Global terminated Mr. St. Pierre on November 28, 2018, he

transitioned administration access **to Legacy Global's systems** over to Mr. Griffin, which then

gave Mr. Griffin, as the new President and CEO, access to John St. Pierre's former Legacy

Global email account "jstpierre@legacyglobalsports.com." (*Id.* ¶ 10.)

The Complaint alleges supposedly improper positions taken in response to an effort by

Mrs. St. Pierre to quash a subpoena in the JSP Action. Exhibits 4 and 5 to Mrs. St. Pierre's

Complaint are excerpts of a compilation of screenshots of Mrs. St. Pierre's activity in Legacy

Global's Google Drive account, which Legacy Global had submitted as an exhibit to a

submission in the JSP Action, in opposition to discovery motions by the defendants and by Mrs.

St. Pierre as a recipient of a non-party subpoena. (*See* Cmplt. ¶ 23; Exhibit B (Legacy Global's

Combined Opposition to the Motions by JSP NAH and ASP to Quash) at B_16-B_50.) These

documents, on which Mrs. St. Pierre inexplicably appears to rely, demonstrate that the Google

Drive account that Mr. Griffin accessed as CEO and President of Legacy Global belongs <u>not</u> to

Amy St. Pierre, but to *Legacy Global*. (*See* Cmplt., Exhs. 4 & 5; Exh. B at B_16-B_50.) Not only

does each forensically verified screenshot bear the Legacy Global logo at the top right, but the

forensic PageVault Webpage Capture certifications associated with each screenshot confirm that

those screenshots came from a Google Drive account created by a former Legacy Global user

"sschultz@legacyglobalsports.com - Google Drive." (*See id.*) Indeed, Mrs. St. Pierre has not

made any actual allegations of fact to the contrary.

Nonetheless, Mrs. St. Pierre alleges that Mr. Griffin, somehow "posing as her husband,"

used Mr. St. Pierre's former Legacy Global email address and password to access Mrs. St.

Pierre's personal documents shared previously from the Legacy Global Google Drive account. (Cmplt. ¶ 12.) This allegation is limited in bearing by an allegation two paragraphs earlier that her husband gave Legacy Global, and therefore Mr. Griffin as the successor CEO, the access about which she complains. (*Id.* ¶ 10.) Importantly, Mrs. St. Pierre does not claim that she was deprived of access to any of her documents, or that Mr. Griffin logged into Legacy Global accounts without authority.

Instead, Mrs. St. Pierre alleges that a screenshot from March 2019, showed activity of other users of the Google Drive at issue (*see* Cmplt., Exh. A), and relies on excerpts from Google's help files in her Complaint. (Cmplt. ¶¶ 14-15.) Mrs. St. Pierre fails to allege facts from which to infer that Mr. Griffin did anything other than log into a Legacy Global account and forward certain documents accessible within it.[2]

In any event, the Complaint also confirms that neither the Google Drive nor the files stored there belonged to Mrs. St. Pierre. For example, she alleges that when she made efforts to delete all files from the Google Drive at issue and to restrict access to others at Legacy Global, she was not successful in doing so because, as Google support explained to Mrs. St. Pierre, she could delete only "items she owned on her personal Google Drive." (*Id.* ¶¶ 13, 14.) In other words, the fact that Mrs. St. Pierre did not have rights to permanently delete content from the Google Drive account at issue confirms that this account did not belong to her.

Mrs. St. Pierre further alleges that she subsequently filed criminal complaints with the local police department and the FBI, but to her disappointment, those complaints were not acted upon by law enforcement. (*Id.* ¶¶ 16-17.)

---

[2] *See* https://support.google.com/a/answer/7212025?hl=en ("You can use shared drives in Google Drive to store, search, and access files with a team. Shared drive files belong to the team instead of an individual. Even if members leave, the files stay in place so your team can keep sharing information and work anywhere, from any device.")

She then alleges that in "retaliation" for her bringing this matter to law enforcement authorities (which Mr. Griffin is not even alleged to have known about at the time), Mr. Griffin took actions against her in the JSP Action, by accusing her of deleting files on Legacy Global's Google Drive, serving a subpoena on her in the JSP Action, and engaging in motion practice. (*Id.* ¶¶ 18-23.) A complete copy of Legacy Global's papers to which she refers in her Complaint accompanies the present motion and is available to the Court. (Exhibits A & B.)

The documents attached as Exhibits 4 and 5 to the Complaint, and the more complete version included in Exhibit B hereto, undermine fatally any potential inference that Mr. Griffin lacked authority from Legacy Global to access its accounts. At most, Mrs. St. Pierre's allegations can be read to suggest that John St. Pierre shared access to Legacy Global's Google Drive with Mrs. St. Pierre while serving as the CEO/President of Legacy Global over a 15-year period. Indeed, the Court may take judicial notice that Mr. St. Pierre's use of Legacy Global's resources for his and his co-conspirators' personal gains was a key aspect of Legacy Global's claims against Mr. St. Pierre in the JSP Action. (*See, e.g.,* Exhibit A, ¶¶ 42-72.) Tellingly, the examples that Mrs. St. Pierre provides of files that she claims belong to her are documents concerning the Seacoast Spartans, the Seacoast Performance Academy, and the development of a large-scale dormitory, the Seacoast Sports Village, which are the very activities underlying Legacy Global's claims in the JSP Action about Mr. St. Pierre using Legacy Global's resources for his own competitive advantage. (Compare Cmplt. ¶ 12(a)-(d), with Exhibit A, ¶¶ 2, 42-72.)

By June 2020, several months into industry-crippling COVID-19 pandemic, Legacy Global filed for bankruptcy protection. (Cmplt. ¶ 29.)

### *Mr. Griffin's Fictional Novel*

On November 1, 2020, Mr. Griffin published a fictional novel called "Front Row Seat:

Greed and Corruption in a Youth Sports Company" ("Front Row"). (*Id.* ¶ 30; Exhibit C.) Mrs. St. Pierre alleges in a conclusory manner that the book was written "about" her and her husband. Mrs. St. Pierre does not attach even key pages from the book to her Complaint, and does not describe any context of the book on which she bases her conclusory allegation that the book and statements in it are "about" her or her husband. She simply ignores the plain fact that Mr. Griffin's book does not mention her name, her husband's name, or even Legacy Global, but instead contains the following prominent disclaimer:

> The story, all names, characters, and incidents portrayed in this production are fictitious. No identification with actual persons (living or deceased), places, buildings, products or services is intended or should be inferred.

> If you identify with the personal attributes of certain questionable characters in this book, I would encourage you to reassess your code of ethics.

(Exhibit C.)

Mrs. St. Pierre seeks to overcome this disclaimer through a vague allegation that, after seeing that Front Row was being promoted by Mr. Griffin on LinkedIn, she "noticed that people were viewing her husband's profile, as well as others mentioned in the book" and that "those same people were viewing her profile." (Cmplt. ¶ 31.) Mrs. St. Pierre does not, however, allege that any of those "people" expressed or had an understanding or belief that the book was a non-fiction statement about her or even her husband. She claims that she suspended her LinkedIn account to "prevent further damage to her professional career as an Engineering and IT consultant after being associated with the book," but does not allege any facts as to what, if any, damage she had sustained or even whether anyone in particular (other than plaintiff herself) "associated" her with the book.

6

The following is the entirety of the alleged defamatory statements from Mr. Griffin's book that Mrs. St. Pierre alleges, without context from the book, were about her (as opposed to concerning her husband or others):

- The book referred to the character with whom she associates "sarcastically" as "a classy lady" (*id.* ¶ 30);

- Mr. Griffin "couldn't fathom the nerve or ignorance of this woman" (*id.*);

- the character accessed the company's Google Drive account and deleted files that were evidence of competitive activity (*id.*);

- Mr. Griffin was told by "Devlin" (the name of a character in the book that Mrs. St. Pierre associates with her husband) that Devlin's wife was "yelling at him" and that things appeared "not good" between him and his wife (*id.* ¶ 33); and,

- Devlin's wife (with whom plaintiff associates) "had just retired" (*id.* ¶ 34).

Even taking as true Mrs. St. Pierre's conclusion that Mr. Griffin's book is "about" the topics she claims, none of the allegedly defamatory statements is both disparaging and directed towards the character with whom plaintiff allegedly identifies, but is directed primarily toward others, such as "Devlin," whom Mrs. St. Pierre associates with her husband. (*See id.* ¶¶ 35-39.)

***Supposed Retaliation and Harassment Is Comprised of Litigation Activity***

Finally, Mrs. St. Pierre labels as "retaliation and harassment" the service of and efforts to enforce subpoenas by *Legacy Global* in the JSP Action, in which Mr. Griffin, individually, was not a party. In the JSP Action, Legacy Global took the position that "[u]pon information and belief, documents belonging to Legacy Global have been accessed, modified, and deleted by a Google user in the name of St. Pierre's spouse in an effort to hide certain materials from Legacy Global as recently as in June and July 2019, during the pendency of this litigation." (Cmplt. ¶¶ 1-2, 19-28; Exhibit A, ¶ 83.)

**Discussion**

## I.     LEGAL STANDARD ON MOTION TO DISMISS.

Under Rule 12(b)(6), generally this Court takes factual "allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two basic principles guide this analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Thus, in evaluating the pleadings, the Court removes any conclusory statements from the complaint, then credits as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations to determine if the claim is plausible. *Andrews*, 2019 WL 6879214, at *2 (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)).

The Court "may also consider facts subject to judicial notice, implications from documents incorporated into the complaint, and concessions in the complainant's response to the motion to dismiss." *Id.* (citing *Breiding v. Eversource Energy*, 939 F.3d 47, 49 (1st Cir. 2019) (internal quotation marks omitted)); *see also Gelineau v. Bank of New York Mellon as Trustee for Certificateholders of CWABS 2004-5*, Civ. Action No. 18-12317-RGS, 2019 WL 233513, at *2 n. 4 (D. Mass. Jan. 16, 2019) (quoting *Lydon v. Local 103, Int'l Bhd. of Elec. Workers*, 770 F.3d 48, 53 (1st Cir. 2014) for the proposition that "a judge can mull over 'documents

incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'").

For the reasons detailed below, plaintiff's Complaint fails to state a plausible claim for relief and must be dismissed.

## II. THE COMPLAINT FAILS TO STATE A CLAIM FOR A VIOLATION OF THE STORED COMMUNICATIONS ACT.

The first claim fails to state a violation of the SCA, because the Complaint fails to make adequate allegations that Mr. Griffin's access to the Google Drive at issue, as Legacy Global former CEO, was unauthorized. In addition, forwarding files that are accessed with or without authority cannot constitute a violation of the SCA. Importantly, Mrs. St. Pierre does not allege that she has been deprived of access to any of her files. Nor does she allege some legal right she had to limit Legacy Global's access to documents found in its Google Drive account.

The SCA prohibits conduct whereby a person knowingly and intentionally, without authorization, "obtains, alters, or prevents authorized access" to a facility through which an electronic communication service is provided. *See Bovino v. MacMillan*, 28 F. Supp. 3d 1170, 1177-79 (D. Colo. 2014) (quoting 18 U.S.C. § 2701(a)). Under the SCA, a person is not liable for conduct that is "authorized ... by a user of that service with respect to a communication of or intended for that user." 18 U.S.C. § 2701(c)(2); *see also Bovino*, 28 F. Supp. 3d at 1177 (dismissing SCA claim where access to an email account was authorized).

Moreover, the SCA does not prohibit obtaining, forwarding or altering emails or other electronic content without authorization, but is limited obtaining or altering *access* without authorization. *Bovino*, 28 F. Supp. 3d at 1177; *Sherman & Co. v. Salton Maxim Housewares, Inc.*, 94 F. Supp. 2d 817, 820 (E.D. Mich. 2000). Thus, the SCA prohibits unauthorized access, not "the disclosure or use of information gained without authorization." *Id.*

In her Complaint, Mrs. St. Pierre acknowledges, as she must, that Mr. Griffin's access to the Google Drive account at issue was made through a *Legacy Global* email account used by the former CEO while with Legacy Global, from which access passed back solely to Legacy Global after Mr. St. Pierre's termination in November 2018. (*See* Cmplt. ¶ 10 ("After John was terminated on Nov 28, 2018, he had to transition administration access to Legacy's systems over to Griffin, which then gave Griffin access to John's Legacy email account 'jstpierre@legacyglobalsports.com.'").) Mrs. St. Pierre's allegation of *authorized* access precludes any liability under the SCA, and by itself requires dismissal of Count I. *See TLS Mgmt. v. Rodriguez-Toledo*, 260 F. Supp. 3d 154, 161 (D.P.R. 2016) (a party cannot be liable under the SCA for accessing someone else's Dropbox where the administrator of the Dropbox account granted them access); *Shefts v. Petrakis*, No. 10-CV-1104, 2012 WL 4049509, at *1 (C.D. Ill. Sept. 13, 2012) (authorization to access a "facility" can be given by the entity providing the electronic communications service, which includes a private employer that provides email service to its employees; "[i]f Defendants were authorized to access Plaintiff's communications, there was no SCA violation.").

Moreover, Mrs. St. Pierre's (false) allegations that Mr. Griffin made an unauthorized display, use, disclosure or copy of her data, altered or tampered with data, and took that data for his personal use, fall outside the scope of conduct prohibited by the SCA, which also requires dismissal of Count I. *See TLS Mgmt.*, 260 F. Supp. 3d at 163 (holding that allegations relating to the misuse of confidential information are inadequate to state a claim under the SCA, which prohibits only unauthorized access and not the misappropriation or disclosure of information); *Bovino*, 28 F. Supp. 3d at 1177 (explaining that the SCA is violated when the trespasser gains access to information to which he is not entitled to see, not when the trespasser uses the

10

information in an unauthorized way); *Wesley College v. Pitts*, 974 F. Supp. 375, 389 (D. Del. 1997) ("a person who does not provide an electronic communication service ... can disclose or use with impunity the contents of an electronic communication"); *Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 496 (D. Md. 2005) ("Section 2701 outlaws illegal entry, not larceny" (citation omitted)).

For these reasons, Count I should be dismissed.

### III.   PLAINTIFF CANNOT MAINTAIN AN IDENTITY FRAUD CLAIM, PARTICULARLY ONE THAT ARISES OUT OF SOMEONE ELSE'S IDENTITY.

Mrs. St. Pierre's identity fraud claim in Count II is premised entirely on Mr. Griffin allegedly having "posed as Mrs. St. Pierre's husband, John St. Pierre, using John's personal identifying information of profile photo of John, email address (jstpierre@legacyglobalsports.com) and password …." (Cmplt. ¶ 45.) Count II fails for three independently sufficient reasons.

First, no common law cause of action for identity fraud exists in New Hampshire, and no private cause of action for identity theft is available to a plaintiff under either the New Hampshire identity fraud/theft statute, RSA 638:26, or its federal counterpart, 18 U.S.C.A. § 1028. *See Andrews,* 2019 WL 6879214, at \*2 (no private cause of action under the federal identity theft statute); *Garay v. U.S. Bancorp*, 303 F. Supp. 2d 299 (E.D.N.Y. 2004) (finding no private right of action under the federal criminal identity theft statute, 18 U.S.C.A. § 1028); *Tringali v. Attuso*, No. 14-cv-124-LM, 2014 WL 1653274, at \*5 (D.N.H. Apr. 24, 2014) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution of another")); *see also Lath v. Oak Brook Condo. Owners' Ass'n*, No. 16-CV-463-LM, 2017 WL 1051001, at \*22 (D.N.H. Mar. 20, 2017) (dismissing

11

statutory claim because the statute at issue "is a part of the New Hampshire criminal code and, as such, does not provide a private right of action.").

Second, Mrs. St. Pierre has expressly alleged that her husband, as Legacy Global's former CEO, turned over access to his Legacy Global email account to Mr. Griffin as his successor. Putting aside Mr. St. Pierre's lack of ownership or privacy interest in an email account with his former employer, Mrs. St. Pierre's admission that her husband provided Mr. Griffin access to his Legacy Global email account would eliminate her identify fraud claim (if a right to bring one existed) based on such access as a matter of law and logic.

Finally, Mrs. St. Pierre cannot maintain a claim based on an allegation that someone else was a victim of an alleged "identify fraud." Even if a private right of action for identity fraud existed and even if Mrs. St. Pierre could somehow allege facts that come close to "identity fraud" as a result of Mr. Griffin's authorized access into his predecessor CEO's work email account, such a claim could be brought only by a victim, here purportedly Mr. St. Pierre, and not by his spouse. *See, e.g., Portier v. NEO Tech. Sols.*, No. 3:17-CV-30111-TSH, 2019 WL 7946103, at *5 (D. Mass. Dec. 31, 2019) ("An individual ***whose identity was stolen by someone*** who gained unauthorized access to the person's PII – particularly his or her Social Security number – and used the stolen identity has suffered an actual injury for purposes of standing." (emphasis added), *report and recommendation adopted*, No. 3:17-CV-30111, 2020 WL 877035 (D. Mass. Jan. 30, 2020).) Here, the Complaint does not allege any fraud or "identity fraud" directed towards Mrs. St. Pierre, but acknowledges that her husband turned over access to his Legacy Global email account upon his termination. Even if there were something fraudulent about the manner in which Mr. Griffin obtained access to Mr. St. Pierre's email account (though there was not), any claim for such conduct could be brought only by Mr. St. Pierre. *See Moore v. Mortg. Elec.*

*Registration Sys., Inc.*, 848 F. Supp. 2d 107, 131 (D.N.H. 2012) (plaintiff cannot demonstrate

fraud based on a fraudulent misrepresentation made to a third party "when that statement was

relied upon solely by others, even if that reliance forms a link in a chain of events that ends up

causing harm to the plaintiff").

    For these reasons, the identity fraud claim in Count II must be dismissed.

**IV.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR INVASION OF PRIVACY.**

    Mrs. St. Pierre's invasion of privacy claim in Count III is premised on her facially

incorrect assumption that the Google Drive account at issue belongs to her, rather than Legacy

Global. As explained above, her own allegations and the documents before the Court on this

motion conclusively establish that the Google Drive account at issue belonged to Legacy Global.

Likewise, she has failed to even identify any particular document observed by Mr. Griffin in

which she held a privacy interest that has been specifically invaded in a way that caused her

harm. For that reason alone, Count III must be dismissed.

    In any event, Mrs. St. Pierre has failed to state a claim under the narrow confines of the

invasion of privacy tort recognized under New Hampshire law. In Count III, it appears that Mrs.

St. Pierre may be seeking to assert the tort of invasion of privacy by appropriation of an

individual's name or likeness, which the New Hampshire Supreme Court recognized in

*Remsburg v. Docusearch, Inc.*, 149 N.H. 148, 157 (2003). The *Remsburg* court adopted the view

of the Restatement (Second) of Torts as follows: "The interest protected by the rule … is the

interest of the individual in the exclusive use of his own identity, in so far as it is represented by

his name or likeness, and in so far as the use may be of benefit to him or to others." *Remsburg*,

149 N.H. at 157 (quoting Restatement (Second) of Torts § 652C cmt *a* at 381).

    As this Court has explained, liability under the invasion of privacy tort is

intended to protect the value of an individual's notoriety or skill. Thus, … in order that there may be liability under the rule stated in this Section, the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness. The misappropriation tort does not protect one's name *per se*; rather it protects the value associated with that name.

Appropriation is not actionable if the person's name or likeness is published for purposes other than taking advantage of the person's reputation, prestige or other value associated with the person. Thus, appropriation occurs most often when the person's name or likeness is used to advertise the defendant's product or when the defendant impersonates the person for gain.

*White v. Ortiz*, No. 13-cv-252-SM, 2015 WL 5331279, at *4 (D.N.H. Sep. 14, 2015) (quoting *Remsburg*, 149 N.H. at 157-58).

Here, plaintiff does not allege that Mr. Griffin used her name or likeness in order to take advantage of her skill or notoriety, nor that Mr. Griffin appropriated her "reputation, prestige, social or commercial standing, public interest or other value" of her name. To the extent Mrs. St. Pierre invokes some broader form of privacy rights, she does so without specificity of what Mr. Griffin accessed and how that invaded her rights in a way that harmed her. In other words, Mrs. St. Pierre's vague (and false) allegation that Mr. Griffin somehow intruded on her "private affairs" is insufficient to state a claim for invasion of privacy under New Hampshire law.

## V.   COUNT IV IS PREMISED ON PROTECTED LITIGATION ACTIVITY BY A NON-PARTY AND MUST BE DISMISSED.

It is unclear what common law or statutory cause of action plaintiff seeks to bring in Count IV, vaguely claiming "Retaliation, Intimidation, and Interference" in connection with subpoenas issued to Mrs. St. Pierre and court filings made *by Legacy Global* in the JSP Action. For example, she alleges no employment relationship in which actionable retaliation could occur, nor identifies any business or contractual relationship with which Mr. Griffin allegedly

14

interfered. In any event, Count IV fails on its face because it is premised on privileged litigation conduct by someone other than the defendant here.

Under New Hampshire law, "[s]tatements made in the course of judicial proceedings constitute one class of communications that is privileged from liability in civil actions if the statements are pertinent or relevant to the proceedings." *Carney v. Town of Weare*, No. 15-CV-291-LM, 2017 WL 680384, at *14 (D.N.H. Feb. 21, 2017) (quoting *Provencher v. Buzzell–Plourde Associates*, 142 N.H. 848, 853 (1998)). This rule "reflects a determination that the potential harm to an individual is far outweighed by the need to encourage participants in litigation, parties, attorneys, and witnesses, to speak freely in the course of judicial proceedings." *McGranahan v. Dahar*, 119 N.H. 758, 763 (1979). Count IV appears to arise solely and expressly from Legacy Global's litigation activities in the JSP Action, including serving discovery subpoenas, and submitting Mr. Griffin's declaration submitted in support of Legacy Global's motion for an injunction. Moreover, while Mrs. St. Pierre did successfully limit the discovery sought by Legacy Global in the JSP Action, she did not obtain any further discovery remedies or sanctions in that action, but has instead brought a vague claim for relief in Count IV in this case, contrary to controlling New Hampshire law.

Count IV should therefore be dismissed.

## VI.   THE DEFAMATION CLAIM IN COUNT V FAILS BECAUSE THE STATEMENTS IN MR. GRIFFIN'S BOOK ARE NEITHER DEFAMATORY NOR OF AND CONCERNING THE PLAINTIFF.

In Count V, Mrs. St. Pierre labels her claim as sounding in defamation with respect to statements made in Mr. Griffin's book, primarily based on alleged accusations of criminal conduct against her husband. (*See* Cmplt. ¶ 57.) Mrs. St. Pierre's defamation claim in Count V fails because those alleged defamatory statements are not of and concerning the plaintiff, are not

susceptible to a defamatory meaning, and she has not pled any facts to support her conclusion that any such statements were made with malice. The First Amendment to the United States Constitution and Article 22 of the New Hampshire Constitution provide far greater protection over works of fiction than would permit the claim here to survive this dispositive motion.

### A.  Plaintiff Cannot Sue for Alleged Defamatory Statements About Her Husband.

As explained in Point VI.B, *infra*, Mrs. St. Pierre has failed to allege that a reasonable reader of Front Row has associated a character in the book with a non-fictional portrayal of her. Even if she could allege that a reader associated the "Devlin" character with her husband, however, she cannot maintain a defamation claim based on statements that were made about her husband.

A defamatory statement, in order to state a claim, must be "specifically of and concerning" the plaintiff. *Flotech, Inc. v. E.I. DuPont de Nemours & Co.*, 814 F.2d 775, 778 n. 3 (1st Cir. 1987); *Flamand v. Am. Int'l Grp., Inc.*, 876 F. Supp. 356, 372-73 (D.P.R 1994) (granting motion to dismiss where alleged defamatory statements were "of and concerning" plaintiff's husband allegedly having an affair, but not of plaintiff, his wife); *Bourne v. Arruda*, No. 10-CV-393-LM, 2011 WL 3423332, at *2 (D.N.H. Aug. 4, 2011) ("Because Arruda's comments cannot reasonably be construed in context to apply to Bourne, Bourne's defamation claim based on those comments is not viable.").

Here, even if Mr. Griffin's book could be construed to be a non-fictional account of Legacy Global and its constituents despite the express disclaimer otherwise, the vast majority of the allegedly defamatory statements are not about the plaintiff, but about her husband. (*See* Cmplt. ¶ 57 (defamatory statements include that "Mrs. St. Pierre's **husband** committed the crime of 'bank fraud', fraudulently falsified and 'doctored' Legacy's financial statement, and engaged

in other criminal conduct including stalking, embezzling money from Legacy, and might be 'going to jail.'" (emphasis added).)

Thus, any aspect of plaintiff's defamation claim that is premised on statements made of and concerning individuals other than Mrs. St. Pierre, such as those about the character she associates with her husband, must be dismissed.

### B. No Reasonable Reader Could Construe Any of the Statements in Front Row to Be Non-Fictional Statements "Of and Concerning" the Plaintiff.

More broadly, Mrs. St. Pierre defamation claim based on Mr. Griffin's book must be dismissed because none of the statements about which she complains was made about the plaintiff (or her husband). There is no dispute, and Mrs. St. Pierre does not allege otherwise, that neither Mrs. St. Pierre, nor her husband, nor Legacy Global or any of its former employees are mentioned by name in Mr. Griffin's book. Mrs. St. Pierre also ignores that the first page of Front Row includes the following disclaimer:

> The story, all names, characters, and incidents portrayed in this production *are fictitious*. *No identification with actual persons* (living or deceased), places, buildings, products or services *is intended or should be inferred*.

> If you identify with the personal attributes of certain questionable characters in this book, I would encourage you to reassess your code of ethics.

(Exhibit C (emphasis added).)

The First Amendment to the United States Constitution places limits on the application of the state law of defamation. *Riley v. Harr*, 292 F.3d 282, 288 (1st Cir. 2002). The First Amendment provides considerable protection to works of fiction, such as the Front Row, including when such works are designed to convey a political commentary or satirical depictions of events. As one court explained:

> It is absolutely crucial that, for the purposes of evaluating first amendment claims, courts distinguish analytically between intentionally false statements of facts on the one hand

17

and narrative fiction on the other. The analytic distinction, of course, is that a statement of fact purports to be true, even when it is false, while narrative fiction does not purport to describe events that have actually happened. Narrative fiction, unlike an intentionally false statement of facts, deserves considerable first amendment protection. Indeed, some forms of political expression, like satire, often cannot be fully realized except in the form of narrative fiction. Famous examples include, Swift's *Gulliver's Travels*, Robert Penn Warren's *All the King's Men*, and Edwin O'Connor's *The Last Hurrah*, not to mention Garry Trudeau's daily *Doonesbury* comic strip.

*Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 830 F.2d 294, 306 (D.C. Cir. 1987).

"Where the alleged defamatory statement does not contain any direct reference to the plaintiff, the complaint must contain appropriate allegations to show such application." 16B Am. Jur. Pleading and Practice Forms, Libel and Slander, § 3, at 116 (rev. ed. 2000); *see also Carter–Clark v. Random House, Inc.*, 196 Misc. 2d 1011, 1014-15, 768 N.Y.S.2d 290, 294 (Sup. Ct. N.Y. County 2003) (different names and occupations and "very sketchy physical characterization" held insufficient to establish the "of and concerning" element); *Steele v. Ritz*, No. W200802125COAR3CV, 2009 WL 4825183, at *3 (Tenn. Ct. App. Dec. 16, 2009) (no defamation where the alleged defamatory statement did not expressly mention plaintiffs, or refer to the plaintiffs by reasonable implication, or that the statement was made 'of and concerning' the plaintiffs); *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1404 (1999) (finding that plaintiff could not constitutionally establish liability, because plaintiff could not prove that the contested statements were "of and concerning" him by clear implication).

In the Complaint, Mrs. St. Pierre does not allege any facts to support her bare conclusion that a reader of Front Row would reasonably believe that the statements are non-fictional statements made about her (or her husband). (*See* Cmplt. ¶ 2 (alleging book was "written about John, Mrs. St. Pierre, and several others"); ¶ 30 ("[t]here were several sections where he writes about Mrs. St. Pierre").) Mrs. St. Pierre simply ignores the plain fact that the book does not mention her, or her husband, or Legacy Global, and specifically disclaims that the events and

18

characters described in the book are intended to be viewed as non-fiction. The insufficient

entirety of factual allegations in the Complaint concerning the book's effect on the reading

public is that, after seeing Mr. Griffin promote the book on LinkedIn, Mrs. St. Pierre noticed that

some unspecified "people" were viewing her husband's profile and "those same people were

viewing her profile." (Cmplt. ¶ 31.) She does not allege the identity of any of these "people" or

allege that any of those "people" held or expressed a belief that the characters in the book were

meant to portray a purely non-fictional account of her and her husband.

Accordingly, Mrs. St. Pierre has failed to sufficiently that a reader could hold a

reasonable belief that the statements concerning fictional characters in Mr. Griffin's book are "of

and concerning" the plaintiff, which requires dismissal of Count V.

### C. Even Accepting the Allegation that Certain Statements were about the Plaintiff, such Statements Are Not Reasonably Susceptible to Defamatory Meaning.

Even if the Court were to accept Mrs. St. Pierre's conclusory assertion that the statements

identified in the Complaint from Mr. Griffin's book are about Legacy Global and the St. Pierres,

she has failed to state a defamation claim because none of the statements at issue is reasonably

susceptible to defamatory meaning.

Under New Hampshire law, defamation requires proof that the defendant failed to

exercise reasonable care in publishing, without a valid privilege, a false and defamatory

statement of fact about the plaintiff to a third party. *Collins v. Univ. of New Hampshire*, 664 F.3d

8, 19 (1st Cir. 2011) (citing *Indep. Mech. Contractors, Inc. v. Gordon T. Burke & Sons, Inc.*, 138

N.H. 110 (1993)). "[W]ords alleged to be defamatory must be read in the context of the

publication taken as a whole." *Duchesnaye v. Munro Enters., Inc.*, 125 N.H. 244, 249 (1984)

(internal citations omitted). Even if a statement is false, a qualified privilege exists if it was

published on a lawful occasion, in good faith, for a justifiable purpose, and with a belief, founded

on reasonable grounds of its truth, provided that the statement is not made with actual malice. *Collins*, 664 F.3d at 19. For a statement to be actionable, the challenged statement must be capable of communicating a defamatory meaning. *Boyle v. Dwyer*, 172 N.H. 548, 554 (2019) (citing *Thomson v. Cash*, 119 N.H. 371, 373 (1979)).

In determining whether a given statement is capable of communicating a defamatory meaning, the Court decides, as a matter of law: (1) whether the statement was reasonably capable of conveying the particular meaning ascribed to it by the plaintiff; and (2) whether that meaning is defamatory in character. *Id.* (citing Restatement (Second) of Torts § 614 cmt. *b* at 311 (1977)); *see also Blanchard v. Claremont Eagle, Inc.*, 95 N.H. 375, 378 (1949); *Catalfo v. Jensen*, 657 F. Supp. 463, 466 (D.N.H. 1987) (reporter's statements that plaintiff was "sleazy," that "maybe there was a mickie in the Canadian Club" and comparing plaintiff to a character in a fictional movie were not defamatory as a matter of law).

Words may be found to be defamatory only if they hold the plaintiff up to "contempt, hatred, scorn or ridicule, or tend to impair the plaintiff's standing in the community." *Boyle*, 172 N.H. at 557. "No mere claim of the plaintiff can add a defamatory meaning where none is apparent from the publication itself." *Id.* The complained-of language must tend to "lower the plaintiff in the esteem of any substantial and respectable group, even though it may be quite a small minority." *Id.* In addition, the defamatory meaning must be one that could be ascribed to the words by persons of common and reasonable understanding. *Id.* An action in libel cannot be maintained on an artificial, unreasonable, or tortured construction imposed upon innocent words, nor when only "supersensitive persons, with morbid imaginations" would consider the words defamatory. *Catalfo*, 657 F. Supp. at 465-66 (citing *Lambert v. Providence Journal Co.*, 508 F.2d 656, 659 (1st Cir. 1975).

At the same time, "even a provably false statement is not actionable ... when an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts." *Riley*, 292 F.3d at 289 (quotation omitted); *Piccone v. Bartels*, 785 F.3d 766, 772-73 (1st Cir. 2015) (explaining that, even if statement that plaintiff was "unprofessional" was provably false, it was not actionable because defendant disclosed the facts upon which he based his statement). When the speaker discloses the facts upon which he bases his statement, "no reasonable reader would consider the term anything but the opinion of the [speaker] drawn from the circumstances related." *Automated Transactions, LLC v. Am. Bankers Ass'n*, 172 N.H. 528, 534 (2019) (citing *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993)); *id.* (("[t]he courts of appeals that have considered defamation claims after Milkovich have consistently held that when a speaker outlines the factual basis for his conclusion, his statement is" not actionable for defamation; citing cases") quoting *Partington v. Bugliosi*, 56 F.3d 1147, 1156 (9th Cir. 1995)).

In addition, the United States Supreme Court has recognized that opinion speech is protected by the "constitutional limits on the type of speech which may be the subject of state defamation actions." *Piccone*, 785 F.3d at 771 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 16 (1990)). Thus, where an expressive phrase, though pejorative and unflattering, cannot be objectively verified, it belongs squarely in the category of protected opinion and, therefore, cannot be defamatory. *Boyle*, 172 N.H. at 557 (citing *Piccone*, 785 F.3d at 772 (statement that conduct was "unprofessional" were too subjective and imprecise to be defamatory)); *Levinsky's v. Wal–Mart Stores, Inc.*, 127 F.3d 122, 130 (1st Cir. 1997) (rejecting defamation claim based on description of clothing store as "trashy"); *Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724, 728 (1st Cir. 1992) (holding that newspaper's critique of a theater production as "fake" and

"phony" could not be proven true or false, "since those adjectives admit of numerous interpretations"); *McCabe v. Rattiner*, 814 F.2d 839, 842-43 (1st Cir. 1987) (concluding that characterization of condominium sales pitch as a "scam" was not actionable because the term lacks a precise "core meaning").

Here, even if plaintiff had alleged that any of the statements about the wife of "Devlin" were non-fictional statements about her (and for the reasons explained above she has not), none of those statements comes close to being defamatory. The entirety of the complained-of statements is that:

- The book referred to her "sarcastically" as "a classy lady" (Cmplt. ¶ 30);

- Mr. Griffin "couldn't fathom the nerve or ignorance of this woman" (*id.*);

- she deleted files that were evidence of competitive activity (*id.*);

- Mr. Griffin was told by "Devlin" (the name of a character in the book that plaintiff alleges to be John) that he had an awful night dealing with his wife who was yelling at him and that things were "not good" between him and his wife (*id.* ¶ 33); and

- that she "had just retired" (*id.* ¶ 34).

First, the statements that someone is a "classy lady" or has some type of "nerve or ignorance…," even if made sarcastically, are on their face, protected subjective statements of opinion by the writer and therefore cannot constitute defamation. Similarly, a hearsay statement relaying the opinion of "Devlin" that things were "not good" between him and his wife, even if false, is at most an inaccurate but vague depiction of *Devlin's* opinion about his marriage, for which Mrs. St. Pierre has no right to sue.

Second, the statement that an individual "had just retired," even if inaccurate, could not possibly have the effect of holding plaintiff up to "contempt, hatred, scorn or ridicule, or tend to impair the plaintiff's standing in the community." *See Farmer v. Lowe's Companies, Inc.*, 188 F.

22

Supp. 2d 612, 616 (W.D.N.C. 2001) (granting motion to dismiss defamation claims because "[t]he statement that Plaintiff had retired from the Board of Directors does not fit those requirements. This statement, without explanation, is not defamatory. It does not hold Plaintiff up to public hatred, contempt or ridicule or cause her to be shunned or avoided.").

Finally, the statement that plaintiff deleted files from a Google Drive account is not defamatory. Again, assuming *arguendo* that plaintiff has adequately pled a connection between Mr. Griffin's book and the events concerning Legacy Global and its Google Drive set forth in the JSP Action, Mrs. St. Pierre has not alleged that an allegation of deleting files is itself disparaging and has not alleged that Mr. Griffin recklessly disregarded the truth of what occurred by stating that the deletion occurred.[3] Mrs. St. Pierre has not alleged a single fact reflecting malice on Mr. Griffin's part. After all, Mrs. St Pierre acknowledges elsewhere in her Complaint that files appeared in Legacy Global's email accounts and that she made efforts to remove access to them. (*See* Exhibit B at B_16-B_50.)

Accordingly, none of the statements made "about" the plaintiff in Mr. Griffin's book is susceptible of defamatory meaning, requiring dismissal of Count V.

## VII.  PLAINTIFF CANNOT MAINTAIN A TORT CLAIM BASED ON STATEMENTS MADE IN STATE COURT PROCEEDINGS.

Finally, to the extent that any aspect of Mrs. St. Pierre's Complaint is based upon statements or allegations made in the JSP Action, such claim is subject to immediate dismissal under New Hampshire law. New Hampshire law provides "very broad protection" to statements made in the course of judicial proceedings. *Hugel v. Milberg, Weiss, Bershad, Hynes & Lerach,*

---

[3] Even if Mr. Griffin's depiction of the Google Drive activity reflected a misconception on his part or described "one of a number of possible rational interpretations" of the event, "such language, though reflecting a misconception, does not place the speech beyond the outer limits of the First Amendment's broad protective umbrella." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512-13 (1984).

*LLP*, 175 F.3d 14, 16 (1st Cir. 1999). A statement falls outside the privilege only if it is "so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy or impropriety," and all doubts are to be resolved in favor of pertinency and application of the privilege. *Id.* (quoting *McGranahan*, 119 N.H. at 766 (citation omitted)).

Here, even a cursory review of the enclosed papers from the JSP Action reveals that Mr. Griffin's statements (and Legacy Global's allegations) concerning Mrs. St. Pierre's deletion of Google Drive files related to the Seacoast Spartans and the competitive dormitory project were directly relevant to Legacy Global's claims that Mr. St. Pierre's involvement with those activities constituted unlawful competition and usurpation of corporate opportunities. (*See* Exhibit A, ¶¶ 42-72; Exhibit B at B_16-B_50.) Accordingly, Mrs. St. Pierre may not maintain a tort claim based on any statements made by Legacy Global or Mr. Griffin in the course of Legacy Global's litigation against Mrs. St. Pierre's husband.

**Conclusion**

Based on the foregoing, defendant Stephen J. Griffin respectfully requests that the Court dismiss the Complaint in its entirety.

Dated:   December 28, 2020               Respectfully submitted,

                                         STEPHEN J. GRIFFIN

                                    By:    /s/ Phillip Rakhunov
                                           Phillip Rakhunov (#17153)
                                           POLLACK SOLOMON DUFFY LLP
                                           101 Huntington Ave., Ste 530
                                           Boston, MA 02199
                                           prakhunov@psdfirm.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies that plaintiff Amy St. Pierre is being served with a copy of this Motion by via Electronic Filing as an authorized pro se user (see ECF No. 4 and 12/24/2020 Order) and by email at amy.stpierre25@gmail.com.

/s/ Phillip Rakhunov