Filed
File Date: 3/1/2020 8:55 PM
Merrimack Superior Court
E-Filed Document

## STATE OF NEW HAMPSHIRE

MERRIMACK, ss.                                    SUPERIOR COURT

|  |  |
|---|---|
| LEGACY GLOBAL SPORTS, L.P., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Docket No. 218-2019-CV-00198 |
| ) | |
| JOHN ST. PIERRE, NORTH ATLANTIC ) | |
| HOCKEY LLC d/b/a THE RINKS AT ) | |
| EXETER, and TRAVIS BEZIO, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF'S COMBINED OBJECTION TO THE MOTIONS BY
DEFENDANTS JOHN ST. PIERRE AND NORTH ATLANTIC HOCKEY LLC, AND
WITNESS AMY ST. PIERRE, TO QUASH AND FOR A PROTECTIVE ORDER**

NOW COMES Plaintiff Legacy Global Sports, L.P. ("Legacy Global"), by and through

its counsel, Pollack Solomon Duffy LLP, and hereby submits this combined objection to the

motions filed by Defendants John St. Pierre and North Atlantic Hockey LLC ("NAH LLC"), and

witness Amy St. Pierre (collectively the "Moving Parties") seeking to quash several subpoenas

issued by Legacy Global (i) to Google LLC seeking certain email "header" information and

subscriber information (but not email content), and (ii) to Ms. St. Pierre directly, seeking

discovery regarding her involvement with Legacy Global's online document management

systems and her communications directly with Legacy Global board members and employees

concerning the subject of this lawsuit.

**Preliminary Statement**

Legacy Global's targeted discovery requests have been frustrated by Defendants and

others working with them. Spoliation of evidence by Defendants began as the disputes erupted.

**B_01**

Further spoliation of evidence by Defendants and one of their spouses occurred shortly after Legacy Global filed this action. Despite Legacy Global serving discovery requests in May 2019, Defendants have made half-hearted efforts to respond to those requests. For example, not until February 2020 (more than 8 months late), and only after service of subpoenas on Google for email header information, did NAH LLC commit to use meaningful search terms in mailboxes belonging to the key partners in the entity, having previously limited its document collection to self-searches of his own email by a manager whose name had never surfaced in pleadings. Even when allowing an employee to perform a self-search, NAH LLC has identified only a few search terms that he supposedly used which appeared hardly designed to make reasonable productions. St. Pierre still withholds expectable materials concerning competitive efforts in the youth hockey industry, including contracts and financial information that would relate to issues concerning his breach of non-competition obligations and mitigation on his counterclaim.

Faced with challenge after challenge in discovery, Legacy Global served subpoenas on Google seeking email header information, information about deletion activity in Defendants' email accounts, and a subpoena directly on Ms. St. Pierre seeking evidence of her document modification and deletion activities, as well as her communications with Legacy Global board members and employees about relevant topics. The Moving Parties seek to quash subpoenas or obtain a protective order, further blocking discovery. Contrary to the Moving Parties' position, the subpoenas seek nothing that is privileged. To the extent that any parties or non-parties seek to treat any responsive materials confidential, the confidentiality agreement between the parties to this case suffices to address such concern, including an agreed-upon method of challenges to over-designations.

Also contrary to the Moving Parties' position, there is no excuse for deficient productions. Legacy Global is not limited to rely on the existing document trail that already shows spoliation and disloyalty by St. Pierre, his wife and Bezio far beyond their claim of passive ownership interests in NAH LLC. Header information is routinely sought in litigation to address spoliation and production issues. In sum, consistent with the case law on the subject, the subpoenas seek relevant non-privileged information while imposing no time or expense burden on the Moving Parties. Compliance with the subpoenas should be required.

### Background

As this Court is aware, this case focuses on: (1) whether St. Pierre and Bezio served multiple masters, beyond just passive ownership of interests in a hockey rink, by using Legacy Global's resources for the benefit of NAH LLC or themselves while employed by Legacy Global; (2) whether St. Pierre and Bezio have competed with Legacy Global since the company terminated St. Pierre or later after Bezio resigned; and, (3) whether Legacy Global wrongfully terminated St. Pierre or constructively terminated Bezio in violation of public policy (the "Subject Matter").

**Spoliation of Evidence by Defendants and a Spouse**

As Legacy Global gathered information concerning disloyal actions by St. Pierre and Bezio, in late December 2018, Legacy Global interviewed Bezio, who admitted deleting emails belonging to Legacy Global. Bezio explained that he did so out of concern that these emails would be perceived the wrong way by new management at Legacy Global. On February 13, 2019, Legacy Global commenced this action.

Beginning less than two months later, on March 30, 2019, unknown to Legacy Global at the time, Ms. St. Pierre accessed documents on Legacy Global's Google drive, including a folder

B_03

registered to sschultz@legacyglobalsports.com, a domain name that belongs to Legacy Global.

Documentary confirmation of such access to Legacy Global's Google drive is attached to the

Declaration of Phillip Rakhunov (the "Rakhunov Declaration") as Exhibit A. This record reveals

Ms. St. Pierre's removal from the Legacy Global drive of at least several dozen files. *See* Exh.

A. Attached to the Rakhunov Declaration as Exhibit B is a Google drive record confirming

access to the Google drive by Ms. St. Pierre on June 21, 2019, and June 23, 2019. Ms. St.

Pierre's June 21, 2019 access reflects that she "renamed an item," namely one of the folders that

she accessed, in order to name it "Steve Griffin is a douchebag." Exh. B. Steve Griffin had

replaced her husband (Defendant St. Pierre) as CEO of Legacy Global. The Google drive records

further confirm access by Ms. St. Pierre on June 23, 2019, when she shared with "Anyone at

legacyglobalsports.com" the folder that she had then-recently named "Steve Griffin is a

douchebag," thereby facilitating the wide circulation of her "work" on that folder to the company

while disparaging Mr. Griffin. Attached to the Rakhunov Declaration as Exhibit C is a Google

drive record reflecting that, on August 1, 2019, Ms. St. Pierre renamed the folder "Douchebag."

On August 2, 2019, St. Pierre changed permissions to allow only Ms. St. Pierre, Bezio, Saxena

Web, and Atul Saxena to access the folder. *See* Exh. C. Attached to the Rakhunov Declaration as

Exhibit D is a Google drive record reflecting that on March 30, 2019, two weeks after he

resigned from Legacy Global, Bezio also edited items on the Google drive. Even if Defendants

or Ms. St. Pierre claim that she removed items that referred to the business of NAH LLC outside

of Legacy Global's business, their use of the Legacy Global Google drive and domain name to

maintain such materials has an evidentiary value in light of the key allegations that Defendants

used Legacy Global's resources for their ventures outside of the company.

Defendant St. Pierre has also admitted he kept a large collection of documents belonging to Legacy Global, which his counsel belatedly returned long after St. Pierre left the company. St. Pierre's retention of the materials violated company policy that required their immediate return. Legacy Global has no assurance that St. Pierre maintained and returned all emails including those that could reflect when or how he forwarded Legacy Global materials to email accounts for his access outside of the company.

**Document Requests to Defendants**

On May 31, 2019, Legacy Global served document requests on each of the Defendants, seeking in various ways information concerning these core topics. Legacy Global served 17 categorical requests on NAH LLC, including those seeking documents concerning its participation in business activities related to Legacy Global's business and NAH LLC's expansion plans. Legacy Global served 35 categorical requests on Bezio, seeking among other things all documents and communications concerning the potential expansion of NAH LLC, all communications with the town about such plans, all documents concerning the services he has provided for any entity other than Legacy Global, and all his communications with certain witnesses or on certain topics related to his work outside of Legacy Global in similar areas. Legacy Global served 31 categorical requests on St. Pierre, seeking a similarly broad scope of responsive materials.

Defendants largely objected to these requests and made sparse productions over the ensuing months. The NAH LLC claimed that it searched for some communications with a town about expansions, but also oddly claimed that it had a right to withhold permit-related materials, whatever that means. The Defendants have collectively failed to produce many materials that have been obtained through public records requests. Exhibit E to the Rakhunov Declaration

B_05

contains an example of such materials obtained from public records request. This example

consists of a recently obtained submission by NAH LLC to the Town of Exeter Planning Board

in September 2017, reflecting NAH LLC's plans to engage in activities directly competitive

with, among other things, Legacy Global's international tournaments and camps. Likewise, St.

Pierre has not produced materials reflecting the scope of his competitive efforts to acquire youth

hockey clubs that would relate to both issues of whether he is competing and mitigation. To be

clear, Legacy Global has received some documents reflecting that St. Pierre has been involved

with the acquisition of youth hockey clubs, an area of expansion that Legacy Global devoted

substantial resources to exploring while St. Pierre worked for Legacy Global, showing that his

conduct has been competitive. Obviously Legacy Global is entitled to communications that it has

sought about those acquisitions and other responsive non-privileged documents.[1]

**Ms. St. Pierre's Contact with Board Members and Investors**

In addition to her spoliation of evidence described above, and her efforts to share a folder

with Legacy Global's employees that disparaged Mr. Griffin, Ms. St. Pierre also sent text

messages to board members of Legacy Global. On or about August 29, 2019, Ms. St. Pierre sent

three text messages to a board member of Legacy Global, stating that she was reaching out

---

[1] Aside from pressing for certain depositions to take place before the production of documents are substantially complete, Defendants have been reluctant participants in discovery generally. St. Pierre refused to produce electronic discovery in the requisite format until January 9, 2020, many months after the materials were due and *after* he insisted on the first deposition of a non-party witness (Chuck Huggins, a former CFO of Legacy Global and fellow hockey player with co-defendants St. Pierre and Bezio at the Rinks of Exeter). Even when he finally produced e-discovery, St. Pierre failed to produce many documents in the possession of others. Notwithstanding discovery requests about their business activities that Legacy Global has alleged are competitive, Defendants have failed to produce financial records showing their youth sports academy program or other business acquisition activity. St. Pierre has sought to block a subpoena to a bank seeking communications and records about his acquisitions of youth sports programs. Legacy Global has a fundamental right to take discovery concerning the Defendants' competitive activities and their ability and resources to compete, as well as, in light of counterclaims, their mitigation of or failure to mitigate alleged damages.

without her husband's knowledge, asking the board member for information, accusing him of hurting people to protect his investment and raising mismanagement issues on the part of new management. At 5:08 p.m. on December 31, 2019, Ms. St. Pierre sent a text message to three long-term investors in Legacy Global, including a board member. In the text message, Ms. St. Pierre recognizes that the three investors voted for a restructuring of Legacy Global. In so doing, these investors recognized the damage that St. Pierre had caused Legacy Global. As a result, Ms. St. Pierre stated in pertinent part: "I can't even begin to stress my disappointment and extreme anger at you three for falling for their bull shit to bully you into voting yes to restructure," and referred to them as "idiots and fucking cowards" and stated that she was "done with all of you." A copy of the December 31, 2019 text message is attached to the Rakhunov Declaration as Exhibit F.

**Defendants' Lack of Transparency in Discovery Productions**

Defendants St. Pierre and Bezio have refused to disclose how they collected documents or, when each of them communicated primarily by text message with a witness, whether they searched for such messages. With respect to the NAH LLC, only after service of the subpoenas on Google did it finally acknowledge how little it had done in its search efforts and suggest it would do more. A copy of an email string reflecting the recent revelations in February 2020 of the lack of efforts concerning May 2019 requests is attached to the Rakhunov Declaration as Exhibit G.

**Lack of Adequate Meet and Confer Efforts**

In advance of filing her motion to quash, Ms. St. Pierre and her counsel failed to meet and confer with Legacy Global's counsel in an effort to resolve or narrow the scope of the subpoena. Defendants have raised a misunderstanding that the subpoenas could result in the

B_07

production of privileged materials or run afoul of the Stored Communications Act. Had they made meaningful efforts to meet and confer, assurances could have been provided that Google complies with the Store Communications Act by producing only "header" information, namely the information in the to, from, cc, bcc and date fields. After all, the subpoenas at issue expressly seek only "header" information, subscriber information and records of deletions or modifications of files to the extent available during relevant time periods. The subpoenas do not seek email content or even subject lines. With respect to the NAH LLC, certain efforts to meet and confer took place, but without finalizing positions. The issue on which the NAH LLC focused was the possible discovery of the frequency of communications between lawyer and client, but of course that information is not privileged or otherwise precluded in discovery. While certain content of attorney-client communications is generally off limits, parties and witnesses are routinely questioned at depositions about the extent and timing of meetings and discussions with counsel. While this issue was being discussed, the NAH LLC filed its motion to quash suggesting that it was out of time, rather than agreeing on an extension of time to finalize the meet and confer efforts.

### Discussion

**I.     CONTRARY TO THE MOVING PARTIES' ARGUMENTS, THE SCOPE OF PERMISSIBLE DISCOVERY IS BROAD, AND THERE IS NO PRIVILEGE ISSUE ARISING FROM EMAIL HEADERS, WHICH PROVIDE LESS INFORMATION THAN WHAT WOULD APPEAR ON A PRIVILEGE LOG.**

New Hampshire courts have long "stressed the importance of broad pretrial discovery." *Willett v. General Elec. Co*., 113 N.H. 358, 359 (1973). "Discovery in this state may be characterized as broad and liberal" because "[i]t is favored as a means for the adequate preparation for trial and as a method for ascertaining the truth." *Drake v. Bowles*, 97 N.H. 471, 472–73 (1952) (recognizing reach of discovery into physical examinations and even autopsies).

B_08

In *New Hampshire Ball Bearings, Inc. v. Jackson*, 158 N.H. 421, 429-31 (2009), the Supreme Court held that "electronic data, including forensic imaging of hard drives, is within the scope of discoverable material…." *Id.* at 430 (affirming grant in part of motion to compel, citing to federal court cases for proposition that "[c]ourts are more receptive, however, to circumscribed requests limited to specified individuals or computers expected to produce relevant information.").

The use of a subpoena to obtain email header information from email service providers and similar data that could have bearing on production and spoliation issues is now a relatively routine practice. *See, e.g.*, *Addison v. Monarch & Assocs., Inc*., No. CV1400358-GWJEMX, 2016 WL 11530423, at *2 (C.D. Cal. Apr. 18, 2016) (no privacy concerns implicated where the subpoena sought only e-mail headers, not the content of the e-mails).

A court reached a similar holding in *Eldredge v. EDCare Management, Inc*., Case No. 13-61373, Consolidated Case No. 12-61984 (RNS) (S.D. Fla. June 19, 2014). A copy of this decision is attached to the Rakhunov Declaration as Exhibit H. In *Eldredge*, the court allowed the use of a "header" subpoena to AOL explaining the obvious relevance of such information about communications between a party and key witnesses:

> Defendants' proposed subpoena to AOL falls well within the parameters of Rule 26 and the relevancy of the information it seeks is readily apparent. Defendants' subpoena to AOL does not seek the content of Plaintiff's emails, but only "header" information, such as senders, recipients, date and time. This type of information is clearly relevant to determine Plaintiff's email activity related to EDCare, including her employment at the company, communications with co-workers or supervisors, or the alleged misappropriation of documents and proprietary materials. Moreover, the Court is not persuaded that such header information will infringe upon the attorney-client privilege. As Defendants' correctly point out, the header information is similar to the information that Plaintiff would be required to produce in a privilege log if she were to assert the attorney-client privilege. Thus, because the header information is relevant and does not threaten the attorney-client privilege, Plaintiff's objection to the AOL subpoena is overruled.

*Id*. at 6. Other courts have agreed with this fundamental analysis. *See Xie v. Lai*, 2019 WL 7020340, at *1 (N.D. Cal. 2019) (allowing use of subpoena that "seeks all non-content email headers, including the 'to' and 'from' lines and the dates, from the Google email account," finding no burden or privilege concern in such materials); *Furminator, Inc. v. PetVac Group LLC*, 2011 WL 3439309, *6 (E.D. Tex. Aug. 5, 2011) (relying on header information in emails produced by Google to issue a sanctions award finding that the defendant had failed to comply with discovery); *see also Ajuba International, LLC v. Saharia*, 2014 WL 12659598, *1 (E.D. Mich. 2014) (reflecting use of "header" subpoena on Google and its facilitation of other discovery).

As explained in these lines of cases, email header information commonly helps provide context for other events and issues in a case. These email-header subpoenas also help test the quality of discovery productions. These subpoenas impose no time or expense burden on the litigants because the non-party email service providers simply push a few buttons to generate the report. Privileged information is not at stake because the report contains less information than what appears on a privilege log (*i.e.*, no subject description, let alone content). A similar analysis must reach the same result for data reflecting the date on which items were deleted or modified.

Here, as described above, the need for email-header subpoenas has become more critical than in most cases. The Defendants have made sparse productions with glaring gaps. At least Defendant Bezio and Ms. St. Pierre have engaged in spoliation of evidence. The email header information and related data about deletion dates can shed light on the scope of the consequences from their actions, including the timing and nature – albeit not content– of what is missing. The email header information will also shed light on the quality of the Moving Parties' productions. Courts have found these sorts of subpoenas appropriate in cases in which there was far less of a

need for them. They seek relevant non-privileged information and impose no cognizable burden.

Accordingly, the motions to quash and for a protective order should be denied, and instead the

subpoenas should be enforced.

**Conclusion**

Based on the foregoing, this Court should deny the Moving Parties' motions to quash and

for a protective order concerning the email header subpoenas, data concerning deletion of files,

and related materials concerning Ms. St. Pierre, from Google and Ms. St. Pierre. The Moving

Parties should comply with these subpoenas forthwith.

Respectfully submitted,
**LEGACY GLOBAL SPORTS, L.P.,**

By its attorneys,

/s/Phillip Rakhunov
Phillip Rakhunov (#17153)
Barry S. Pollack (*admitted pro hac vice*)
POLLACK SOLOMON DUFFY LLP
101 Huntington Ave., Ste. 530
Boston MA 02199
Tel:(617) 439-9800
Email: prakhunov@psdfirm.com
        bpollack@psdfirm.com

Dated: March 1, 2020

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document is being served upon counsel of record herein on March 1, 2020 via electronic filing service.

*/s/*Phillip Rakhunov
Phillip Rakhunov

Filed
File Date: 3/1/2020 8:55 PM
Merrimack Superior Court
E-Filed Document

STATE OF NEW HAMPSHIRE

MERRIMACK, ss.                                          SUPERIOR COURT

| | |
|---|---|
| LEGACY GLOBAL SPORTS, L.P., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **DECLARATION OF PHILLIP RAKHUNOV** |
| | ) |
| JOHN ST. PIERRE, TRAVIS BEZIO, and | ) Docket No. 218-2019-CV-00198 |
| NORTH ATLANTIC HOCKEY LLC d/b/a/ | ) |
| THE RINKS AT EXETER, | ) |
| | ) |
| Defendants. | ) |
| | ) |

I, Phillip Rakhunov, declare and state as follows:

1.      I am a partner at the law firm Pollack Solomon Duffy LLP and counsel of record for plaintiff Legacy Global Sports, L.P. I submit this declaration in support of Legacy Global Sports, L.P.'s combined opposition to the Motions by Defendants John St. Pierre and North Atlantic Hockey LLC and witness Amy St. Pierre to quash and for a protective order.

2.      Attached as Exhibit A hereto is a true copy of webpage captures for the Google drive activity in the folder registered to sschultz@legacyglobalsports.com reflecting activity on March 30, 2019.

3.      Attached as Exhibit B hereto is a true copy of webpage captures for the Google drive activity in the folder registered to sschultz@legacyglobalsports.com reflecting activity on June 21, 2019 and June 23, 2019.

4.      Attached as Exhibit C hereto is a true copy of webpage captures for the Google drive activity in the folder registered to sschultz@legacyglobalsports.com reflecting activity on August 1, 2019 and August 2, 2019.

5.      Attached as Exhibit D hereto is a true copy of webpage captures for the Google drive activity in the folder registered to sschultz@legacyglobalsports.com reflecting activity on March 30, 2019.

6.      Attached as Exhibit E hereto is a true copy of a document received by Legacy Global Sports, L.P.'s counsel from the Town of Exeter Planning Department, with relevant portions highlighted.

7.      Attached as Exhibit F hereto is a true copy of a December 31, 2019 text message that Ms. St. Pierre sent at about 5:08 pm to a Legacy Global board member, among others.

8.      Attached as Exhibit G hereto is a true copy of an email string dated January 28, 2020 to February 6, 2020 with the subject line: North Atlantic Hockey LLC – Discovery Deficiencies.

9.      Attached as Exhibit H hereto is a true copy of a decision in *Eldredge v. EDCare Management, In*c., Case No. 13-61373, Consolidated Case No. 12-61984 (RNS) (S.D. Fla. June 19, 2014).

I DECLARE UNDER THE PAINS AND PENALTIES OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.  EXECUTED ON MARCH 1, 2020:

_____
Phillip Rakhunov

# EXHIBIT A



WEBPAGE CAPTURES FOR LEGAL USE

| | |
|---|---|
| Document title: | sschultz@legacyglobalsports.com - Google Drive |
| Capture URL: | https://drive.google.com/drive/folders/0B27pTd2U4Mj5Y2ltOV9GdHoxR28 |
| Captured site IP: | 172.217.13.238 |
| Page loaded at (UTC): | Fri, 13 Sep 2019 15:39:02 GMT |
| Capture timestamp (UTC): | Fri, 13 Sep 2019 18:49:06 GMT |
| Capture tool: | v6.11.2 |
| Collection server IP: | 52.7.109.102 |
| Browser engine: | Chrome/70.0.3538.77 |
| Operating system: | Microsoft Windows NT 10.0.14393.0 (10.0.14393.0) |
| PDF length: | 2 |
| Capture ID: | b7f0b501-31cc-440a-bd06-a2a59adff6af |
| User: | pkohler |





WEBPAGE CAPTURES FOR LEGAL USE

| | |
|---|---|
| Document title: | sschultz@legacyglobalsports.com - Google Drive |
| Capture URL: | https://drive.google.com/drive/folders/0B27pTd2U4Mj5Y2ltOV9GdHoxR28 |
| Captured site IP: | 172.217.13.238 |
| Page loaded at (UTC): | Fri, 13 Sep 2019 15:39:02 GMT |
| Capture timestamp (UTC): | Fri, 13 Sep 2019 18:49:29 GMT |
| Capture tool: | v6.11.2 |
| Collection server IP: | 52.7.109.102 |
| Browser engine: | Chrome/70.0.3538.77 |
| Operating system: | Microsoft Windows NT 10.0.14393.0 (10.0.14393.0) |
| PDF length: | 2 |
| Capture ID: | 801ee0b7-d591-4727-97f9-9b08988ccd81 |
| User: | pkohler |





| | |
|---|---|
| Document title: | sschultz@legacyglobalsports.com - Google Drive |
| Capture URL: | https://drive.google.com/drive/folders/0B27pTd2U4Mj5Y2ItOV9GdHoxR28 |
| Captured site IP: | 172.217.13.238 |
| Page loaded at (UTC): | Fri, 13 Sep 2019 15:39:02 GMT |
| Capture timestamp (UTC): | Fri, 13 Sep 2019 18:50:02 GMT |
| Capture tool: | v6.11.2 |
| Collection server IP: | 52.7.109.102 |
| Browser engine: | Chrome/70.0.3538.77 |
| Operating system: | Microsoft Windows NT 10.0.14393.0 (10.0.14393.0) |
| PDF length: | 2 |
| Capture ID: | 63e85bb3-e519-48f7-9e0d-dba219b91d2d |
| User: | pkohler |

PDF REFERENCE #:          bw2l5mx4o6w1koCxVVxZan





WEBPAGE CAPTURES FOR LEGAL USE

| | |
|---|---|
| Document title: | sschultz@legacyglobalsports.com - Google Drive |
| Capture URL: | https://drive.google.com/drive/folders/0B27pTd2U4Mj5Y2ltOV9GdHoxR28 |
| Captured site IP: | 172.217.15.110 |
| Page loaded at (UTC): | Fri, 13 Sep 2019 15:39:02 GMT |
| Capture timestamp (UTC): | Fri, 13 Sep 2019 18:50:26 GMT |
| Capture tool: | v6.11.2 |
| Collection server IP: | 52.7.109.102 |
| Browser engine: | Chrome/70.0.3538.77 |
| Operating system: | Microsoft Windows NT 10.0.14393.0 (10.0.14393.0) |
| PDF length: | 2 |
| Capture ID: | befe3e44-b201-47f3-84de-7ee439c37899 |
| User: | pkohler |

PDF REFERENCE #:          ibdvwdoCgYShNXAyeB2RAN



Document title: sschultz@legacyglobalsports.com - Google Drive
Capture URL: https://drive.google.com/drive/folders/0B27pTd2U4Mj5Y2ItOV9GdHoxR28
Capture timestamp (UTC): Fri, 13 Sep 2019 18:50:26 GMT

**B_23**



| | |
|---|---|
| Document title: | sschultz@legacyglobalsports.com - Google Drive |
| Capture URL: | https://drive.google.com/drive/folders/0B27pTd2U4Mj5Y2ItOV9GdHoxR28 |
| Captured site IP: | 172.217.15.110 |
| Page loaded at (UTC): | Fri, 13 Sep 2019 15:39:02 GMT |
| Capture timestamp (UTC): | Fri, 13 Sep 2019 18:50:42 GMT |
| Capture tool: | v6.11.2 |
| Collection server IP: | 52.7.109.102 |
| Browser engine: | Chrome/70.0.3538.77 |
| Operating system: | Microsoft Windows NT 10.0.14393.0 (10.0.14393.0) |
| PDF length: | 2 |
| Capture ID: | a6374bd2-6b1d-4041-89e7-6b40b46e9923 |
| User: | pkohler |

PDF REFERENCE #:          9zNdncm9eqAc7gXYWDyXGc





WEBPAGE CAPTURES FOR LEGAL USE

| | |
|---|---|
| Document title: | sschultz@legacyglobalsports.com - Google Drive |
| Capture URL: | https://drive.google.com/drive/folders/0B27pTd2U4Mj5Y2ItOV9GdHoxR28 |
| Captured site IP: | 172.217.15.110 |
| Page loaded at (UTC): | Fri, 13 Sep 2019 15:39:02 GMT |
| Capture timestamp (UTC): | Fri, 13 Sep 2019 18:51:15 GMT |
| Capture tool: | v6.11.2 |
| Collection server IP: | 52.7.109.102 |
| Browser engine: | Chrome/70.0.3538.77 |
| Operating system: | Microsoft Windows NT 10.0.14393.0 (10.0.14393.0) |
| PDF length: | 2 |
| Capture ID: | 78e1ae4e-07e0-497b-ba29-6a27ebf3e606 |
| User: | pkohler |

PDF REFERENCE #:     k4s5zf7FDTUqMBmmzEZHmW





| | |
|---|---|
| Document title: | sschultz@legacyglobalsports.com - Google Drive |
| Capture URL: | https://drive.google.com/drive/folders/0B27pTd2U4Mj5Y2ltOV9GdHoxR28 |
| Captured site IP: | 172.217.164.142 |
| Page loaded at (UTC): | Fri, 13 Sep 2019 15:39:02 GMT |
| Capture timestamp (UTC): | Fri, 13 Sep 2019 18:42:57 GMT |
| Capture tool: | v6.11.2 |
| Collection server IP: | 52.7.109.102 |
| Browser engine: | Chrome/70.0.3538.77 |
| Operating system: | Microsoft Windows NT 10.0.14393.0 (10.0.14393.0) |
| PDF length: | 2 |
| Capture ID: | 8c1fd3ef-aa11-4333-9f7a-257ebb51ae21 |
| User: | pkohler |





WEBPAGE CAPTURES FOR LEGAL USE

| | |
|---|---|
| Document title: | sschultz@legacyglobalsports.com - Google Drive |
| Capture URL: | https://drive.google.com/drive/folders/0B27pTd2U4Mj5Y2ltOV9GdHoxR28 |
| Captured site IP: | 172.217.164.142 |
| Page loaded at (UTC): | Fri, 13 Sep 2019 15:39:02 GMT |
| Capture timestamp (UTC): | Fri, 13 Sep 2019 18:43:14 GMT |
| Capture tool: | v6.11.2 |
| Collection server IP: | 52.7.109.102 |
| Browser engine: | Chrome/70.0.3538.77 |
| Operating system: | Microsoft Windows NT 10.0.14393.0 (10.0.14393.0) |
| PDF length: | 2 |
| Capture ID: | 40d5a262-02bc-4043-a312-06ba8588100c |
| User: | pkohler |

PDF REFERENCE #:          a5g5drJnPzNM9DoQF7tXqb

**B_30**





WEBPAGE CAPTURES FOR LEGAL USE

| | |
|---|---|
| Document title: | sschultz@legacyglobalsports.com - Google Drive |
| Capture URL: | https://drive.google.com/drive/folders/0B27pTd2U4Mj5Y2ltOV9GdHoxR28 |
| Captured site IP: | 172.217.164.174 |
| Page loaded at (UTC): | Fri, 13 Sep 2019 15:39:02 GMT |
| Capture timestamp (UTC): | Fri, 13 Sep 2019 18:43:38 GMT |
| Capture tool: | v6.11.2 |
| Collection server IP: | 52.7.109.102 |
| Browser engine: | Chrome/70.0.3538.77 |
| Operating system: | Microsoft Windows NT 10.0.14393.0 (10.0.14393.0) |
| PDF length: | 2 |
| Capture ID: | 856b4976-cf57-4947-86b2-b7f78790a62b |
| User: | pkohler |

PDF REFERENCE #:          oPYvM4CxaHdd61mx7Ga1CN





| | |
|---|---|
| Document title: | sschultz@legacyglobalsports.com - Google Drive |
| Capture URL: | https://drive.google.com/drive/folders/0B27pTd2U4Mj5Y2ltOV9GdHoxR28 |
| Captured site IP: | 172.217.15.78 |
| Page loaded at (UTC): | Fri, 13 Sep 2019 15:39:02 GMT |
| Capture timestamp (UTC): | Fri, 13 Sep 2019 18:44:48 GMT |
| Capture tool: | v6.11.2 |
| Collection server IP: | 52.7.109.102 |
| Browser engine: | Chrome/70.0.3538.77 |
| Operating system: | Microsoft Windows NT 10.0.14393.0 (10.0.14393.0) |
| PDF length: | 2 |
| Capture ID: | 99e45992-60d2-42a6-89ae-a06000cf6d1b |
| User: | pkohler |





WEBPAGE CAPTURES FOR LEGAL USE

| | |
|---|---|
| Document title: | sschultz@legacyglobalsports.com - Google Drive |
| Capture URL: | https://drive.google.com/drive/folders/0B27pTd2U4Mj5Y2ltOV9GdHoxR28 |
| Captured site IP: | 172.217.164.174 |
| Page loaded at (UTC): | Fri, 13 Sep 2019 15:39:02 GMT |
| Capture timestamp (UTC): | Fri, 13 Sep 2019 18:46:27 GMT |
| Capture tool: | v6.11.2 |
| Collection server IP: | 52.7.109.102 |
| Browser engine: | Chrome/70.0.3538.77 |
| Operating system: | Microsoft Windows NT 10.0.14393.0 (10.0.14393.0) |
| PDF length: | 2 |
| Capture ID: | 48c91bf0-45c4-4c39-9f4a-4a37c8bd835f |
| User: | pkohler |

PDF REFERENCE #:        6FDnHMpNSujviffwGKxJi6





WEBPAGE CAPTURES FOR LEGAL USE

| | |
|---|---|
| Document title: | sschultz@legacyglobalsports.com - Google Drive |
| Capture URL: | https://drive.google.com/drive/folders/0B27pTd2U4Mj5Y2ltOV9GdHoxR28 |
| Captured site IP: | 172.217.13.238 |
| Page loaded at (UTC): | Fri, 13 Sep 2019 15:39:02 GMT |
| Capture timestamp (UTC): | Fri, 13 Sep 2019 18:48:09 GMT |
| Capture tool: | v6.11.2 |
| Collection server IP: | 52.7.109.102 |
| Browser engine: | Chrome/70.0.3538.77 |
| Operating system: | Microsoft Windows NT 10.0.14393.0 (10.0.14393.0) |
| PDF length: | 2 |
| Capture ID: | e151a311-6a17-4fbb-8cea-5ce3fed76218 |
| User: | pkohler |





| | |
|---|---|
| Document title: | sschultz@legacyglobalsports.com - Google Drive |
| Capture URL: | https://drive.google.com/drive/folders/0B27pTd2U4Mj5Y2ltOV9GdHoxR28 |
| Captured site IP: | 172.217.13.238 |
| Page loaded at (UTC): | Fri, 13 Sep 2019 15:39:02 GMT |
| Capture timestamp (UTC): | Fri, 13 Sep 2019 18:48:42 GMT |
| Capture tool: | v6.11.2 |
| Collection server IP: | 52.7.109.102 |
| Browser engine: | Chrome/70.0.3538.77 |
| Operating system: | Microsoft Windows NT 10.0.14393.0 (10.0.14393.0) |
| PDF length: | 2 |
| Capture ID: | 45e4afa5-f9a7-4b4a-b4cd-2fe41bca4b4e |
| User: | pkohler |

PDF REFERENCE #:    ubFveCx9vypvWkHd6xEFg7

**B_40**



**Drive**

New

Priority

My Drive

Shared with me

Recent

Starred

Trash

Storage

65.3 GB of 130 GB used

UPGRADE STORAGE

My Drive > Employee Fi... > Skipp Schultz > ss...

**Name**

douchebag

Action Photos lacrosse and golf

EMS Training Documentation

EMS Budget

EMS Release Planning

EMS - Requirements

EMS Defects, Test, Training

EMS IT Recommendations

EMS Status Reports

Unknown.jpeg

Michelle+Wie+LPGA+LOTTE+Championship+Roun...

karena-thek-lineback-releases-new-book-about-gol...

images.jpeg

images-3.jpeg

images-3 copy.jpeg

**douchebag**

Details | Activity

Earlier this year

Mar 30

Amy St.Pierre removed 13 items from

📁 Vendors/Contracts

Seacoast Subs, LLC Leas...

Final clean Exeter Rinks' ...

Brett Harvey Lease 2014-...

Rinks Ad Contracts incl C...

2015 3 20 North Atlantic ...

Subway Contract.PDF

Electric contract rinks Co...

Sprague Rinks Gas Contr...

Paycheck signature page ...

Sprague Rinks Gas Contr...

Snow JNS Groundworks...

Rob Day 2015 Contract 4-...

Sprague Rinks Gas Contr...

Show less

# EXHIBIT B



WEBPAGE CAPTURES FOR LEGAL USE

| | |
|---|---|
| Document title: | sschultz@legacyglobalsports.com - Google Drive |
| Capture URL: | https://drive.google.com/drive/folders/0B27pTd2U4Mj5Y2ltOV9GdHoxR28 |
| Captured site IP: | 172.217.164.142 |
| Page loaded at (UTC): | Fri, 13 Sep 2019 15:39:02 GMT |
| Capture timestamp (UTC): | Fri, 13 Sep 2019 18:42:37 GMT |
| Capture tool: | v6.11.2 |
| Collection server IP: | 52.7.109.102 |
| Browser engine: | Chrome/70.0.3538.77 |
| Operating system: | Microsoft Windows NT 10.0.14393.0 (10.0.14393.0) |
| PDF length: | 2 |
| Capture ID: | d877e5a6-73cf-4a82-8bb3-78bd90ad259d |
| User: | pkohler |



# EXHIBIT C



WEBPAGE CAPTURES FOR LEGAL USE

| | |
|---|---|
| Document title: | sschultz@legacyglobalsports.com - Google Drive |
| Capture URL: | https://drive.google.com/drive/folders/0B27pTd2U4Mj5Y2ItOV9GdHoxR28 |
| Captured site IP: | 172.217.164.142 |
| Page loaded at (UTC): | Fri, 13 Sep 2019 15:39:02 GMT |
| Capture timestamp (UTC): | Fri, 13 Sep 2019 18:42:16 GMT |
| Capture tool: | v6.11.2 |
| Collection server IP: | 52.7.109.102 |
| Browser engine: | Chrome/70.0.3538.77 |
| Operating system: | Microsoft Windows NT 10.0.14393.0 (10.0.14393.0) |
| PDF length: | 2 |
| Capture ID: | 8f8a2b7d-cdc4-4e71-9e5e-99c426adb958 |
| User: | pkohler |

PDF REFERENCE #:        8GGq8DN85SBjvjWf9dFtZg



# EXHIBIT D



| | |
|---|---|
| Document title: | sschultz@legacyglobalsports.com - Google Drive |
| Capture URL: | https://drive.google.com/drive/folders/0B27pTd2U4Mj5Y2ItOV9GdHoxR28 |
| Captured site IP: | 172.217.15.110 |
| Page loaded at (UTC): | Fri, 13 Sep 2019 15:39:02 GMT |
| Capture timestamp (UTC): | Fri, 13 Sep 2019 18:51:35 GMT |
| Capture tool: | v6.11.2 |
| Collection server IP: | 52.7.109.102 |
| Browser engine: | Chrome/70.0.3538.77 |
| Operating system: | Microsoft Windows NT 10.0.14393.0 (10.0.14393.0) |
| PDF length: | 2 |
| Capture ID: | 4948c513-aec8-41e3-82e9-b866f61a1efc |
| User: | pkohler |



Document title: sschultz@legacyglobalsports.com - Google Drive
Capture URL: https://drive.google.com/drive/folders/0B27pTd2U4Mj5Y2ItOV9GdHoxR28
Capture timestamp (UTC): Fri, 13 Sep 2019 18:51:35 GMT

**B_50**

# EXHIBIT E

# *Hayner/Swanson, Inc.*

*Civil Engineers/Land Surveyors*
*Three Congress Street, Nashua, NH 03062-3399*

# LETTER OF TRANSMITTAL

| To: Ms. Barbara McEvoy<br>Exeter Planning Department<br>10 Front Street<br>Exeter, NH 03833<br>773-6112 | Date: September 20, 2017 | #5409 |
|---|---|---|
| | Re: | |
| | The Rinks at Exeter –MINOR Site Plan Application | |
| | 40 Industrial Drive | |
| | Exeter, NH | |

## WE ARE SENDING YOU    ☑ Attached    ☐ Under separate cover via_____ the following items:

☐ Shop drawings    ☐ Prints    ☑ Plans    ☐ Samples    ☐ Specifications

☐ Copy of letter    ☐ Change order    ☐ Permit Application_____

Scope:

| COPIES | DATE | NO. | DESCRIPTION |
|---|---|---|---|
| 1 | | | Cover Letter from Hayner/Swanson, Inc. |
| 7 | | | Complete Sets of Plans (Revised 18 September 2017) |
| 1 | | | Project Narrative (Revised) |
| 1 | | | Waiver Letter |
| 15 | | | 11 x 17 Sets of Plans |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | **FINAL SUBMITTAL FOR THE SEPTEMBER 28th EPB MEETING** |
| | | | **PDF'S BEING SENT UNDER SEPARATE COVER** |
| | | | **REVISED PLANS SENT DIRECTLY TO JEN MATES, P.E.** |
| | | | |
| | | | |

**REMARKS:**

_____

_____

_____

_____

James N. Petropulos, P.E.
Principal Engineer/President

**(If enclosures are not as noted, please notify us immediately.)**

B_52


**Hayner/Swanson, Inc.**

*Civil Engineers/Land Surveyors*

September 20, 2017
Job #5409

Ms. Barbara McEvoy
**EXETER PLANNING DEPARTMENT**
10 Front Street
Exeter, NH 03833

RE:    **PROPOSED SITE PLAN – FINAL SUBMISSION**
          **40 INDUSTRIAL DRIVE**
          **EXETER, NEW HAMPSHIRE**

Dear Barbara:

Please find enclosed revised plans and application information addressing the various technical review comments provided to us on September 7, 2017 for the above referenced project. Listed below are the comments we received and the way in which are responding:

1. The Project narrative has been revised to better describe the dormitory use upon this site.
2. Dig Safe notification labels have been revised to include the Town of Exeter Department of Public Works contact information.
3. We have added a landscape plan to the set of drawings in order to show the proposed plantings near each building addition.
4. We have clarified our curb legend to match our site plan views.
5. We have prepared and included a waiver letter for architectural treatments of the proposed building additions.
6. We have added to the site plan and to the detail sheets a new electric and water service to the proposed dormitory addition.
7. We have added a grease trap detail to the plan set that was provided to us by the Exeter DPW.
8. We have added a note on the plans that refer the contractor to the plumbing plans for the reconstruction of the existing building sewer service connections within the addition footprints.

Please do not hesitate to contact our office if you have any questions or need additional information. We look forward to appearing before the Exeter Planning Board on September 28, 2017.

Respectfully,

James N. Petropulos, P.E.
Principal Engineer/ President
Hayner/Swanson, Inc.

## PROJECT NARRATIVE (Revised 18 September 2017)

The project area under consideration for this application is located at 40 Industrial Drive in Exeter, NH.  The site is known to the Exeter Assessors Department as Map 47, Lot 9-1 and is currently owned by BezioSchultzStPierre Sports Real Estate, LLC of Portsmouth, NH. The parcel is primarily located in Exeter's I; Industrial zoning district. Industrial Drive contains a number of commercial and industrial businesses along its route. Undeveloped property immediately abuts the site to the north and west.

The subject lot contains 9.465 acres and is currently the home of The Rinks at Exeter, an ice center facility that contains two (2) sheets of ice, locker rooms, offices and other supporting skating-related elements. The current building measures 84,075 square feet in size. The site currently has two access points off of Industrial Drive and on-site parking for 290 automobiles. A paved drop-off/pick-up lane exists at the front entry of the building. The utilities needed to service this site (sewer, water, telephone, electric and gas) are located in Industrial Drive. This facility has been in operation since 1999.

Wetlands on the property were flagged in August of 2017 by Gove Environmental Services and field located by Hayner/Swanson, Inc. As can be seen on the plans, they exist along the west side of the lot.  This wetland is part of the Watson Brook complex, which is tributary to the Squamscott River, and carries with it a 150-foot Shoreland Protection District buffer line.

It is being proposed to construct two building additions to the front of the current structure. Building addition 'A' is to be 1-story, 7565 square foot expansion that will contain office areas and a new pro shop to support the ice center. Building addition 'B' is to be a 4-story dormitory that will contain 62 beds and other supporting spaces.

The proposed dormitory addition will be used to provide temporary short term housing for users of the The Rinks at Exeter facility.    These would include:

- o **Overnight Camps –** The addition would enable The Rinks to host overnight stay camps; where there currently exists a large void in the market.   The Rinks will be able to serve traditional week long sport camps, as well as niche markets such as international camps (players from Europe) and professional tune-up camps.

- o **Academy Student -** Many of the world class athletes attending The Rinks are currently enrolled in the United States Performance Academy (USPA) program while receiving elite athletic training during off peak hours in Exeter.  These players are studying under the on-site accredited USPA program and will not be attending local schools. The USPA program is the current system being used by the US National Ski Team and several others in the Olympic development program for other sports. Players from outside this geographic area will require temporary housing while participating in the program.

- o **College Prep Teams -** Both an Under 20 and an Under 18 college preparatory teams train and study at The Rinks from September through February each year.   Many of these players come from outside the geographic area and, thus, require temporary living accommodations.

- o **Sports Tournaments -** The Rinks will bring in several new sporting events (3-5 day tournaments) throughout the year that will necessitate some short term housing.   A special focus on hosting traveling teams from Europe that could affordable be able to come to the Seacoast area and participate in our events.

In addition, the dormitory building addition shall include:

- o Classroom/Meeting Space - Part of the expansion will include building out classrooms for use by current tenants of the facility, academy students,

and college prep students.   Rooms could be expanded to allow for larger conference area.

o   Additional Workout Facilities - The Rinks will construct additional space to be used to create state of the art athletic training areas.  Through our partnership with Exeter Hospital we are exploring expanding their very successful operation they are currently operating at our existing facility.

The accompanying site improvements, as shown on the site plan, include minor demolition, preparation of the building pads, utility work and minor paving, landscaping, curb and sidewalk work.

Given the size of the proposed additions and the limited impact to the site it has been determined that the project will require a MINOR site plan approval. There are no proposed impacts to any wetland, buffer or Shoreland Protection District areas. Adverse impacts to local schools and traffic as a result of this project are not anticipated.

# *HSI* Hayner/Swanson, Inc.

*Civil Engineers/Land Surveyors*

September 20, 2017
Job #5409

Ms. Kelly Bergeron, Chairperson
Exeter Planning Board
10 Front Street
Exeter, NH 03833

**RE:**   **SITE PLAN WAIVER REQUEST**
        **PROPOSED BUILDING ADDITIONS**
        **THE RINKS AT EXETER**
        **40 INDUSTRIAL DRIVE**
        **EXETER, NH**

Dear Madame Chair:

On behalf of our client, North Atlantic Hockey Group, LLC, and in accordance with Section 13.7 of the Town of Exeter Site Plan Review and Subdivision Regulations (SPR), we respectfully request the following waiver for the above referenced project.

**WAIVER REQUEST**

**SPR Regulation:**  Section 9.2.4 (in particular 1 a&b, 2 and 4), which requires certain architectural guidelines for new construction.

**Waiver Request:**   To waive the requirements that the proposed building additions need pitched roofs, façade treatments, exterior material types and historic details incorporated into the architecture.

**Basis of Waiver:**   The architecture of the proposed building additions is harmonious with the existing ice center building in terms of roof type, size and exterior materials. Since the existing building is not consistent with the building guidelines identified in this section of the SPR, it makes little sense to vary the architectural treatments of the proposed additions. Furthermore, the use of high-maintenance natural materials and pitched roofs is not practical for this use located in an industrial-type setting.

Granting this waiver is in accordance with the criteria of Section 13.7 and RSA 674:44, III (e). We feel that the above request is reasonable for a project of this size and that a strict enforcement of these requirements would pose a hardship and difficulties to our client. Furthermore we think that the spirit and intent of the Town of Exeter Site Plan Review and Subdivision Regulations is met with this project in that the development will be consistent with the existing structure and will not be detrimental to public health, safety and welfare.

Thank you for your consideration in this matter.

Respectfully,

James N. Petropulos, P.E.
President/Principal Engineer
**HAYNER/SWANSON, INC.**

# EXHIBIT F

iMessage
**Tue, Dec 31**, 5:08 PM

Amy St-Pierre

I'd send this to Howe as well but I don't have his number...so feel free to pass this on.
I can't even begin to stress my disappointment and extreme anger at you three for falling for their bull shit to bully you into voting yes to restructure. You are idiots and fucking cowards and I'm done with all of you. If they thought the company was going to go bankrupt they would have responded to Johns offer to buy back the company. This has been their plan from the beginning and you are just rolling over. They are mismanaging the company and so don't think you are saving anyone but yourselves for the short term. Not that you would but pls don't respond.  I've had enough!  Happy Fucking New Year!

AS

# EXHIBIT G

**Barry Pollack**

| | |
|---|---|
| **From:** | Barry Pollack |
| **Sent:** | Thursday, February 06, 2020 12:17 PM |
| **To:** | Kathleen M. Mahan |
| **Cc:** | Phillip Rakhunov; Arnie Rosenblatt |
| **Subject:** | RE: North Atlantic Hockey LLC - Discovery Deficiencies |

While we await your response about the logistics and timing of your clients' undertaking, we are willing to confer about any third-party subpoenas you think are problematic and might be narrowed or resolved in some other way.
I am away for a funeral, but could set something up on those subpoenas for next week.
Please let us know. We look forward to hearing from you with specifics tomorrow about your clients' discovery positions.
Thanks.

-----Original Message-----
From: Barry Pollack
Sent: Wednesday, February 5, 2020 5:14 PM
To: Kathleen M. Mahan <k.mahan@clrm.com>
Cc: Phillip Rakhunov <prakhunov@psdfirm.com>; Arnie Rosenblatt <a.rosenblatt@clrm.com>
Subject: Re: North Atlantic Hockey LLC - Discovery Deficiencies

Arnie and I discussed these logistics months ago, though I thought you were framing search terms. What you described is not a genuine e-discovery search. You still have not even identified anyone's mailbox other than Mr. Mitch and even that was self-searched by him focused on an irrelevant methodology.
Do you plan to commit by the end of the week to logistics?

> On Feb 5, 2020, at 5:11 PM, Kathleen M. Mahan <k.mahan@clrm.com> wrote:
>
> Barry,
>
> Thank you for the email.  As I mentioned on our call, The Rinks responded to a number of Legacy's requests and developed and employed search terms with respect to those requests.  To a large extent,  Legacy's requests were extremely overbroad, and so the Rinks objected and indicated that it would be willing to discuss in order to appropriately narrow the request and get at the documents Legacy's actually was looking for.  While Legacy never previously asked to discuss those requests or how to narrow them, the email you provided with proposed search terms is helpful in providing some insight as your thoughts on this. I will be reviewing and the Rinks will decide how to proceed. I will be back in touch as soon as possible on that.   Also, to clarify your email and ensure there is no misunderstanding, I indicated that, based upon your comments to the Court last week regarding custodians, we were running searches consistent with our previous efforts for the two remaining owners (Saxeena and Schultz) although we did not believe that actually was necessary under the circumstances—we are doing so in order to try to avoid a discovery dispute I have already searched Chet Murch's mailbox as I described for you.
>
> With respect to the subpoenas, we still object to the issuance of subpoenas for individuals involved in this case and where discovery is actively proceeding.  We believe they should be withdrawn.
>
> I was in a deposition all day today and was unable to further address these issues today.  I will be in touch shortly regarding the requested further searches but realistically that won't be for several days.
>
> Kate

1

>
> Kathleen M. Mahan, Esq.
> COOK, LITTLE, ROSENBLATT & MANSON, pllc New Hampshire Plaza
> 1000 Elm Street, 20th Floor
> Manchester, New Hampshire 03101
> T  (603) 621-7107
> F  (603) 621-7111
> Website: www.clrm.com
> Business Lawyers for Entrepreneurs ®
>
>
> CONFIDENTIALITY NOTICE:  Please be advised that this e-mail message and any files transmitted with it are
CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATIONS OR MAY OTHERWISE BE PRIVILEGED OR CONFIDENTIAL, and are
intended solely for the individual(s) or entity(ies) to whom they are addressed.  If you are not the intended recipient,
please do not read, copy or retransmit this communication, and destroy it immediately.  If you believe you have received
this e-mail in error, please notify Cook, Little, Rosenblatt & Manson, pllc immediately.
>
> -----Original Message-----
> From: Barry Pollack <bpollack@psdfirm.com>
> Sent: Monday, February 3, 2020 3:32 PM
> To: Kathleen M. Mahan <k.mahan@clrm.com>
> Cc: Phillip Rakhunov <prakhunov@psdfirm.com>; Arnie Rosenblatt
> <a.rosenblatt@clrm.com>
> Subject: North Atlantic Hockey LLC - Discovery Deficiencies
>
> Kathleen,
>
> Thank you for your time on the phone right now. You asked that I send to you an email with a list of priorities within
our concerns about North Atlantic Hockey LLC's discovery deficiencies. You also asked for some case law concerning
"email header" subpoenas, and I said I would look to see if we had something from a recent brief, which I found albeit
from another state.
>
> With respect to document deficiencies, you told me that your written responses suggested that North Atlantic Hockey
LLC ("NA Hockey") would not have to produce documents because of overbreadth objections unless and until counsel
engaged in discussions and reached specific agreements. In your email two messages below in this string, however, you
stated that you "d[id] not believe a conversation will get us anywhere." Based on this inconsistency, NA Hockey
essentially excused itself from meaningful discovery obligations. During our call, you stated that NA Hockey has decided
now that it will search mailboxes of all of its partners/members, to the extent they exist, and for Chet Burch, its General
Manager. We also request that you search the mailbox of Nicole Bezio as its Director of Accounting and Finance. To the
extent you know that others have pertinent knowledge or roles in matters related to the claims and defenses in this
case, you are required to collect those mailboxes also.
>
> During our call, the search terms that you mentioned appeared designed not to gather discoverable information. You
said that you searched "Shannon Barrows," "TTUSA," and "Town of Exeter." As you know, Shannon Barrows and TTUSA
did not have significant direct interaction with your client (at least not known to or alleged by Legacy). While you may
not have completed your list of search terms when we spoke, I understand that you did not include the following terms
which would make for a great starting point using them in the disjunctive:
>
> "USPA";
> "academy";
> "gouspa.org";
> "Huggins" OR "chuggins";

B_63

> "Mitchell" OR "jmitchell";
> "@legacyglobalsports.com";
> "legacy" AND "registration system";
> "legacy" AND "brand";
> "legacy" AND ("financing" OR "payable" OR "receivable"); "related party"; "planning board"; "dorms"; "Procon"; "Petropolis"; "Hayner"; "international"; "Europe" OR "European"; "South Kent"; "SKS"; "SKSA"; "tournament AND international global national elite"; "delete" "deleted" AND "emails"; "investors".
>
> This list is not meant to be exhaustive. Obviously your client should know more about its business and what terms and people would relate to responsive information. If any of these terms generates a large volume of false hits (meaning unrelated to any of the subject matter of the case), then exclusion terms or modifiers could be used to reduce the quantity of hits. Given NA Hockey's position about being a local rink with an online school program for just a few teams, none of these should generate a burdensome volume of material to review manually for privilege. I would expect the search to encompass 2016 through the present. We also believe that in a case of this magnitude, your firm or an e-discovery vendor should collect mailboxes of custodians, not just sit in a room while the custodian runs select searches like what you described. Once NA Hockey does this, there should be no problem with missing custodian information, which you admitted remains missing from NA Hockey's production, which you said during our call that you planned to fix.
>
> As we discussed, NA Hockey has not produced records about its educational academy program, such as communications about its launch or expansion plans, contracts, financial information, or even marketing materials like those that appear on its website and social media pages. Likewise, NA Hockey has not searched for or produced records concerning national or international tournaments that include elite or international players. There is also a glaring absence of records about transactions with Legacy.
>
> With respect to email header information, to be clear, Google and other providers do not produce the email content, subject lines or attachments. All that is produced is the identity of the sender, recipients, and date and time. Below is an excerpt from a recent brief on the subject, though formatting has been lost when pasting it in below my name.
>
> Finally, you seemed willing to speak with counsel for Mr. St. Pierre and counsel for Chuck Huggins to see if the parties could cooperate better than they have in the past to ensure a timely completion of document productions followed by an orderly completion of depositions with the benefit of full document discovery.
>
> Please let us know by close of business on Wednesday how and when NA Hockey intends to supplement its production and whether you have made any headway in generating a mutually cooperative approach to a reasonable and efficient discovery schedule and logistics.
>
> Regards,
> Barry
>
> The use of a subpoena to obtain header information from email providers is a routine practice. See Addison v. Monarch & Assocs., Inc., No. CV1400358-GWJEMX, 2016 WL 11530423, at *2 (C.D. Cal. Apr. 18, 2016) (no privacy concerns implicated where the subpoena sought only e-mail headers, not the content of the e-mails). A similar order in Eldredge v. EDCare Management, Inc., Case No. 13-61373, Consolidated Case No. 12-61984 (RNS) (S.D. Fla. June 19, 2014). In Eldredge, the court allowed a "header" subpoena to AOL explaining the obvious relevance of such information about communications between a party and key witnesses:
> "Defendants' proposed subpoena to AOL falls well within the parameters of Rule 26 and the relevancy of the information it seeks is readily apparent. Defendants' subpoena to AOL does not seek the content of Plaintiff's emails, but only "header" information, such as senders, recipients, date and time. This type of information is clearly relevant to determine Plaintiff's email activity related to EDCare, including her employment at the company, communications with co-workers or supervisors, or the alleged misappropriation of documents and proprietary materials. Moreover, the Court is not persuaded that such header information will infringe upon the attorney-client privilege. As Defendants'

correctly point out, the header information is similar to the information that Plaintiff would be required to produce in a privilege log if she were to assert the attorney-client privilege. Thus, because the header information is relevant and does not threaten the attorney-client privilege, Plaintiff's objection to the AOL subpoena is overruled."

> Id. at 6; see Furminator, Inc. v. PetVac Group LLC, 2011 WL 3439309, *6 (E.D. Texas Aug. 5, 2011) (relying on header information in emails produced by Google to issue a sanctions award finding that the defendant had failed to comply with discovery); see also Ajuba International, LLC v. Saharia, 2014 WL 12659598, *1 (E.D. Mich 2014) (reflecting use of "header" subpoena on Google and its facilitation of other discovery). As explained in these lines of cases, such information commonly helps provide context for other events and issues in a case. These "header" subpoenas also help test the quality of discovery productions. These "header" subpoenas impose no burden on the litigants because the non-party email service providers simply push a few buttons to generate the report. Privileged information is not at stake because the report contains less information than what appears on a privilege log.

>

>

> -----Original Message-----
> From: Barry Pollack
> Sent: Sunday, February 02, 2020 3:21 PM
> To: Kathleen M. Mahan
> <https://urldefense.proofpoint.com/v2/url?u=http-3A__k.mahan-40clrm.co
> m&d=DwIGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=J6qOpjat0J8
> SaRmPlxo5E3QBuAXlVB5mrph97RGOdSg&m=yt60w9mvFWk32IH4OZhXZv_KF2G2eVW-2ep
> XoW7TCXg&s=3TWcOqfSDq-rdVHYDGlYKdEfOhMRWhBeMZXOkBbjNhg&e=>
> Cc: Phillip Rakhunov <prakhunov@psdfirm.com>; Arnie Rosenblatt
> <https://urldefense.proofpoint.com/v2/url?u=http-3A__a.rosenblatt-40cl
> rm.com&d=DwIGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=J6qOpj
> at0J8SaRmPlxo5E3QBuAXlVB5mrph97RGOdSg&m=yt60w9mvFWk32IH4OZhXZv_KF2G2eV
> W-2epXoW7TCXg&s=EwLerxCMX_2SXRqp4Cl4-6W2iiHtUVgAzadqdFk7km8&e=>
> Subject: Re: Legacy pending motions
>
> We are entitled to answers about what your client has and has not done. We plan on having the call at 2 tomorrow. E-discovery is not the sort of hide the ball game the Rinks has played.
> Which mailboxes did the Rinks collect? Did your firm rely on party self-searches? Where are financial materials related to the academy there? Why have you not filled in custodian fields? Will you this week?
>
>> On Feb 2, 2020, at 2:38 PM, Kathleen M. Mahan <https://urldefense.proofpoint.com/v2/url?u=http-3A__k.mahan-40clrm.com&d=DwIGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=J6qOpjat0J8SaRmPlxo5E3QBuAXlVB5mrph97RGOdSg&m=yt60w9mvFWk32IH4OZhXZv_KF2G2eVW-2epXoW7TCXg&s=3TWcOqfSDq-rdVHYDGlYKdEfOhMRWhBeMZXOkBbjNhg&e=> wrote:
>>
>> Barry—In further reviewing the positions that you have taken in your most recent email (which do not accurately summarize things but no need to debate that), I do not believe a conversation will get us anywhere.  If you disagree, I am willing to speak with you, but as far as I am concerned, no meet and confer on Monday is required.
>>
>> Kate
>>
>> Kathleen M. Mahan, Esq.
>> COOK, LITTLE, ROSENBLATT & MANSON, pllc New Hampshire Plaza
>> 1000 Elm Street, 20th Floor
>> Manchester, New Hampshire 03101
>> T  (603) 621-7107
>> F  (603) 621-7111
>> Website:
>> https://urldefense.proofpoint.com/v2/url?u=http-3A__www.clrm.com&d=Dw

>> l
>> GaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=J6qOpjat0J8SaRmPl
>> x
>> o5E3QBuAXlVB5mrph97RGOdSg&m=yt60w9mvFWk32IH4OZhXZv_KF2G2eVW-2epXoW7TC
>> X g&s=rP7jMz-l5n7p5uWmhoILaiNLDi8TV4CphSMBeHbZwQl&e=
>> Business Lawyers for Entrepreneurs ®
>>
>>
>> CONFIDENTIALITY NOTICE:  Please be advised that this e-mail message and any files transmitted with it are CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATIONS OR MAY OTHERWISE BE PRIVILEGED OR CONFIDENTIAL, and are intended solely for the individual(s) or entity(ies) to whom they are addressed.  If you are not the intended recipient, please do not read, copy or retransmit this communication, and destroy it immediately.  If you believe you have received this e-mail in error, please notify Cook, Little, Rosenblatt & Manson, pllc immediately.
>>
>> -----Original Message-----
>> From: Barry Pollack <bpollack@psdfirm.com>
>> Sent: Friday, January 31, 2020 2:08 AM
>> To: Kathleen M. Mahan
>> <https://urldefense.proofpoint.com/v2/url?u=http-3A__k.mahan-40clrm.c
>> o
>> m&d=DwIGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=J6qOpjat0J
>> 8
>> SaRmPlxo5E3QBuAXlVB5mrph97RGOdSg&m=yt60w9mvFWk32IH4OZhXZv_KF2G2eVW-2e
>> p XoW7TCXg&s=3TWcOqfSDq-rdVHYDGlYKdEfOhMRWhBeMZXOkBbjNhg&e=>
>> Cc: Phillip Rakhunov <prakhunov@psdfirm.com>; Arnie Rosenblatt
>> <https://urldefense.proofpoint.com/v2/url?u=http-3A__a.rosenblatt-40c
>> l
>> rm.com&d=DwIGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=J6qOp
>> j
>> at0J8SaRmPlxo5E3QBuAXlVB5mrph97RGOdSg&m=yt60w9mvFWk32IH4OZhXZv_KF2G2e
>> V W-2epXoW7TCXg&s=EwLerxCMX_2SXRqp4Cl4-6W2iiHtUVgAzadqdFk7km8&e=>
>> Subject: Re: Legacy pending motions
>>
>> Kathleen,
>> We raised problems with North Atlantic Hockey's approach months ago and expected the issues fixed. We re-raised the issues in the telephonic conference with the court.
>> Legacy engaged in cooperative e-discovery efforts about its own collection efforts while North Atlantic Hockey has hidden what it has done, in both past meet and confers, and from absent custodian fields. You do not have to confer with a client about complying with requisite e-discovery protocol; your firm should have been insisting on compliance all along.
>> We will confer with you Monday at 2. Given all the extra time North Atlantic Hockey has taken, we will plan to file our motion to compel  by close of business Monday unless you confirm and show full compliance with the requisite protocol, proactive attorney involvement in collection efforts, and the use of all pertinent North Atlantic Hockey personnel, including all its partners and Mrs. Bezio in finance as custodians.
>> Barry
>>
>>>> On Jan 30, 2020, at 1:14 PM, Kathleen M. Mahan <https://urldefense.proofpoint.com/v2/url?u=http-3A__k.mahan-40clrm.com&d=DwIGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=J6qOpjat0J8SaRmPlxo5E3QBuAXlVB5mrph97RGOdSg&m=Vj2hnGQSKFByeE57Nc0tn2gSJXmfGNy_E4qYZ6sa794&s=yxvdImgHzryPAkIoCHq4fkHth7jkjFgV-ST7E-r3g9E&e=> wrote:
>>> Barry,

>>> You first raised a concern regarding custodians last week during our conference call with the Court. You sent an email later that day asking when we would be available to discuss your custodian concern and I responded with several different times – but we did not set a time. On Wednesday of this week you sent an email with questions regarding custodians, collection methods, and also asking (1) whether we would consider using an outside vendor; and (2) asking for time frames for when we could get any further collections accomplished and produced. I need to speak to my clients and IT person in order to answer your questions. I have availability Monday between 2 and 4, and could also speak Tuesday morning between 9:30 and 11:30.
>>> Kate
>>> Kathleen M. Mahan, Esq.
>>> COOK, LITTLE, ROSENBLATT & MANSON, pllc New Hampshire Plaza
>>> 1000 Elm Street, 20th Floor
>>> Manchester, New Hampshire 03101
>>> T  (603) 621-7107
>>> F  (603) 621-7111
>>> Website:
>>> https://urldefense.proofpoint.com/v2/url?u=http-3A__www.clrm.com&d=D
>>> w
>>> l
>>> GaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=J6qOpjat0J8SaRmP
>>> l
>>> x
>>> o5E3QBuAXlVB5mrph97RGOdSg&m=Vj2hnGQSKFByeE57Nc0tn2gSJXmfGNy_E4qYZ6sa
>>> 7
>>> 9 4&s=tUry5VZQXFyTT7wBktlEnw7uJ0h8TudbUgLHVP9qDaQ&e=
>>> Business Lawyers for Entrepreneurs ® CONFIDENTIALITY NOTICE:  Please
>>> be advised that this e-mail message and any files transmitted with it are CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATIONS OR MAY OTHERWISE BE PRIVILEGED OR CONFIDENTIAL, and are intended solely for the individual(s) or entity(ies) to whom they are addressed.  If you are not the intended recipient, please do not read, copy or retransmit this communication, and destroy it immediately.  If you believe you have received this e-mail in error, please notify Cook, Little, Rosenblatt & Manson, pllc immediately.
>>> -----Original Message-----
>>> From: Barry Pollack <bpollack@psdfirm.com>
>>> Sent: Wednesday, January 29, 2020 5:09 PM
>>> To: Kathleen M. Mahan
>>> <https://urldefense.proofpoint.com/v2/url?u=http-3A__k.mahan-40clrm.
>>> c
>>> o>>
>>> m&d=DwIGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=J6qOpjat0
>>> J
>>> 8
>>> SaRmPlxo5E3QBuAXlVB5mrph97RGOdSg&m=Vj2hnGQSKFByeE57Nc0tn2gSJXmfGNy_E
>>> 4 q YZ6sa794&s=yxvdlmgHzryPAkIoCHq4fkHth7jkjFgV-ST7E-r3g9E&e=>
>>> Cc: Phillip Rakhunov <prakhunov@psdfirm.com>; Arnie Rosenblatt
>>> <https://urldefense.proofpoint.com/v2/url?u=http-3A__a.rosenblatt-40
>>> c
>>> l>>
>>> rm.com&d=DwIGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=J6qO
>>> p
>>> j
>>> at0J8SaRmPlxo5E3QBuAXlVB5mrph97RGOdSg&m=Vj2hnGQSKFByeE57Nc0tn2gSJXmf
>>> G N y_E4qYZ6sa794&s=ga-xGlNVDQOH2C-nz1kp13y91BqAO6y8rvU_G5scAGo&e=>
>>> Subject: Re: Legacy pending motions

>>> I have raised all of it, even with the judge on the last call. We need to speak this week. Your co-defendant is pushing depositions before we have complete document productions.

>>> Counsel (your firm) should know the answers to the questions below, and your position itself makes deficiencies even that much more obvious.

>>>> On Jan 29, 2020, at 4:55 PM, Kathleen M. Mahan <https://urldefense.proofpoint.com/v2/url?u=http-3A__k.mahan-40clrm.com&d=DwIGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=J6qOpjat0J8SaRmPlxo5E3QBuAXlVB5mrph97RGOdSg&m=hYSlbOfENEx1IyZZBXMTDR4qdPY-44xA4ixssHLoQwM&s=y2MRoewBi_8SOki-xKwiawNJS-XKDKCsr4fUVQhu_2g&e=> wrote:

>>>> Barry-

>>>> Thanks for your email – it's helpful.  Since it's the first time you have identified some of these concerns, I need to discuss with my client before I can meaningfully participate in a meet and confer and hopefully make some headway on these issues.   Let's schedule a time to discuss early next week – I should have answers for you then.  I think we can resolve at least some of these issues.

>>>> Kate

>>>> Kathleen M. Mahan, Esq.

>>>> COOK, LITTLE, ROSENBLATT & MANSON, pllc New Hampshire Plaza

>>>> 1000 Elm Street, 20th Floor

>>>> Manchester, New Hampshire 03101

>>>> T  (603) 621-7107

>>>> F  (603) 621-7111

>>>> Website:

>>>> https://urldefense.proofpoint.com/v2/url?u=http-3A__www.clrm.com&d=

>>>> D

>>>> w

>>>> l

>>>> GaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=J6qOpjat0J8SaRm

>>>> P

>>>> l

>>>> x

>>>> o5E3QBuAXlVB5mrph97RGOdSg&m=hYSlbOfENEx1IyZZBXMTDR4qdPY-44xA4ixssHL

>>>> o Q w M&s=XVmNRuJSFwF64UyPbN02jxjR9a-2lSOgQoa7ozMGFFA&e=

>>>> Business Lawyers for Entrepreneurs ® CONFIDENTIALITY NOTICE:

>>>> Please be advised that this e-mail message and any files transmitted with it are CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATIONS OR MAY OTHERWISE BE PRIVILEGED OR CONFIDENTIAL, and are intended solely for the individual(s) or entity(ies) to whom they are addressed.  If you are not the intended recipient, please do not read, copy or retransmit this communication, and destroy it immediately.  If you believe you have received this e-mail in error, please notify Cook, Little, Rosenblatt & Manson, pllc immediately.

>>>> -----Original Message-----

>>>> From: Barry Pollack <bpollack@psdfirm.com>

>>>> Sent: Tuesday, January 28, 2020 12:36 PM

>>>> To: Kathleen M. Mahan

>>>> <https://urldefense.proofpoint.com/v2/url?u=http-3A__k.mahan-40clrm.

>>>> c>>> o>>

>>>> m&d=DwIGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=J6qOpjat

>>>> 0

>>>> J

>>>> 8

>>>> SaRmPlxo5E3QBuAXlVB5mrph97RGOdSg&m=hYSlbOfENEx1IyZZBXMTDR4qdPY-44xA

>>>> 4 i x ssHLoQwM&s=y2MRoewBi_8SOki-xKwiawNJS-XKDKCsr4fUVQhu_2g&e=>

>>>> Cc: Phillip Rakhunov <prakhunov@psdfirm.com>; Arnie Rosenblatt

>>>> <https://urldefense.proofpoint.com/v2/url?u=http-3A__a.rosenblatt-4

>>>> 0

B_68

>>>> c>>> |>>

>>>> rm.com&d=DwIGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=J6q

>>>> O

>>>> p

>>>> j

>>>> at0J8SaRmPlxo5E3QBuAXlVB5mrph97RGOdSg&m=hYSlbOfENEx1IyZZBXMTDR4qdPY

>>>> -

>>>> 4

>>>> 4 xA4ixssHLoQwM&s=t8LSonxUTPaahOvV0QFWlBqedj14d2ylQrk2scdjU9w&e=>

>>>> Subject: RE: Legacy pending motions Let's make this easier. We

>>>> believe that the Rinks did not collect mailboxes of its partners and employees. For Mr. St. Pierre and Mr. Bezio, we understand there was a self-collection. For the other partners and employees (including Mrs. Bezio), we understand that the Rinks did not use them as custodians or search their materials. Tellingly, the Rinks' production did not include the required information in the custodian field.

>>>> Are the Rinks willing to have counsel and/or the outside e-discovery vendor gather those mailboxes (all partners and Mrs. Bezio), using personal email accounts also to the extent used for business? If so, how long will that take? How long will it take to provide the required custodian metadata?

>>>> With this information, our call should last no more than 5 minutes, if even needed.

>>>> -----Original Message-----

>>>> From: Kathleen M. Mahan

>>>> <https://urldefense.proofpoint.com/v2/url?u=http-3A__k.mahan-40clrm.

>>>> c>>> o>>

>>>> m&d=DwIGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=J6qOpjat

>>>> O

>>>> J

>>>> 8

>>>> SaRmPlxo5E3QBuAXlVB5mrph97RGOdSg&m=n3pOmk5X0HodHKHJuteHT7vR1AcFZRkw

>>>> e M n vTEvIM00&s=VU5c6Hnz1BysdfmFlqmq5mdLHZ48nzD7YNMiAwCXUJE&e=>

>>>> Sent: Tuesday, January 28, 2020 11:32 AM

>>>> To: Barry Pollack <bpollack@psdfirm.com>

>>>> Cc: Graham, Owen R. <ograham@hinckleyallen.com>; Phillip Rakhunov

>>>> <prakhunov@psdfirm.com>; Arnie Rosenblatt

>>>> <https://urldefense.proofpoint.com/v2/url?u=http-3A__a.rosenblatt-4

>>>> O

>>>> c>>> |>>

>>>> rm.com&d=DwIGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=J6q

>>>> O

>>>> p

>>>> j

>>>> at0J8SaRmPlxo5E3QBuAXlVB5mrph97RGOdSg&m=n3pOmk5X0HodHKHJuteHT7vR1Ac

>>>> F Z R

>>>> kweMnvTEvIM00&s=IuMl79Oo3LMJM5vc0iceG6TQh2jpLMnNhGBnTplA1DQ&e=>

>>>> Subject: RE: Legacy pending motions Barry -

>>>> Since I sent out available times last week that time slot has become pretty full.  I can do Friday the 31st between 9:30 and 11:30.  I'll put a hold on that time for now, but please let me know today.

>>>> Thanks,

>>>> Kate

>>>> Kathleen M. Mahan, Esq.

>>>> COOK, LITTLE, ROSENBLATT & MANSON, pllc New Hampshire Plaza

>>>> 1000 Elm Street, 20th Floor

>>>> Manchester, New Hampshire 03101

>>>> T  (603) 621-7107

# EXHIBIT H

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**Case No. 13-61373-CIV-SCOLA/VALLE**
**Consolidated Case No. 12-61984**

DEBORAH ELDREDGE,

      Plaintiff,

vs.

EDCARE MANAGEMENT, INC.,
and HOSPITAL PHYSICIAN
PARTNERS, INC.,

      Defendants.
_____

<u>**ORDER**</u>

This is an employment discrimination and overtime case brought by Plaintiff Deborah Eldredge against her former employers EDCare Management, Inc. and Hospital Physical Partners, Inc. (collectively, "EDCare" or "Defendants"). Pending before the Court is Defendants' Motion to enforce discovery orders requiring Plaintiff to search for and produce responsive emails and email headers, and for an Order overruling her objection to Defendants' subpoena duces tecum to aol.com ("AOL") ("Discovery Motion") (ECF No. 66). Defendants also seek recovery of their attorneys' fees and costs incurred in connection with filing the Discovery Motion, and fees associated with a continued deposition of Plaintiff. The Discovery Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and is ripe for disposition. *See* (ECF No. 79). The Court has reviewed the record, and being fully advised in the premises, it is hereby **ORDERED AND ADJUDGED** that the Discovery Motion is **GRANTED IN PART** and **DENIED IN PART**.

Eldredge was hired by EDCare in March 2003 as an executive assistant to David Schillinger who, according to Eldredge, operates the business with his brother Jeffrey

**B_71**

Schillinger. (ECF No. 52 at ¶¶ 5, 17). On June 20, 2013, Eldredge filed the instant lawsuit alleging age and gender discrimination stemming from her termination in March 2012. *See* (ECF No. 1).[1] During the litigation, EDCare discovered and brought to the Court's attention information that Eldredge had allegedly removed documents from EDCare during her employment. Consequently, on November 8, 2013, this Court issued an order (the "November 8th Order") requiring Plaintiff to "conduct a diligent search for any … documents in her possession which are the property of the Defendants and turn them over to Defendants' counsel." (ECF No. 92, action No. 12-61984). Thereafter, Plaintiff produced several documents that had not been previously disclosed to EDCare and that Plaintiff had apparently removed during her employment at EDCare. *See* (ECF No. 106, action No. 12-61984).

Nonetheless, Defendants argue in the Discovery Motion that Plaintiff's efforts to comply with the November 8th Order were deficient in that she failed to conduct a diligent search of the documents in her AOL email account. Thus, Defendants request an order permitting: (i) a search of Plaintiff's AOL email account to be conducted by either an independent examiner or Plaintiff's counsel; (ii) the issuance of a subpoena to AOL for Plaintiff's "header" email information; and (iii) the taking of Plaintiff's deposition for an additional seven hours. *See* (ECF No. 66 at 7). Plaintiff opposes the Discovery Motion, arguing that she has fulfilled her discovery obligations and has already been deposed twice in the two consolidated employment cases. *See* (ECF No. 74 at 2). Plaintiff further objects to Defendants' subpoena to AOL on the grounds that it is invasive and could violate the attorney-client privilege. *Id*. at 6.[2]

---

[1] On September 12, 2012, Eldredge filed her first lawsuit requesting unpaid overtime pay. *See* (ECF No. 1-2, action No. 12-61984). That action has been consolidated with the instant action.

[2] Plaintiff also argues that the Discovery Motion should be denied because Defendants failed to meet and confer. Upon review of Defendants' verified Discovery Motion, however, the Court is satisfied with Defendants' counsel's efforts to confer. *See* (ECF No. 66, ¶¶ 10-13). In addition, Plaintiff raises various discovery issues not related to the instant Discovery Motion that concern the consolidated overtime case. *See* (ECF No. 74 at 3-4). Because this Order concerns Plaintiff's compliance with the November 8th

B_72

I.      **Plaintiff's search of her AOL emails to produce responsive emails was deficient.**

Rule 34(a)(1)(A) permits the discovery of electronically stored information. Fed. R. Civ. P. 34(a)(1)(A). Under the rules, the producing party is obligated to search available electronic systems to provide the information demanded. *Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 685 (S.D. Fla. 2012) (Snow, Mag. J.). Moreover, the Court retains the discretion to control the timing and scope of discovery. *See, e.g,. Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Schulte v. NCL (Bahamas) Ltd.*, 10-23265-CIV, 2011 WL 256542, at *4 (S.D. Fla. Jan. 25, 2011) (Simonton, Mag. J.).

Because of a history of discovery lapses, this Court ordered Plaintiff to "conduct a diligent search for any other documents in her possession which are the property of the Defendants and turn them over to Defendants' counsel." (ECF No. 92, action No. 12-61984). Plaintiff's deposition testimony, however, reveals that Plaintiff performed only a cursory review of her AOL email account. Specifically, at her January 13, 2014 deposition, Plaintiff gave the following answers to questions about her search efforts:

Q.      Other than Karen Schillinger, what other e-mail addresses did you look for when responding to the court order?

A.      I just looked to see if there were any that would have been work-related.

Q.      You said you looked through individual e-mails by searching a "to" and "from" field. You recall saying that, right?

A.      Correct.

Q.      What else did you do to find responsive e-mails on your laptop?

A.      I just remember doing that.

Q.      Did you search – use a search term such as EDCare to search e-mails that had the word EDCare in it?

Order and her requirement to search for and produce all responsive documents, the Court will not consider whether Defendants properly raised the issue in the earlier consolidated overtime case.

3

A.    Not that I recall.

Q.    Did you search for the name Schillinger?

A.    Not that I recall.

Q.    Did you use any other search terms or did you just go with the "to" and "from" fields?

A.    I think I just went with that.

Q.    And one of the sets you got dealt with communications with Karen Schillinger, correct?

A.    Yes.

Q.    One set of items involved an exchange between your AOL address and your company e-mail address, right, where it's you sending something to yourself from your company e-mail address?

A.    It could have been one of those, yes.

Q.    Anything else you recall pulling from the "to" and "from" field other than your work e-mail address and Karen's e-mail address?

A.    Not that I recall.

(Eldredge Dep., January 13, 2014, 49:14-50:21, ECF No. 35-3 at 13, 14).

While Plaintiff's efforts to comply with the November 8th Order were not a complete failure, Plaintiff's deposition transcript confirms that Plaintiff did not perform an exhaustive or diligent search for responsive documents to be produced to Defendants. Thus, Plaintiff's counsel is ordered to search Plaintiff's AOL email account using search terms, including: (i) EDCare; (ii) Schillinger; (iii) employ; and (iv) the name of any co-worker from EDCare whose name might produce documents responsive to the November 8th Order. By **July 3, 2014,** Plaintiff's counsel shall file a Notice of Compliance disclosing the searches that counsel performed, and provide any responsive documents to Defendants' counsel by **July 14, 2014**.

B_74

## II. Defendants' subpoena to AOL is relevant to Plaintiff's causes of action and permitted by the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 26(b) provides, in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.

Fed. R. Civ. P. 26(b). Relevancy under Rule 26 is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any issue that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978); *see also Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991) (noting that the Federal Rules of Civil Procedure "strongly favor full discovery whenever possible"). But while the scope of Rule 26(b) is broad, it is not without its limits. *See, e.g., Maharaj v. GEICO Cas. Co.*, 289 F.R.D. 666, 669 (S.D. Fla. 2013) (Matthewman, Mag. J.).

The scope of discovery under a Rule 45 subpoena to non-parties is the same as that permitted under Rule 26.[3] *Id.*; *see also Barrington*, 2007 WL 4370647, at *3. Moreover, when discovery appears relevant on its face, the party resisting the discovery has the burden to establish facts justifying its objections. *See Am. Fed'n of State, Cnty. & Mun. Employees (AFSCME) Council 79 v. Scott*, 277 F.R.D. 474, 477 (S.D. Fla. 2011) (Torres, Mag. J.). However, when relevancy is not readily apparent, "the burden is on the party seeking discovery to show the relevancy of the discovery request." *Id.*

Although discovery is broad, the court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue expense . . . ." Fed. R.

---

[3] Ordinarily, an individual does not have standing to challenge a subpoena served on another, "unless that individual has a personal right or privilege with respect to the subject matter of the subpoena." *Barrington v. Mortage IT, Inc.*, 07-61304-CIV, 2007 WL 4370647, at *3 (S.D. Fla. Dec. 10, 2007) (Seltzer, Mag. J.). Defendants do not contest Plaintiff's standing to challenge the subpoena. Accordingly, the Court finds that Plaintiff has standing to challenge the subpoena as it requests her own email records from AOL. *Id.*

B_75

Civ. P. 26(c)(1). Such a protective order may "forbid the discovery, limit the scope of discovery, and/or require the discovery to be taken in a different manner than that chosen by the party seeking discovery." *Liles v. Stuart Weitzman, LLC*, No. 09-61448-CIV, 2010 WL 1839229, at *2 (S.D. Fla. May 6, 2010) (Seltzer, Mag. J.).

Defendants' proposed subpoena to AOL falls well within the parameters of Rule 26 and the relevancy of the information it seeks is readily apparent. Defendants' subpoena to AOL does not seek the content of Plaintiff's emails, but only "header" information, such as senders, recipients, date, and time. This type of information is clearly relevant to determine Plaintiff's email activity related to EDCare, including her employment at the company, communications with co-workers or supervisors, or the alleged misappropriation of documents and proprietary materials. Moreover, the Court is not persuaded that such header information will infringe upon the attorney-client privilege. As Defendants' correctly point out, the header information is similar to the information that Plaintiff would be required to produce in a privilege log if she were to assert the attorney-client privilege. Thus, because the header information is relevant and does not threaten the attorney-client privilege, Plaintiff's objection to the AOL subpoena is overruled.

### III. Defendants may depose Plaintiff for an additional three (3) hours.

The Court has broad discretion to control the timing and scope of discovery. *See supra*, pg. 3. Defendants seek to depose Plaintiff for an additional seven hours. *See* (ECF No. 66 at 7). In this regard, Federal Rule of Civil Procedure 30(d) provides:

> Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours. The court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination.

Because Defendants have already deposed Plaintiff twice, once in this litigation and once in the consolidated action, Plaintiff certainly has the right to object to a third deposition. However,

B_76

because Defendants' second deposition of Plaintiff focused on Plaintiff's discovery misconduct, the Court determines that an additional deposition is necessary for Defendants "to fairly examine the deponent." Fed. R. Civ. P. 30(d). This deposition shall not exceed three hours.

Accordingly, Defendants' Discovery Motion (ECF No. 66) is **GRANTED IN PART** and **DENIED IN PART,** as follows:

1. Plaintiff's counsel is ordered to search Plaintiff's AOL email account for the terms: (i) EDCare; (ii) Schillinger; (iii) employ; and (iv) the name of any co-worker from EDCare whose name might produce documents responsive to the November 8th Order. By **July 3, 2014,** Plaintiff's counsel shall file a Notice of Compliance indicating the searches that counsel has performed. Counsel shall provide any responsive documents to Defendants' counsel by **July 14, 2014**.

2. Plaintiff's objection to Defendants' AOL subpoena is overruled.

3. Defendants' counsel may continue Plaintiff's deposition for an additional three hours. Plaintiff and Defendants shall confer to agree on a date and time for the continued deposition.

4. Defendants' request for attorneys' fees and costs in bringing the instant Discovery Motion is denied. Under Federal Rule of Civil Procedure 37, the Court determines that Plaintiff's opposition to the motion was substantially justified. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii). Moreover, Defendants' request for attorneys' fees and costs associated with a continued deposition of Plaintiff is denied.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida on June 19, 2014.

*Alicia O. Valle*
_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Robert N. Scola, Jr.
All Counsel of Record