UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Amy St. Pierre, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil No. 1:20-cv-01173-PB |
| | ) |
| Stephen J. Griffin, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO DEFENDANT'S MOTION TO DISMISS**

Pro se Plaintiff, Amy St. Pierre, respectfully submits this memorandum in support of her Objection to the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendant Stephen J. Griffin by his counsel Pollack Solomon Duffy LLP.

**Introduction**

Pro se Plaintiff, Amy St. Pierre, filed her complaint against Defendant Stephen J. Griffin in Rockingham Superior Court on November 23, 2020, arising from Griffin's conduct in intentionally accessing, sharing, and modifying the personal Google account of Mrs. St. Pierre, without authorization, and then multiple acts of retaliation, harassment, and intimidation over a year and a half after she filed a criminal complaint against him. When making his arguments, Griffin ignores many of the factual allegations against him, and instead submits a lengthy document of false statements, obsessing on the Plaintiff's husband (falsely claiming in his first sentence that he is tied up in litigation), and Legacy Global Sports ("Legacy"), the company that Griffin led into bankruptcy. Griffin falsely and fraudulently states that the documents he

1

accessed were Mrs. St. Pierre's husband's and he was authorized to do so.  In fact, these folders and documents were actually located on Mrs. St. Pierre's personal Google Drive, and illegally accessed and shared by Griffin.

The Defendant moved this case to federal court on December 10, 2020, and subsequently filed a motion to dismiss. For the reasons explained in this Memorandum, Mrs. St. Pierre respectfully requests that this Honorable Court deny the motion to dismiss in its entirety.

**Pertinent Facts**

This Court must accept the allegations in the Plaintiff's Complaint as true: that Griffin accessed and shared Mrs. St. Pierre's personal Google Drive without her knowledge or authorization. (Cmplt. ¶ 12).  Her personal Google Drive is located on her private Gmail account and is not located on Legacy's system. Mrs. St. Pierre never authorized Griffin to access her personal Google account; which he did, by fraudulently representing himself as Mrs. St. Pierre's husband, using her husband's name and picture, in order to deceive her.  Griffin, posing as Mrs. St. Pierre's husband, shared the information in Mrs. St. Pierre's personal Google Drive with other Legacy employees and his Counsel Barry Pollack. (Cmplt. ¶¶ 12-13). The personal account accessed contained information regarding Mrs. St. Pierre's medical history, financial history, employment, information about her children, private photos, and other highly sensitive information. (Cmplt. ¶ 12).  Griffin began illegally accessing Mrs. St. Pierre's personal account to try and find adverse information to force Mrs. St. Pierre's husband, who co-founded Legacy Global Sports in 2003, to give up his shares in the company. (Cmplt. ¶ 9).

After Mrs. St. Pierre realized Griffin had illegally accessed and shared her personal Google account, she filed a criminal complaint with the local police and FBI. (Cmplt. ¶¶ 16-17).

Upon information and belief, Pollack was made aware of this in July 2019 and he notified Griffin. He was also made aware that Mrs. St. Pierre was trying to get Google to provide what information in her account that was accessed, and by whom. Google has responded to Mrs. St. Pierre's requests stating that she can only get the information on her account from a subpoena:

> "it is Google's policy to only provide subscriber information pursuant to a properly served, valid third party subpoena or other appropriate legal process." (Cmplt. ¶ 17)

Immediately after, Griffin intentionally and fraudulently flipped the narrative in court documents and verbally with blatant false statements against Mrs. St. Pierre claiming she accessed and deleted Legacy's documents. (Cmplt. ¶ 18). Griffin repeatedly made these false claims to retaliate against Mrs. St. Pierre for filing the criminal complaint and to intimidate her so she wouldn't pursue any further action.

For two years, Griffin has maliciously used the law as a weapon against Mrs. St. Pierre. Griffin also used his recently published book as a weapon to retaliate, embarrass, harass, and intimidate Mrs. St. Pierre and many former Legacy employees. (Cmplt. ¶¶ 30-34).

## Discussion

### I. STANDARD OF REVIEW

Defendant Griffin brings his motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which provides a mechanism to dismiss a claim only if the complaint has failed to state a claim upon which relief can be granted. Under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims made in the complaint. *Courtenay Communications Corp. v. Hall*, 334 F. 3d 210, 213 (2nd Cir. 2003).

## II.  LEGAL ARGUMENT

### A.  Defendant Griffin Asks This Court to Accept His Facts as True and to Decide Legal Issues that Go Beyond the Analysis Required to Decide a Rule 12(b)(6) Motion.

For purposes of a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), this Court must accept the factual statements set forth in Plaintiff St. Pierre's Complaint as true. Defendant Griffin begins his motion with a seven-page statement and background, and seventeen-page discussion, setting forth his own version of the "facts," completely unsubstantiated and directly contrary to the facts in Mrs. St. Pierre's Complaint. Mrs. St. Pierre requests this Court disregard Griffin's statements, as the unsupported, unsubstantiated allegations are improper in a Fed. R. Civ. P. 12(b)(6) motion to dismiss**.**

Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).  Griffin claims that he attached Defendant's Motion to Dismiss Attachment (3) "Exhibit JSP ACTION SECONND AMENDED COMPLAINT" because it represents "certain materials on which Mrs. St. Pierre relies"; however, Mrs. St. Pierre's Complaint only references one statement (item 84) out of the 37-page public record court document.  She does not rely on the other statements in this document because they contradict the Plaintiff's allegations stated in the Complaint. Griffin, again, uses this document to set forth his own version of facts, even

though he is aware most of the counts have been dismissed as stated in the public Orders that Mrs. St. Pierre does rely on and references, *Legacy Glob. Sports, L.P. v. St. Pierre*, No. 218-2019-CV-00198 (N.H. Super. April 27, 2020) and (N.H. Super. May 15, 2020), and yet Griffin did not attach those.

**B. Plaintiff St. Pierre has asserted facts entitling her to relief from Defendant Griffin:**

For the reasons detailed below, Plaintiff St. Pierre has asserted facts entitling her to relief from Defendant Griffin. Mrs. St. Pierre has raised five claims for relief based on Griffin's conduct: 1) violation of the Stored Communications Act, 2) identity fraud, 3) invasion of privacy, 4) retaliation, intimidation, and interference, and 5) defamation. Therefore, while Griffin has set forth his own version of facts, and has relied on items outside the pleadings in support of his motion to dismiss, this Court is required to accept the allegations in the Complaint as true, and draw all inferences in favor of the Plaintiff.

**1. Amy St. Pierre's complaint states a claim for violation of the SCA**

The Stored Communications Act ("SCA"), codified at 18 U.S.C. § 2701 *et seq.*, bars unauthorized access to a facility for electronic service. Pursuant to the statute, whoever:

> (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or
> (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

Similar to the SCA, NH Rev Stat § 638:17 (2016) for Fraud - Computer Related Offenses sections I and IV states:

> I. A person is guilty of the computer crime of unauthorized access to a computer or computer network when, knowing that the person is not authorized to do so, he or she knowingly accesses or causes to be accessed any computer or computer network without authorization.

5

> IV. A person is guilty of the computer crime of misuse of computer or computer network information when: (a) As a result of his or her accessing or causing to be accessed a computer or computer network, the person knowingly makes or causes to be made an unauthorized display, use, disclosure, or copy, in any form, of data residing in, communicated by, or produced by a computer or computer network;

The SCA provides for a civil remedy at § 2707, stating that any person who has been aggrieved by a violation of § 2701 *et seq.*, "in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity." The SCA reflects Congress's judgment that users have a "legitimate interest in the confidentiality of communications in electronic storage at a communications facility." *Theofel v. Farey-Jones*, 341 F.3d 978, 982 (9th Cir. 2003); *withdrawn and amended by* 359 F.3d 1066 (9th Cir. 2004).

Here, Mrs. St. Pierre has set forth sufficient facts showing Griffin intentionally accessed, shared, and modified, without authorization, her electronic communication service. (Cmplt. ¶¶ 12-13). Griffin accepts that in a motion to dismiss a case pursuant to Fed. R. Civ. P. 12(b)(6) this Court must accept all allegations in Plaintiff's Complaint as true. Yet, Griffin asserts his own version of the facts, arguing "the Complaint fails to make adequate allegations that Mr. Griffin's access to the Google Drive at issue, as Legacy Global former CEO, was unauthorized." It is improper for this Court to rule that Griffin had authorization to access Mrs. St. Pierre's personal Google Drive, as that is a factual conclusion directly contrary to the allegations set forth in Mrs. St. Pierre's Complaint. Rather, as stated in Mrs. St. Pierre's Complaint, and as shown in Complaint's Exhibit 1 and 2, there were at least two documents on Mrs. St. Pierre's personal Google drive that were accessed, shared, and modified by Griffin. (Cmplt. ¶¶ 12-13). Griffin's argument relies only on whether he was given authorized access to the employee's account, which is the Plaintiff's husband, and not the Plaintiff. Mrs. St. Pierre was not an employee of

Legacy. Her personal Google Drive is located on her personal Gmail Account, which is not on Legacy's system. This Court must accept these facts as true, which defeats Griffin's claim that he had the authorization to access Mrs. St. Pierre's personal account.

Further, employers are not even given unfettered access to the personal accounts of their employees. Courts have rejected the notion that mere company ownership is the determinative factor in determining whether an employee's personal emails may become the company's property. See *Stengart v.Loving Care Agency*, 408 N.J. Super. 54, 69 (2009); or that an employer can access a personal g-mail account without authorization (where the Court defined "the g-mail server" as the "facility."). *Lazette v. Kulmatycki*, 949 F. Supp. 2d 748 (N.D. Ohio 2013).

As such, Plaintiff St. Pierre requests this Court deny Defendant Griffin's motion to dismiss as it pertains to the Stored Communications Act.

**2. Amy St. Pierre's complaint states a claim for identity fraud.**

Identity Fraud under NH Rev Stat § 638:25 *et seq*. states that a person is guilty of identity fraud when the person:

> (a) Poses as another person with the purpose to defraud in order to obtain money, credit, goods, services, or anything else of value;
> (b) Obtains or records personal identifying information about another person without the express authorization of such person, with the intent to pose as such person;
> (c) Obtains or records personal identifying information about a person without the express authorization of such person in order to assist another to pose as such person; or
> (d) Poses as another person, without the express authorization of such person, with the purpose of obtaining confidential information about such person that is not available to the general public.

Griffin claims that Mrs. St. Pierre was not a victim because she was not owner of the identity that was fraudulently used; however, Mrs. St. Pierre does not need to be owner of the identity that was fraudulently used to be a victim. Although many states have specific laws on "Catfishing" and "Impersonation" related to this type of fraud and scams, NH § 638:25 covers

7

this with the definition of "Victim" as "any person or entity that provided money, credit, goods, services, or anything of value and has suffered financial loss as a direct result of the commission or attempted commission of a violation of this subdivision." Griffin posed as Mrs. St. Pierre's husband in order to obtain valuable information and documents that were located in her personal Google account. Griffin obviously found these documents valuable because he shared them with others, including his Counsel Barry Pollack. (Cmplt. ¶¶ 12-13). Mrs. St. Pierre has suffered financial loss as a direct result of Griffin violation including the time and money to secure her account, legal bills, and those related to emotional distress.

  Although Legacy owns Mrs. St. Pierre's husband's Legacy email address, Griffin did not have authorization to use the email address and the profile associated with his email address, which then displays his name "John St.Pierre" and his picture as identifiers, in order to pose as Mrs. St. Pierre's husband to gain access into her personal Google account. Griffin did so to defraud her in order to obtain documents and information. On other Legacy accounts where the person is no longer employed, their accounts were "deactivated" in a way that it can still be accessed by administrators, and documents that are pertinent are transferred to new Owners. Complaint's Exhibit 5-6 (also Def.'s MTD attachment 4) demonstrates this with former employee sschultz@legacyglobalsports.com (Skipp Schultz), which is an account that was deactivated on January 9, 2016. Skipp Schultz gave Mrs. St. Pierre access to one of his folders in 2014, so when his Legacy account was deactivated, his identifier showed to Mrs. St. Pierre as "Deleted User", rather than "Skipp Schultz" with his picture, as it had before Jan. 2016. The pertinent files were then transferred to new Owners, and as shown in Complaints Exhibits 5-6, several folders were transferred to John St.Pierre's Legacy account. However, in December 2018 when John St.Pierre was no longer employed at Legacy, the jstpierre@legacyglobalsports.com

files were not transferred and his "John St.Pierre" account and personal identifying profile stayed active and were used by Griffin for the year he was CEO, until Legacy went bankrupt. Griffin acknowledges that he was given administrative access to Legacy's Systems and yet as shown in Complaints Exhibits 5-6, on Sept 19, 2019, ten months after John was no longer with Legacy, Griffin continued to log in as John St.Pierre, instead of using his own account. In the upper right corner of those screenshots shows the Legacy Global Sports logo with a picture of John St.Pierre. Griffin would not been able to access and obtain information from Mrs. St. Pierre if he had used his own account. Griffin posed as Mrs. St. Pierre's husband, using John St.Pierre's name and picture, in order to deceive her and obtain access to her personal account.

As such, Plaintiff requests this Court deny Defendant's motion to dismiss as it pertains to Identity Theft.

### 3. Amy St. Pierre's complaint states a claim for invasion of privacy.

New Hampshire law recognizes four torts based on invasion of privacy, but in this case, Plaintiff relies on two: "intrusion on seclusion intrusion upon the plaintiffs physical and mental solitude or seclusion;" and "publicity which places the plaintiff in a false light in the public eye;" *Hamberger v. Eastman*, 106 N.H. 107, 206 A.2d 239 (1964).

Griffin has again argued that Mrs. St. Pierre's claim "is premised on her facially incorrect assumption that the Google Drive account at issue belongs to her, rather than Legacy Global", and further that "any particular document observed by Griffin", without authorization, "caused her harm". The Google Drive account in question is a personal account that belongs to Mrs. St. Pierre (Cmplt. ¶¶ 12-13), and for this Court to accept otherwise would be to disregard the facts set forth in Plaintiff's Complaint and accept the Defendant's version of the facts as true. Mrs. St.

Pierre had an expectation of privacy in her personal account and did not expect that her personal Google account, on her Drive, not Legacy's, would be accessed on multiple occasions without her consent by Griffin, the CEO of her husband's former employer, which is highly offensive. Mrs. St. Pierre has also sufficiently pleaded that Griffin's conduct would be highly offensive to a reasonable person and caused her harm. Griffin's invasion of privacy directly and proximately caused Mrs. St. Pierre to suffer humiliation, emotional distress, as well as created a financial burden to secure her accounts (Cmplt. ¶¶ 15, 52).  Her personal Google Drive contained personal documents such as personal pictures, medical and financial documents, and personal and private information about her children and family. (Cmplt. ¶ 12). The extent (beyond the two documents that Griffin shared) to which Mrs. St. Pierre's personal files were accessed by Griffin are still unknown and that information will be sought during discovery.

Griffin also obtained personal text messages that Mrs. St. Pierre sent to friends that still worked at Legacy (Cmplt. ¶ 38).  One embarrassing text message that Mrs. St. Pierre sent to a friend on New Year's Eve contained unprofessional language including profanity and was published in "200301 Combined Opposition to the Motions by JSP NAH and ASP to Quash FILING" (No. 218-2019-CV-00198) (which is also Def.'s MTD attachment 4), even though it was irrelevant to the subject matter of the controversy. Publishing the text message placed Mrs. St. Pierre in a false light in the public eye especially in that it was intentionally edited to cut off the recipient so that Defendant's Counsel Rakhunov could make the false claim that the text message was sent "to a Legacy Global board member", rather than a friend of nearly twenty years who was not a Legacy Board Member.

As such, Plaintiff requests this Court deny Defendant's motion to dismiss as it pertains to Invasion of Privacy.

**4. Amy St. Pierre's complaint states a claim for retaliation, intimidation, and interference.**

New Hampshire's Laws Against Discrimination (NH RSA 354-A) define retaliation as:

> "an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to discharge, expel, or otherwise retaliate or discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under this chapter."

NH RSA 354-A:11 defines Interference, Coercion or Intimidation as:

> "an unlawful discriminatory act to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this chapter."

The Equal Employment Opportunity Commission ("EEOC") similarly defines retaliation under federal discrimination laws as occurring "when an employer takes a materially adverse action because an individual has engaged in, or may engage in, activity in furtherance of the EEO ("Equal Employment Opportunity") laws the Commission enforces." *See EEOC Enforcement Guidance on Retaliation and Related Issues* dated August 25, 2016 ("*EEOC Enforcement Guidance*").  Under state and federal law, an activity is considered "protected" if it is in furtherance of the EEOC laws and/or NH RSA 354-A.

Griffin's argument that Mrs. St. Pierre has "no employment relationship in which actionable retaliation could occur" is not valid because the *EEOC Enforcement Guidance* recognizes Third Party Retaliation where the "Person Claiming Retaliation Need Not Be the Person Who Engaged in Opposition":

> Sometimes an employer takes a materially adverse action against an employee who engaged in protected activity by harming a third party who is closely related to or associated with the complaining employee." *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170 (2011).
> Where there is actionable third party retaliation, both the employee who engaged in the protected activity and the third party who is subjected to the materially adverse action may state a claim. The third party may bring a claim even if he did not engage in the protected activity, and even if he has never been employed by the defendant employer. "Regardless of whether the plaintiffs are employed by the defendant, . . . the harm they suffered is no less a product of the defendant's purposeful violation of the anti-retaliation provision." *Tolar v. Cummings*, No. 2:13-cv-00132-JEO, 2014 WL 3974671, at *12 (N.D. Ala. Aug, 11, 2014). As the Supreme Court stated, the

> third party was not an "accidental victim"; "[t]o the contrary, injuring him was the employer's intended means of harming the [employee who engaged in protected activity]." *Thompson*, 562 U.S. at 178. Thus, the third party "falls within the 'zone of interests' sought to be protected by [the retaliation provision]" and has standing to seek recovery from the employer for his harm. Id. at 177 (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 883 (1990) (internal quotation marks omitted));

The EEOC Enforcement Guidance also states that the retaliation does not need to be employment-related:

> Retaliation expansively reaches any action that is "materially adverse," meaning any action that might well deter a reasonable person from engaging in protected activity.
> A materially adverse action may also be an action that has no tangible effect on employment, or even an action that takes place exclusively outside of work, as long as it might well dissuade a reasonable person from engaging in protected activity. Prohibiting only employment-related actions would not achieve the goal of avoiding retaliation because "an employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 63 (2006);

Plaintiff St. Pierre is a Third Party victim of retaliation and intimidation by Griffin, who was the CEO of her husband's previous employer. Both she, as a third party, and her husband, as the employee, engaged in numerous protected activities and suffered corresponding materially adverse action by Griffin, as stated in the Complaint and in this Memorandum.

Griffin also claims his statements in court records are protected under Absolute Privilege. However, Mrs. St. Pierre's documents were irrelevant to the subject matter of the controversy, which the Honorable Judge Richard B. McNamara acknowledged in granting Mrs. St. Pierre's Motion to Quash: "the classic explanation of a fishing expedition" and "discovery can be expensive and result in delay. It can be used as a weapon against a party with fewer resources.". (Cmplt. ¶ 28).

As such, Plaintiff requests this Court deny Defendant's motion to dismiss as it pertains to for retaliation, intimidation, and interference.

**5. Amy St. Pierre's complaint states a claim for defamation**.

The final claim set forth in Mrs. St. Pierre's complaint is for defamation. Defendant Griffin seeks dismissal of Plaintiff's defamation claim based only on Griffin's book, and again, on Mrs. St. Pierre's husband rather than Mrs. St. Pierre. However, Griffin also published, both orally and in writing, false defamatory statements as fact regarding Mrs. St. Pierre and her family in multiple documents, to friends, colleagues, and other third parties. (Cmplt. ¶¶ 19-20, 37-39, 57, 59). Those false and defamatory statements about Mrs. St. Pierre include, but are not limited to, the statements of criminal conduct. Maliciously accusing Mrs. St. Pierre, an IT professional, of committing criminal conduct related to computer systems and intentionally deleting documents that were on litigation hold is damaging to her professional reputation.

Griffin contends that the labeling of the book as fiction bars any claim that the characters are representations of actual, nonfictional persons. "However, the test is whether a reasonable person reading the book would understand that a fictional character therein is a description of the Plaintiff." *Mitchell v. Bindrim,* 1979 U.S. LEXIS 4011, 444 U.S. 984, 100 S. Ct. 490, 62 L. Ed. 2d 412 (U.S. 1979). Anyone who knows Mrs. St. Pierre would easily identify her in the book. Griffin's book maliciously attacks everyone associated with Legacy who had filed lawsuits and harassment and other claims against him, including Mrs. St. Pierre; and although Griffin changed their names in the book, any Legacy employees who read the book would easily identify the actual, nonfictional people in his book and would identify the companies in the book as Legacy Global Sports (Griffin changed to "Epic World Sports") and its soccer division, Global Premier Soccer (GPS). In addition, Griffin's one-sided, malicious autobiography is listed as non-fiction on Amazon under "Biographies of White Collar Crimes" and "White Collar Crimes True Accounts" and even the title of the book "Greed and Corruption in a Youth Sports Company – a

13

book that explores business ethics; accounting and legal matters" clearly identifies this as a factual business publication. On the back cover of the book, the author Griffin's bio reads "a book that explores busines ethics; accounting and legal matters; and his own path to acceptance and rediscovering what matters most." The book summary, which is also on the back cover, clearly portrays it as an autobiography. Even more telling is that Griffin did not change the names of his wife and kids as he writes about them in his book.

Griffin also argues the First Amendment; however, the First Amendment does not render Defendant's defamatory statements as non-actionable. Griffin seeks dismissal of Mrs. St. Pierre's defamation claim asserting that the offending statements constitute protected opinion as a matter of law. In support of his position, Griffin relies on the doctrine of constitutionally protected opinion as applied in *Piccone v. Bartels*, 785 F.3d 771 (citing *Milkovich v. Lorain Journal*, 497 U.S. 16 (1990). Following Milkovich, courts are to assess whether the description of the Plaintiff that is at issue "reasonably implies" the alleged defamatory meaning and if so whether the Defendant's accusation about Plaintiff is capable of being proven false. *Flamm v. American Association of University Women*, 201 F. 3d 144, 151 (2nd Cir. 2000). Clearly Griffin's defamatory statements accusing Mrs. St. Pierre of unethical, criminal conduct constitute actionable defamation as Griffin's statements are expressions of defamatory facts which can be proven false. Griffin expressly states that Mrs. St. Pierre, who works as an IT consultant, performed an illegal act within her profession, "in the midst of a messy legal battle; yet she thought it was appropriate to access the company's Google Drive and delete files." (Cmplt ¶ 30).

Finally, the existence of a defamatory meaning is generally a question of fact for the jury. *Maidman v. Jewish Publications, Inc.*, 54 Cal.2d 643, 355 P.2d 265, 269, 7 Cal.Rptr. 617, 621 (1960); *Gallagher v. Chavalas*, 48 Cal.App.2d 52, 58, 119 P.2d 408 (1941).

As such, Plaintiff requests this Court deny Defendant's motion to dismiss as it pertains to Defamation.

## Conclusion

Based on the foregoing, pro se Plaintiff, Amy St. Pierre, respectfully requests that this Honorable Court deny the motion by Defendant Stephen J. Griffin to dismiss the claims against him in its entirety.

Dated: January 10, 2021

Respectfully submitted,

AMY ST. PIERRE, *pro se*

By:  /s/ Amy St. Pierre_____
Amy St. Pierre (*pro se* Plaintiff)
3 Bradley Lane
North Hampton, NH
Tel: (856) 264-2401
Email: amy.stpierre25@gmail.com

**CERTIFICATE OF SERVICE**
The undersigned certifies that defendant Stephen J. Griffin is being served with a copy of this Motion by via Electronic Filing and by email on Jan. 10, 2021 at prakhunov@psdfirm.com.

 /s/ Amy St. Pierre_____