UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Amy St. Pierre, | ) |
| Plaintiff | ) |
| v. | ) Civil No. 1:20-cv-01173-PB |
| Stephen J. Griffin, | ) |
| Defendant. | ) |

### REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO DISQUALIFY DEFENSE COUNSEL

Pro se Plaintiff, Amy St. Pierre, respectfully submits this Reply to address factual errors in Defendant Stephen J. Griffin's Opposition to Plaintiff's Motion to Disqualify Defense Counsel Phillip Rakhunov and Pollack Solomon Duffy LLP.

## Introduction

For the past two years, Defendant's Counsel, Phillip Rakhunov and Barry Pollack, engaged in unethical conduct towards Mrs. St. Pierre and were facilitators for the Defendant Stephen Griffin's harassment and defamation against Mrs. St. Pierre. Rakhunov and Pollack are also witnesses in this case, and defending their own actions and interests, as well as their client's, has caused a conflict of interest. Griffin and Rakhunov continue to use this Court as a platform to maliciously attack Mrs. St. Pierre's husband with statements they know are false and irrelevant and attaching duplicate and irrelevant documents only meant to cause embarrassment and distract from the facts of the Complaint. The misconduct by Rakhunov and Pollack and their client Stephen Griffin in inventing evidence and carefully wording statements purposely intended to evade the truth is truly egregious.

**Defendant's Factual Background Errors**

*"Acrimonious Pleadings Laced with Gratuitous Ad Hominem Attacks"-* Judge Richard B. McNamara

1- Griffin's Opposition is again focused on attacking and obsessing over Mrs. St. Pierre's husband and is filled with fraudulent, malicious, and libelous statements. Stating in the second sentence of his preliminary statement that Mrs. St. Pierre's husband committed "illegal activities at Legacy Global" is not only **false**, but it is perjury, as Griffin knows this to be false, and has also been proven false in court documents, including the depositions of Charles Huggins, former CFO of Legacy Global Sports ("Legacy"), and Jason Mitchell, former Vice President of Finance for Legacy (*see* Exhibit A (JSP Letter incl Depositions 12.01.20)).  Griffin also fraudulently cites the Plaintiff's Complaint paragraph 9 saying that "he was fired for cause" when the Complaint paragraph 9 factually states "**without** cause" (emphasis added). (Cmplt. ¶ 9; *see* Exhibit B (JSP COUNTERCLAIMS 5.2.19)).

2- Implying in the second and third sentence that Mrs. St. Pierre's husband is involved in an FBI investigation is deplorable and completely **false**, as Griffin knows.  Mrs. St. Pierre's husband is not under investigation and the FBI has never contacted him, even as a witness. On the contrary, Griffin was actually CEO when the FBI raided Legacy offices in October 2019, almost a year after Mrs. St. Pierre's husband was terminated.

3- Griffin alleges that the plaintiff has waged a personal vendetta to smear him.  This is **false**. Until this lawsuit, which was filed immediately after Griffin published his false and malicious book, Mrs. St. Pierre had only taken one action against Griffin - the criminal complaint in June 2019.  Mrs. St. Pierre would prefer to never have to concern herself with Stephen Griffin or his Counsel again.  As stated in her Complaint, "With Legacy in Bankruptcy, Mrs. St.Pierre thought Griffin's harassment would stop because he no longer

had access to lawyers being paid by Legacy, which he was using for his own personal benefit." (Cmplt. ¶ 9).

It has been Griffin who has been the aggressor. He started targeting Mrs. St. Pierre in December 2018 when Griffin began illegally accessing Mrs. St. Pierre's personal account to try and find adverse information (which he did not) to force Mrs. St. Pierre's husband, who co-founded Legacy Global Sports in 2003, to give up his shares in the company. (Cmplt. ¶ 9). Mrs. St. Pierre felt violated, and her main objective was to ascertain what files Griffin accessed on her personal Google Drive, beyond what he shared with Pollack. Unfortunately, this can only be done with a subpoena or Warrant to Google. Once Pollack realized he would be implicated in accessing Mrs. St. Pierre's Google account, he has prevented Mrs. St. Pierre from obtaining this information. Even after the constant attacks from Griffin smearing her name (Cmplt. ¶¶ 19-20, 37-39, 57, 59), she took no action until February 2020 when she was forced to respond to two absurd subpoenas for all of her personal email and private electronic information (Cmplt. ¶ 21). It is not a coincidence that the date the first subpoena was written, January 28, 2020, was the date that Jason Mitchell, former Vice President of Finance for Legacy, gave a deposition refuting all claims against Mrs. St.Pierre's husband. (Exhibit A pp. 10-14). This was actually was the final blow to the fraudulent case incited by the Legacy legal trio of Griffin, Pollack, and Rakhunov and so the subpoena was a desperate attempt to intimidate Mr. St.Pierre by coming after his wife and causing them more financial hardship.

Mrs. St. Pierre then had to pay a lawyer to respond to the two harassing subpoenas. The draft Motion to Quash Mrs. St. Pierre wrote included information about Griffin and Pollack accessing Mrs. St. Pierre's account without authorization; however, her lawyer advised

3

against including it saying it was better to keep it simple based strictly on law that there was "no rational basis" for Rakhunov to subpoena all of her personal email and private electronic security information; and more importantly, because he was aware Griffin and Pollack had a history of retaliation and would use it to cause Mrs. St. Pierre more money to defend. So he submitted the Motion to Quash on February 19, 2020, without those facts. In response, on March 1, 2020, Pollack and Rakhunov issued the Opposition with false statements and fabricated and manipulated documents in an attempt to sway the Judge to approve the subpoenas for access to Mrs. St. Pierre's personal email and documents. (Cmplt. ¶¶ 23-27, Exhibits 4-6). Mrs. St. Pierre's lawyer felt her Motion to Quash was adequate and would only cost her more money to put forward the illegally accessed email, and misconduct of false statements and manipulated documents, so his Reply to their Opposition stated "To serve her, the wife of a Defendant, and Google with overbroad subpoenas without any legitimate explanation can be perceived as a form of harassment and an attempt at intimidation." Judge Richard B. McNamara agreed and GRANTED Mrs. St.Pierre's Motion to Quash saying "the subpoenas are defective" and "the classic explanation of a fishing expedition" and "acrimonious pleadings laced with gratuitous ad hominem attacks". He said "discovery can be expensive and result in delay. It can be used as a weapon against a party with fewer resources." (Cmplt. ¶ 28; *see* Exhibit C (Ct.Order GRANTING Mot to Quash)). As a non-party to that lawsuit, she was not aware that it was in her best interest to bring this misconduct to the attention of the Judge, which is also why she is addressing the false statements in Defendant's Opposition in this case. It is inexcusable that Griffin continues to intentionally mislead this Court, with statements such as, "While she prevailed on the motion, the state court did not adopt her accusation that Legacy Global 'submitted fabricated

4

and manipulated documents'". Griffin, Pollack, and Rakhunov know that the state court was not made aware of the misconduct; and unfortunately, the case is presently Stayed and Judge McNamara has retired.

*Unauthorized Access to Plaintiff St. Pierre's Google Drive:*

4- Griffin has filed several pleadings alleging that "the Google Drive account at issue belonged not to Amy St. Pierre, but to Legacy Global." This is **false** and another example of a carefully worded statement to evade the truth so they can claim their statement refered to the "account at issue" being "Legacy Global Sports and Its Google Drive Account". However, as stated in the Complaint and shown in the Complaint Exhibits, the Google Drive "at issue" is amystp25@gmail.com, which is a personal account belonging to Mrs. St. Pierre. Specifically, there are two documents that were uploaded to and stored on amystp25@gmail.com that Mrs. St. Pierre knows were accessed, without authorization, by Griffin and shared with Pollack: "Seacoast Sports PP.pptx" and "Seacoast Sports Village.docx" (herein referred to as "*Seacoast Files*") (Cmplt. ¶¶ 12-15, Exhibits 1-2). This can easily be proven with a subpoena to Google requesting:

> 1- All activity for the Google Drive account amystp25@gmail.com between December 25, 2018, and January 5, 2019; and
> 2- Account holder and user profile information (including IP addresses) of those accounts that accessed (sent/received, opened, downloaded, saved, printed, etc.) any data stored on or made any changes to the above-referenced Google Drive account between December 25, 2018, and January 5, 2019.

5- Griffin falsely alleges:

> "Even if plaintiff had been an "Owner" or creator of a particular document (such as the document referenced in Exhibit 2 to the Complaint), once plaintiff uploaded such a document to the Legacy Global's Google Drive (see Cmplt., Exh. 2), she provided Legacy Global and its constituents with authorized access to any such materials."

5

This is **false**. Mrs. St. Pierre did <u>not</u> upload any document to Legacy's Google Drive. The "particular" documents "referenced in Exhibit 2 to the Complaint" (and Cmplt. Exhibit 1) are the *Seacoast Files* which were uploaded on September 18, 2018 to Mrs. St. Pierre's personal Google Drive amystp25@gmail.com.

6- Griffin and Rakhunov continue to claim that their fraudulent Rakhunov Dec. Exhibits, dated September 13, **2019**, are "forensically captured screenshots" from an account registered to sschultz@legacyglobalsports.com (Skipp Schultz), even though that account was deactivated on January 9, **2016**. As stated above, the *Seacoast Files* were uploaded on September 18, **2018**, two years and eight months after Schutz's account was deactivated. Even more telling is that they boast that the screenshots "bear the Legacy Global logo at the top right," but fail to mention that right next to that logo is a picture of Mrs. St. Pierre's husband, John, not Skipp Schultz. When John was terminated in November 2018, administration access was given to Griffin, and yet instead of logging into his account, he fraudulently logged in as John, not only using John's former email address, which does belong to Legacy (not Griffin), but also his profile (his personal identifying name and picture), which does <u>not</u> belong to Legacy (or Griffin).

7- Griffin also fraudulently repeats on page 6 of the Opposition:

> "The Court may take judicial notice that the files about which Mrs. St. Pierre complains in this lawsuit and which she had either removed or restricted are in fact documents concerning the Seacoast Spartans, the Seacoast Performance Academy, and the development of a large-scale dormitory, the Seacoast Sports Village, which are the very activities underlying Legacy Global's claims in the JSP Action about Mr. St. Pierre using Legacy Global's resources for his own competitive advantage. (Compare Cmplt. ¶ 12(a)-(d), with Exhibit A, ¶¶ 2, 42-72.)"

The contents of the *Seacoast Files*, which clearly identified Amy St.Pierre as the Owner, are irrelevant because she is not employed by Legacy, and therefore is not a "Legacy Global resource", nor does she have non-compete obligations with Legacy. The *Seacoast Files* were

located on Mrs. St. Pierre's personal Google Drive and accessed by Griffin and Pollack without her knowledge or authorization, and the Defendant has not denied this. Instead, he has used clever wording to evade the truth.

However, since Griffin made the statement to mislead and bias the Court, Mrs. St. Pierre will address the irrelevant allegations that he continues to obsess on, while adding unnecessary complexity. The *Seacoast Files* are related to the Rinks at Exeter ("Rinks"), the ice rink where the Rinks' youth hockey team, the Seacoast Spartans, and Seacoast Performance Academy play. These files do not at all indicate a plan to compete with Legacy. These documents originated from the previous Rinks owner's aspiration in 2008 to expand the rink by potentially adding a third rink, other sports fields, and hotel. Legacy does not own or manage facilities. They rent from facilities when they run sports events. In fact, the Seacoast Spartans was one of many youth sports clubs that paid for Club Services offered by Legacy, including uniforms supply, club registration services, website and marketing services, and programming for tours, camps, and tournaments. The Spartans paid the same market rates for Club Services as all other organizations that participated in the Club Services program, and generated over $800,000 in revenues for Legacy from 2015-2018 (Exhibit B ¶¶ 38-39). The Rinks and Spartans were a customer, not a competitor. Judge McNamara acknowledged this in an Order dated November 19, 2019, allowing John to purchase other rinks and youth hockey programs, if he chose to, stating:

> "Legacy seeks a preliminary injunction to prevent St. Pierre from engaging in business activities that would violate noncompetition obligations it alleges that he owes to Legacy. Legacy seeks relief based upon an offer of proof, and documents and affidavits submitted to the court. The offer of proof provided to the Court does not establish a basis to find that Legacy has met its burden of proving a likelihood of success on the merits" (*see* Exhibit D (Ct.Order JSP TRO noncompete 11.21.19)).

In addition, on April 27, 2020, Judge McNamara dismissed all the claims against the Rinks. (*see* Exhibit E (Ct.Order Rinks case dismissed 4.27.2020)).  Unfortunately, by then, the damage had been done. Griffin and his Counsel Pollack and Rakhunov used the law as a weapon knowing that frivolous lawsuit would tie Mrs. St. Pierre's husband and the Rinks up for years and cost Mrs. St. Pierre's family over $700,000 in legal fees, which they thought they would get back when they won the lawsuit.  However, by then, Griffin had already destroyed Legacy and drove it into bankruptcy.

The *Seacoast Files* were in Mrs. St. Pierre's personal files because she has a Bachelor of Science degree in Chemical Engineering and spent 15 years of her career doing facilities projects, including new building construction, in the food industry.  She provided technical consulting on the purchase of the Rinks in 2014[1], and during that due diligence had inquired about the previous Rink owner's expansion plans.  Griffin found these files on Mrs. St. Pierre's personal Google Drive and used them to claim that John was competing with Legacy, to justify the Board (controlled by Griffin and the private equity firm he brought in) terminating him and eliminating his Board seat.[2]

_____

[1] In 2014, Legacy was owned by John and two of his hockey friends that founded the company with him in 2003, and Ron Cain, who invested in 2010. Cain also owned an ice rink and a hockey team in Maine, and a logistics company. In 2014, Cain and John were asked to invest in the Rinks. Ultimately, John decided to invest in the purchase of the Rinks (making him 25% owner), and although Cain opted out, he did not object to John proceeding.

[2] John hired Griffin in September 2017, and in early 2018, Griffin brought in a private equity firm, Jefferson River Capital ("JRC"), to invest in Legacy. Almost immediately Griffin and JRC began actions to devalue Legacy in order to dilute and then eliminate John and the other founder's ownership in Legacy. When John confronted them, he was terminated without cause and his Board seat eliminated on Nov 28, 2018. They fabricated cause, alleging he violated noncompete obligations, even though they knew the Rinks and Spartans were a customer. When he refused to give up his ownership stake in Legacy and sign a non-compete, they started aggressively threatening, harassing, and bullying Legacy employees to get them to make false claims against John (this is documented, including in several lawsuits against Griffin by other Legacy employees).(see Exhibit A; Exhibit B)  When that didn't work, Griffin accessed Mrs. St. Pierre's personal account and found the *Seacoast Files* and used them in a lawsuit to claim it was proof John was competing with Legacy.

8- Griffin obviously did not understand what was actually written in the Complaint when he again makes the false statement on page 5 of his Opposition:

> "The Complaint also confirms that neither the Google Drive nor the files stored there belonged to Ms. St. Pierre. For example, she alleges that when she made efforts to remove all files from the Google Drive at issue and to restrict access by others at Legacy Global, she was not successful in doing so because, as Google support explained to Ms. St. Pierre, she could delete only "items she owned on her personal Google Drive." (Id. ¶¶ 13, 14.) In other words, the fact that Ms. St. Pierre did not have rights to permanently delete content from the Google Drive account at issue confirms that this account and documents at issue did not belong to her, and certainly not to the exclusion of Legacy Global."

This is **false** and not what the Complaint states. The Complaint states that Mrs. St. Pierre first <u>removed direct</u> access only for Griffin, Irwin, and Pollack to her files. However, because Griffin had created a link to the documents, she realized Barry Pollack and "Derek Irwin" could still access to her document because they were sent the link that Griffin created (Cmplt. ¶ 13, Exhibit 2). The only way to make sure there were no unknown links to her account was to permanently <u>delete</u> all her files. (Cmplt. ¶ 14). Once she deleted, Griffin and Pollack and others no longer had access, proving they were Mrs. St. Pierre's documents located on her Google Drive. "Remove" and "Delete" are very different terms in Google Drive and are defined in the Complaint. Only the Owner can Delete; therefore, any allegations that Mrs. St. Pierre deleted documents on Legacy's Drive is false. Legacy's Google Drive documents owned by Legacy cannot be permanently deleted by any party other than Legacy. (Id. ¶ 14).

*Criminal and Attorney Complaint:*

9- Griffin has stated that "law enforcement has rejected her theories" despite "persistent alleged follow up efforts". This is **false**. In fact, after Mrs. St. Pierre filed a complaint against Griffin with the Exeter, NH Police Department on June 18, 2019, Detective Patrick Mulholland met with Mrs. St. Pierre over several weeks in order to complete his

investigation. He decided the evidence was strong enough to take to the County Prosecutor. It was the County Prosecutor who decided not to proceed because she had "bigger fish to fry", not because law enforcement decided not to investigate or because they rejected her theories. The Detective advised that Mrs. St. Pierre should seek civil remedies.

10- In the Opposition's Declaration of Phillip Rakhunov, Rakhunov states:

> "After review, the Attorney Discipline Office summarily closed the matter, finding insufficient evidence of a violation of any rule of professional misconduct even to justify docketing Ms. St. Pierre's grievance." (Rakhunov Dec. ¶7.)

In fact, the Attorney Disciple Office docketed the Grievance, and after a couple of months, sent another letter[3] which stated:

> I have determined that there is no reasonable likelihood that a hearing panel would find clear and convincing evidence that Mr. Pollack violated the Rules of Professional Conduct.

The Attorney Disciple Office made their decision mainly based on Pollack's denial:

***Regarding Pollack's accessing of Mrs. St. Pierre's Google Drive***, Pollack has limited his admission to only receiving an email about Mrs. St. Pierre's documents:

> "I received an email from a Legacy employee on a legacyglobalsports.com account concerning these matters." (referring to "documents about another business, which she refers to as The Rinks at Exeter"). "I never *logged into* any account belonging to Ms. St. Pierre, and never encouraged anyone to do so," (emphasis added).

This is **intentionally misleading** and he does not deny the specific allegation that he accessed and printed/downloaded those documents (the *Seacoast Files*) which were on Mrs. St. Pierre's Google Drive. Pollack also carefully used "logged into" to mislead those who traditionally think of logging in as a username and password. In this case, Google Drive uses only a person's email address to validate their credentials and does not require a password.

---

[3]It is important to note that Mrs. St. Pierre did not attach this letter and did not mention in the Complaint because she is not confident in the status as it relates to confidentiality, which protects the attorney, and might explain why Counsel has attached everything to burden this Court with irrelevant material and yet did not attach this Attorney Disciple complaint or letter that he references throughout his Opposition.

10

In addition, in *Lazette v. Kulmatycki*, the Court found that a password was not an element in order to violate the SCA:

> "While password misuse did not occur here, it does not matter. I find nothing in the statute or anywhere else that suggests—just as with defendants' claim that only hackers are liable—use of a password somehow is an element which a SCA plaintiff must prove. If Kulmatycki had authorization to access plaintiff's g-mail account, he necessarily would have had authorization to use her password. If allowed to enter, he was entitled to use the key. This circumstance distinguishes cases finding password misuse. State Analysis, Inc. v. American Financial Services Assoc., 621 F.Supp.2d 309, 318 (E.D.Va.2009); Cardinal Health 414, Inc. v. Adams, 582 F.Supp.2d 967, 977 (M.D.Tenn.2008) (former employee who used former co-worker's log-in information "plainly violated the SCA as a matter of law.")." *Lazette v. Kulmatycki*, 949 F. Supp. 2d 748 (N.D. Ohio 2013).

Pollack also did not disclose that the email he received contained a link to documents stored directly on Mrs. St. Pierre's personal Google Drive. Pollack, at a minimum, violated NH Rule of Professional Conduct 4.4(b) by not notifying Mrs. St. Pierre that he had received an email regarding her documents. She believes that Mr. Pollack not only examined the materials, but actually printed and/or downloaded the document(s), and used those documents in the Legacy lawsuit to try and legitimize their false allegations, even though they were aware the documents were not relevant, as stated above in paragraph 7 above, and validated in Judge McNamara's Order in dismissing the case against the Rinks (Exhibit E). Unfortunately, the Attorney Discipline Office took Pollack's misleading statements literally, rather than asking him to clarify his statement and address the allegation directly, and further allowing Mrs. St. Pierre to prove her claim. They stated:

> Mr. Pollack denies ever logging into any Legacy email account or the Legacy Drive, and that he only received an email from a Legacy employee. He also denies ever logging into an account belonging to you or instructing anyone else to do so.

***Regarding manipulation of documents, false statements, and retaliatory subpoenas***, the Attorney Discipline Office agreed with Pollack's claim that his name was not on <u>those particular documents</u>, stating "Mr. Pollack was also not the lawyer that issued the subpoenas

11

to you, it was his co-counsel, Philip Ra[k]hunov." So, although Pollack was the main contact, listed on all the motions, and partner in the law firm with oversight for the lawsuit, apparently since Rakhunov actually issued those particular documents, the complaint should have been filed against Rakhunov.

Rakhunov makes yet another blatantly false statement in his Declaration:

"In making its findings, the Attorney Discipline Office relied in part on the fact that when granting her motion to quash, the state court made no findings that counsel manipulated documents or made false statements, made no findings of bad faith or that the purpose of serving the subpoenas was to embarrass or burden the plaintiff, and did not sanction Legacy Global or its counsel." (Rakhunov Dec. ¶8).

This is **false**. The Attorney Discipline Office actually stated:

    These are factual disputes properly addressed by the Court, not this Office. The Motion to Quash further alleges that the documents requested are not likely to lead to the discovery of admissible evidence, and that seeking information from your personal email account will cause embarrassment to you. The Court agreed with you and granted the Motion to Quash.

    The Subpoena Order goes on to grant the Motion to Quash, with **criticism** of Legacy's conduct, including, but not limited to, the findings that "Legacy's argument is not persuasive; in fact, it is the classic explication of a fishing expedition." (emphasis added).

In addition, as Rakhunov is well aware, and as mentioned above on page 3, because of her attorney's recommendation to keep it simple, for the Judge's benefit and to reduce cost, the final Motion to Quash submitted to the state court did not include the allegations of unauthorized access to her personal account, manipulation of documents, and false statements; therefore, it is inexcusable that Rakhunov and Griffin continue to make statements they know are fraudulent and meant to mislead this Court.

In submitting fabricated and manipulated court documents, and making knowingly false statements, Rakhunov and Pollack violated NH Rule of Professional Conduct 4.1. Truthfulness in Statements to Others:

In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person; or (b) fail to disclose a material fact to a third person when

12

disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.

Rakhunov submitted these manipulated documents to the state court and only he can provide information as to where these documents originated and who edited them, making the Pollack Solomon Duffy LLP Attorneys Necessary Witnesses to this Case and possibly co-conspirators.

***Undue Hardship:***

11- Griffin argues that "disqualification of counsel would pose an undue hardship". His argument again focuses on the "complexity of issues" with Mrs. St. Pierre's husband and their previous employer, Legacy Global Sports. However, by focusing on these issues, Pollack Solomon Duffy LLP has done their client, Griffin, a disservice because of their clear conflict of interest in deflecting from the facts of the Complaint with Mrs. St. Pierre. Griffin cites *McElroy v. Gaffney,* however, in this case, the attorneys were not accused of manipulating documents in order to help their client and themselves. As Griffin acknowledges, this case is in its early stages, therefore it would be easier for Griffin to retain new counsel at this point to familiarize themselves with the actual facts in the Complaint, rather than be influenced by the complexity of issues in her husband's case and other issues not relevant in this case.

Griffin also argues that "Legacy Global is a debtor in bankruptcy proceedings, unable to pay the defense costs at issue here", however, Legacy is not listed in the Complaint as a Defendant. Griffin's reliance on Legacy to pay his legal bills and his friendship with Pollack is one of the reasons he has been so emboldened to make false statements, commit perjury, and write a defamatory malicious book in which he thanks Barry Pollack "it was your

13

counsel and friendship that kept me going".  Griffin earned a high executive salary at Legacy with many benefits and has earned profits from his malicious book, so the Defendant's claim of financial hardship is absurd.  Conversely, Griffin has caused undue hardship on Mrs. St. Pierre, which is the main reason she has filed this Complaint *pro se*.

Based on the foregoing, pro se Plaintiff, Amy St. Pierre, respectfully requests that this Honorable Court disqualify the Defense Counsel Phillip Rakhunov and Pollack Solomon Duffy LLP from representing the Defendant in this case.

Dated: Jan 17, 2021                           Respectfully submitted,

                                               AMY ST. PIERRE, *pro se*

                                               By:  /s/ Amy St. Pierre_____
                                               Amy St. Pierre (*pro se* Plaintiff)
                                               3 Bradley Lane
                                               North Hampton, NH
                                               Tel: (856) 264-2401
                                               Email: amy.stpierre25@gmail.com


## CERTIFICATE OF SERVICE

The undersigned certifies that defendant Stephen J. Griffin is being served with a copy of this Motion by via Electronic Filing.

                                                /s/ Amy St. Pierre_____