UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| AMY ST. PIERRE, ) |  |
| ) |  |
| Plaintiff, ) |  |
| ) |  |
| v. ) | Civil Action No. 20-CV-1173-PB |
| ) |  |
| STEPHEN J. GRIFFIN, ) |  |
| ) |  |
| Defendant. ) |  |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant Stephen J. Griffin, by his counsel Pollack Solomon Duffy LLP, respectfully submits this reply memorandum in support of his motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

**I.     Plaintiff has Improperly Relied on Facts Not Appearing in Her Complaint and on Portions of Documents Referenced in Her Complaint that in Their Complete Context Contradict Her Claims.**

Plaintiff focuses in her opposition on stories absent from her Complaint and by complaining that Griffin has asked the Court to consider complete versions of documents on which she selectively and misleadingly relied in her Complaint. Examples of the latter include materials filed in a related action, referred to in the opening motion papers as the JSP Action.[1] Plaintiff argues that she is entitled to rely on "one statement" from a document referenced in her Complaint, incredibly admitting that "[s]he does not rely on the other statements in this document because they contradict the Plaintiff's allegations stated in the Complaint." (Opp. at 4.)

---

[1] *Legacy Global Sports, L.P. v. John St. Pierre*, et al., No. 218-2019-CV-00198 (Merrimack Cty.) (the "JSP Action"). Legacy Global Sports, L.P. is referred to as "Legacy Global."

Plaintiff misstates the applicable standard on a motion to dismiss, relying on a Sixth Circuit decision in which the court converted a motion to dismiss into a summary judgment motion because, unlike here, the moving party relied on a document that was indisputably "outside the pleadings." *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1105 (6th Cir. 2010). Indeed, Plaintiff's effort to avoid portions of documents on which she relies that undermine her allegations is precisely why courts may consider complete versions of such documents. *See Johnson v. People's United Bank, N.A.*, No. 16-CV-171-LM, 2016 WL 6651308, at *1 (D.N.H. Nov. 10, 2016) (court can properly consider entire document on which plaintiff's claim depends in evaluating a motion to dismiss); *Haft v. Eastland Fin. Corp.*, 772 F. Supp. 1315, 1319 n.7 (D.R.I. 1991) (on a motion to dismiss, considering complete versions of documents when excerpts of them appeared in the complaint); *In re State St. Cases*, No. CIV.A. 12-11770-NMG, 2013 WL 5508151, at *7 (D. Mass. Aug. 21, 2013) ("where Plaintiffs have attached incomplete documents to their pleadings, State Street has attached true and complete versions of those documents. … These documents are appropriate for consideration in deciding a motion to dismiss."), report and recommendation adopted in part, rejected in part on other grounds, No. CIV.A. 12-11770-NMG, 2013 WL 5508349 (D. Mass. Sept. 27, 2013); *Coyne v. Metabolix, Inc.*, 943 F. Supp. 2d 259, 262 (D. Mass. 2013) (granting motion to dismiss where plaintiff relied "too heavily on assumed facts, unalleged connections, and selective readings of the operative documents").

As explained in detail in Griffin's opening motion papers, the Court may consider complete versions of the documents on which plaintiff has relied, including Legacy Global's operative complaint in the JSP Action and the materials submitted by Legacy Global in opposition to plaintiff's motion to quash in that action. Taking those documents in their complete

form, the record makes clear that Plaintiff has failed to allege adequate *facts* from which to infer that the Google Drive account at issue belonged to any entity other than Legacy Global or that Griffin lacked authorized access to that account, let alone that when he used a Legacy Global email address to log in that he could have known he did so without authority. (*See* ECF No. 6-1 at 2-5.) Simply put, Plaintiff is not permitted to avoid the full context of documents on which she has relied.

**II.     Plaintiff Has Not Alleged Facts Supporting a Violation of the Stored Communications Act.**

In her opposition, Plaintiff tellingly seeks to distance herself from the allegation in paragraph 10 of her Complaint that her husband John St. Pierre transitioned administration access to Legacy Global's systems over to Griffin, which gave Griffin, as the new President and CEO, authorized access to Mr. St. Pierre's former Legacy Global email account "jstpierre@legacyglobalsports.com" and to the Google Drive account at issue.

As explained in Griffin's opening papers, paragraph 10 of the Complaint by itself requires dismissal of Count I. (*See* ECF No. 6-1 at 10.) The opposition fails to provide any reason to disregard the admissions in paragraph 10. Likewise, the documents referenced in the Complaint reflect nothing more than *authorized* access by Griffin to Legacy Global's Google Drive and the Legacy Global email address, jstpierre@legacyglobalsports.com. At most, Plaintiff suggests a possible inference that she also had access to that drive with her husband's permission when he was CEO, when she uploaded certain documents. Plaintiff has not alleged (nor can she) that Mr. St. Pierre's "@legacyglobalsports.com" email somehow did not belong to Legacy Global. Thus, taking as true the factual allegations of the Complaint, the only plausible conclusion is that Legacy Global authorized Griffin as its CEO to access the Google Drive at issue, which requires dismissal of Count I. As described in Griffin's opening papers, accessing or

forwarding a document in which Plaintiff claims an interest does violate the Stored Communications Act. Plaintiff has failed to make factual, rather than conclusory, allegations showing that Griffin accessed the Google Drive without authority or prevented Plaintiff's access. Plaintiff's claim under the Stored Communications Act should therefore be dismissed.

**III.     Plaintiff Cannot Maintain an Identity Fraud Claim, Particularly One that Arises from Someone Else's Identity.**

Plaintiff does not deny in her opposition that her identity fraud claim in Count II is premised *entirely* on Griffin's (authorized) access to Mr. St. Pierre's old Legacy Global email account. In addition, Plaintiff confirms that her claim is premised on New Hampshire's criminal identity fraud statute, RSA § 638:25 *et seq.*, under which Plaintiff claims "victim" status and suggests some unspecified financial losses. As explained in Griffin's opening papers, however, no common law identity fraud cause of action exists in New Hampshire and no private cause of action exists under New Hampshire's identity theft statute or its federal counterpart. (ECF 6-1 at 11-13.) Plaintiff does not even attempt to refute this argument, which by itself requires dismissal of Count II.

In addition, in her opposition, Plaintiff purports to offer a convoluted explanation for why Legacy Global's CEO would not have authority to access a Google Drive and email account belonging to an "@legacyglobalsports.com" domain and provides speculation about how activation/deactivation of accounts and file transfers worked at Legacy Global. (*See* Opp. at 8.) These factual assertions are neither relevant to the analysis, nor even alleged in the Complaint. Hence, these arguments beyond the pleadings should be disregarded and her claim dismissed.

**IV.     Plaintiff Has Failed to State a Claim for Invasion of Privacy.**

As explained in Griffin's opening papers, Ms. St. Pierre's invasion of privacy claim in Count III is premised on her incorrect assumption that her access to certain documents on Legacy Global's Google Drive somehow equates to making the entire drive belong to her rather than to Legacy Global. (ECF 6-1 at 13-14.) Plaintiff cannot rely, however, on conclusory allegations of the Complaint to the contrary, particularly where documents on which Plaintiff relies contradict her claim.

In addition, the caselaw on which Plaintiff relies in her opposition is inapposite because it pertains to the inapplicable tort of intrusion upon one's solitude or seclusion through either physical invasion or eavesdropping upon private communications, through means such as wiretapping, to access intimate details of life. *See Hamberger v. Eastman*, 106 N.H. 107, 111 (1964). Plaintiff fails to come remotely close to alleging that Griffin's access to the Google Drive at issue, even if some documents on that drive somehow belonged to Plaintiff, somehow implicated any intimate details of Plaintiff's life. Indeed, Plaintiff has failed even to identify any particular document observed by Griffin in which she held a privacy interest. As explained in the opening motion papers, the only documents that Plaintiff alleges Griffin accessed pertain to the very activities underlying Legacy Global's claims in the JSP Action about Mr. St. Pierre using Legacy Global's resources for his own competitive advantage at a nearby hockey business. (*See* ECF 6-1 at 5, 24.)

With respect to a text message that Legacy Global attached to a pleading in the JSP Action, Plaintiff does not even address the fact that New Hampshire law protects from liability statements made in the course of judicial proceedings. *Carney v. Town of Weare*, No. 15-CV-291-LM, 2017 WL 680384, at *14 (D.N.H. Feb. 21, 2017) (quoting *Provencher v. Buzzell–*

5

*Plourde Associates*, 142 N.H. 848, 853 (1998)). In any event, Plaintiff does not allege that Griffin somehow obtained that text message other than from the other participant or in any manner that invaded her privacy. She has not, and cannot in good faith, claim that the text message was obtained from a Google Drive. Hence, her invasion of privacy claim should be dismissed.

**V.     The Opposition Confirms Fatal Flaws Underlying Plaintiff's Retaliation and Interference Claim in Count IV.**

In her opposition, Plaintiff goes well beyond the vague allegations in the Complaint arguing that Count IV is premised on New Hampshire's discrimination statute, RSA 354-A:1 *et seq.*, and citing to guidance from the Equal Employment Opportunity Commission to argue that she may maintain a claim for retaliation arising out of the termination of her *husband's* employment with Legacy Global. Plaintiff's reliance on employment laws and guidance is, however, deeply flawed and cannot save Count IV. Critically, Plaintiff does not allege that Griffin or even Legacy Global ever employed her. Nor could Griffin, as Legacy Global's CEO, interfere with Legacy Global's employment relationships as a matter of New Hampshire law. *See Balsamo v. Univ. Sys. of New Hampshire*, No. 10-CV-500-PB, 2011 WL 4566111, at *5 (D.N.H. Sept. 30, 2011) (individual defendants acting within the scope of their authority as agents of the employer cannot be liable for tortiously interfering with a contract between plaintiff and the employer).

Moreover, Count IV, while vague, is not even alleged to arise from Mr. St. Pierre's termination, but rather is premised on Legacy Global's privileged litigation activity in the JSP Action, making employment laws even less connected to this matter. In any event, nothing in Plaintiff's Complaint comes close to alleging *discrimination* based on age, sex, gender identity, race, creed, color, marital status, familial status, physical or mental disability, national origin, or

6

sexual orientation, which RSA 354-A:1 is designed to protect. *See* RSA 354-A:1. At most, Griffin worked for a company that, during litigation against Mr. St. Pierre, served a subpoena on Ms. St. Pierre seeking proof that her husband used Legacy Global's resources for competitive purposes or otherwise for his benefit. Ms. St. Pierre's arguments suggest that her husband used Legacy Global's resources for another business with which they were involved. At any rate, Plaintiff's invocation in her opposition of New Hampshire's discrimination laws (which are not raised in the Complaint) is misplaced and should be disregarded.

In addition, Plaintiff cites no authority to overcome the protection in New Hampshire from liability over statements made in the course of judicial proceedings, so long as such statements are pertinent or relevant to the proceedings. The mere fact that the court in the JSP Action ruled in Plaintiff's favor, *on a single discovery motion*, does not overcome the plain fact that Legacy Global's assertions about Plaintiff's conduct in the JSP Action were pertinent and relevant to Legacy Global's claims that Mr. St. Pierre engaged in improper competitive activities with respect to the subject matter of the very files that Plaintiff accessed, modified and deleted. Her claim for retaliation and interference should be dismissed.

**VI.    Plaintiff's Defamation Claim in Count V Lacks Sufficient Factual Support.**

Plaintiff mis-cites and misplaces reliance on incorrect legal standards. On page 13 of her opposition, Plaintiff incorrectly represents that the United States Supreme Court issued the *Bindrim v. Mitchell* decision, when in reality a mid-level California appellate court rendered that decision, from which other appellate courts and the California Supreme Court have departed for decades. The United States Supreme Court merely denied *certiorari* in that matter, yet Plaintiff provides only the Supreme Court citation. In any event, the *Bindrim* case did not involve an express disclaimer in a book identifying it as fiction, as is the situation here. Given the express

disclaimer here, Plaintiff has failed to make adequate *factual* allegations, as opposed to conclusions, from which to infer as did the *Bindrim* court that a defendant "in fact entertained serious doubts as to the truth of his publication." *Bindrim v. Mitchell*, 92 Cal. App. 3d 61, 73, 155 Cal. Rptr. 29 (Ct. App. 1979).

Indeed, as repeatedly made clear since the *Bindrim* ruling, while merely changing a name may not insulate a party from defamation, "[f[ictional works have no obligation to the truth." *Sarver v. Hurt Locker LLC*, No. 2:10-CV-09034-JHN, 2011 WL 11574477, at *8-9 (C.D. Cal. Oct. 13, 2011), *aff'd sub nom. Sarver v. Chartier*, 813 F.3d 891 (9th Cir. 2016). To the extent that the split court in *Bindrim* could be read to suggest that fiction could support a defamation claim, many courts have made clear that is not the case. *See*, *e.g.*, *McCoy v. Hearst Corp.*, 42 Cal. 3d 835, 727 P.2d 711 (1986).

In her Complaint, Plaintiff has failed to plead any facts to overcome the protections afforded to authors under the First Amendment who write fiction based loosely on real events, which happens all the time. She fails to allege facts that could warrant a reasonable inference that Griffin's fictional book is anything more than a mere protected exaggeration or caricature using different or mixed names and characters, even if partially based on his own life experiences. Instead, in her opposition, Plaintiff goes beyond the factual allegations in the Complaint to speculate about the state of mind of former Legacy Global employees or "[a]nyone who knows Ms. St. Pierre," to conclude that the book is non-fiction and of and concerning the Plaintiff. She makes unpled subjective interpretive allegations about excerpts of the book that she has not even provided to the Court. (*See* Opp. at 13.) Even if such conclusory assertions were considered by the Court, Plaintiff has still failed to provide sufficient facts to allege that a reasonable reader would construe the book as being of and concerning the Plaintiff. *See Sarver*, 2011 WL

8

11574477, at *8-9 (holding that where the movie character's name was not the same as plaintiff's and the beginning of the film contains a specific disclaimer that the film is a work of fiction, "the movie is sufficiently transformative such that Plaintiff's defamation claim is barred"). As explained in Griffin's opening papers, his novel does not reference Plaintiff, her husband or Legacy Global, and contains a specific disclaimer that "[t]he story, all names, characters, and incidents portrayed in this production are fictitious." All that Plaintiff has alleged to try and insert herself as a character in Griffin's book is that, after seeing references to the book on LinkedIn, Ms. St. Pierre also noticed that some unspecified "people" were viewing her husband's profile and "those same people were viewing her profile." (Cmplt. ¶ 31.) Such bare factual allegations are not enough to undermine such important First Amendment protections for authors. For these reasons, the defamation claim in Count V should be dismissed.

Finally, Plaintiff appears to concede, at least tacitly, that she may not maintain a defamation claim based on statements in the book that are about the character "Devlin" (whom she identifies as her husband), that the character with whom Plaintiff identifies "retired," that this character is "sarcastically" described as "a classy lady" with "nerve or ignorance," or that the Devlin character allegedly stated that his wife yelled at him and that things were not "good at home." (*See* Opp. at 14.) Instead, Plaintiff focuses on the alleged statement that the character in the book with whom she identifies "thought it was appropriate to access the company's Google Drive and delete files," claiming this constitutes an accusation of an illegal act in Plaintiff's profession, but without any facts to support such an assertion. As explained in detail in Griffin's opening papers, even if such a statement were deemed to be about Plaintiff, an accusation of deleting files falls well short of being defamatory by holding Plaintiff up to "contempt, hatred, scorn or ridicule, or tend to impair the plaintiff's standing in the community." *Boyle v. Dwyer*,

9

172 N.H. 548, 557 (2019). Indeed, in her opposition, Plaintiff still defends her manipulation of files on the Legacy Global Google Drive, without a meaningful rebuttal of the meaning of Google records reflecting her deletion of files, as alleged in the JSP Action. (*See* Exhibit B at B_16-B_50.) She simply argues that her access to Legacy Global's Google Drive and manipulation of files on it were justifiable, thereby indicating that her actions were not *malum per se*, but rather at most *malum prohibitive*, and hardly the backdrop for a defamation claim.

Plaintiff's defamation claim thus fails.

## Conclusion

Based on the foregoing and on his opening papers, Defendant Griffin respectfully requests that the Court dismiss the Complaint in its entirety.

Dated:   January 18, 2021                                  Respectfully submitted,

                                                           STEPHEN J. GRIFFIN,

                                                     By:   /s/ Phillip Rakhunov
                                                           Phillip Rakhunov (#17153)
                                                           POLLACK SOLOMON DUFFY LLP
                                                           101 Huntington Ave., Ste 530
                                                           Boston, MA 02199
                                                           prakhunov@psdfirm.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 18, 2021, plaintiff Amy St. Pierre is being served with a copy of this Motion by via Electronic Filing as an authorized pro se user (see ECF No. 4 and 12/24/2020 Order).

/s/ Phillip Rakhunov