**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**Amy St. Pierre**

v.                                    Case No. 20-cv-1173-PB
                                       Opinion No. 2021 DNH 157
**Stephen J. Griffin**

**MEMORANDUM AND ORDER**

This case stems from a business dispute between Stephen
Griffin and John St. Pierre that is playing out in a separate
state court case.  Mr. St. Pierre's wife, Amy, contends in the
current action that Griffin injured her during his battle with
her husband by improperly accessing documents on her Google
Drive, retaliating against her in the state court case, and
defaming her in a book he wrote.  Her complaint asserts claims
for (1) Stored Communications Act ("SCA") violations; (2)
identity fraud; (3) invasion of privacy; (4) retaliation; and
(5) defamation.  Griffin, having removed Mrs. St. Pierre's suit
to federal court, now moves to dismiss her complaint.  After
evaluating the parties' arguments, I dismiss the complaint.

## I.  <u>BACKGROUND</u>[1]

The parties' acrimony dates to at least 2018, when Mr. St. Pierre was terminated as CEO of Legacy Global Sports and replaced by Griffin.  <u>See</u> Compl., Doc. No. 1-1 ¶¶ 7-9.  What followed were allegations of computer hacking, a lawsuit in state court, and a tell-all book -- all of which inform various elements of Mrs. St. Pierre's complaint.

### 1.  <u>Mrs. St. Pierre's Google Drive</u>

During his time as CEO of Legacy, Mr. St. Pierre used a corporate email address and an associated Google account for both business and personal matters.  <u>Id.</u> ¶ 8.  Mrs. St. Pierre maintained her own email address and Google account and used them to share certain documents stored on her Google Drive with her husband's corporate Google account.  <u>Id.</u> ¶ 8.

Legacy retained control of Mr. St. Pierre's corporate Google account after he was fired.  Griffin subsequently used that control to access Mrs. St. Pierre's shared documents.  <u>Id.</u> ¶¶ 12-13.  When Mrs. St. Pierre realized that Griffin had gained access to the shared documents, she deleted them and later filed

---

[1] The facts recounted are drawn from plaintiffs' complaint, public records, documents central to the disputed claims, and "documents sufficiently referred to in the complaint."  <u>See</u> <u>Freeman v. Town of Hudson</u>, 714 F.3d 29, 36 (1st Cir. 2013) (quoting <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993)).

criminal complaints against Griffin with the FBI and a local
police department.  Id. ¶¶ 16-17.

### 2.   Litigation Behavior

Legacy sued Mr. St. Pierre after he was terminated for
improperly using corporate resources in an external competitive
venture.  Id. ¶ 9.  Mrs. St. Pierre is not a party to that
litigation.  Even so, she alleges that Griffin retaliated
against her after she submitted her criminal complaints to the
police and FBI.  Id. ¶¶ 18-20.  She says that Griffin directed
his attorneys to "issue two subpoenas for Mrs. St. Pierre's
personal email and private information."  Id. ¶ 21.  A state
court judge quashed both subpoenas, id. ¶ 22, and his decision
was reaffirmed after Legacy's attorneys asked a second judge to
reconsider, id. ¶ 23, 28.

### 3.   Griffin's Book

Griffin published a book, "Front Row Seat: Greed and
Corruption in a Youth Sports Company," in November 2020.  Id.
¶ 30.  Amazon.com categorized the book under "Biographies of
White Collar Crimes" and "White Collar Crimes True Accounts."
Id.  Griffin referenced Mrs. St. Pierre a handful of times in
the book.  Describing her role in the disputed events
surrounding Mr. St. Pierre's termination, Griffin wrote that he
"couldn't fathom the nerve or ignorance of this woman.  Her
husband was terminated by the company and was in the midst of a

messy legal battle, yet she thought it was appropriate to access the company's Google Drive and delete files? Give me a break." Id.  He also sarcastically referred to Mrs. St. Pierre as "a classy lady."  Id.  Griffin promoted the book on LinkedIn, a social media platform focused on employment history and opportunities, leading Mrs. St. Pierre to delete her profile on the site.  Id. ¶ 31.

Griffin also reported in the book that Mr. St. Pierre "told [him]" about "an 'awful' night dealing with his wife," that "she was yelling at him and he didn't want the kids to hear it from their bedrooms," and that "things were not good between him and his wife."  Id. ¶ 33.  Griffin also wrote that Mrs. St. Pierre was "retired" when she was, in fact, still working.  Id. ¶ 13.

## II.  STANDARD OF REVIEW

To overcome a motion to dismiss under Rule 12(b)(6), a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Under this plausibility standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  This pleading requirement demands "more than a sheer possibility that [the] defendant has acted unlawfully" or "facts that are merely

consistent with [the] defendant's liability." Id.  Although the
complaint need not set forth detailed factual allegations, it
must provide "more than an unadorned, the-defendant-unlawfully-
harmed-me accusation." Id.

In evaluating the pleadings, I disregard any conclusory
statements in the complaint and credit as true all non-
conclusory factual allegations and the reasonable inferences
drawn from those allegations to determine whether the claim is
plausible.  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12
(1st Cir. 2011).  I "may also consider 'facts subject to
judicial notice, implications from documents incorporated into
the complaint, and concessions in the complainant's response to
the motion to dismiss.'" Breiding v. Eversource Energy, 939
F.3d 47, 49 (1st Cir. 2019) (quoting Arturet-Vélez v. R.J.
Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005)).

### III.  **ANALYSIS**

Mrs. St. Pierre's claims fall neatly into three categories.
Her SCA, identity fraud, and invasion of privacy claims concern
Griffin's activity on her Google Drive.  Her retaliation claim
focuses on Griffin's litigation tactics in the related state
court case, and her defamation claim is based on statements
Griffin made about her in his book.

**A.**   **Google Drive Claims**

Mrs. St. Pierre's SCA, identity fraud, and invasion of privacy claims are all directed at Griffin's use of her husband's corporate Google account to access documents on Mrs. St. Pierre's Google Drive.  I take up Griffin's challenge to each of these claims in turn.

1.   Stored Communications Act Claims

The SCA is a criminal statute that can also support a private civil action for damages.  18 U.S.C. §§ 2701, 2707.  It provides in pertinent part that a person commits a crime if he:

> (1)   intentionally accesses without authorization a facility through which an electronic communication service is provided; or
>
> (2)   intentionally exceeds an authorization to access that facility;
>
>    and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2701(a).  Mrs. St. Pierre asserts that Griffin violated this provision by using her husband's corporate Google account to access the documents that are the subject of her complaint.

I agree with Griffin that Mrs. St. Pierre's SCA claim must be dismissed.  Mrs. St. Pierre concedes: (1) that she shared access to the documents Griffin accessed with her husband's

corporate Google account, Compl., Doc. No. 1-1 ¶ 12; (2) she
continued to share access to the documents after her husband was
terminated, id. ¶ 21; and (3) the account was a corporate asset
that Legacy was entitled to control after her husband was fired,
id. ¶ 10.  Although she claims that Griffin committed identity
fraud by continuing to use her husband's profile in connection
with his corporate Gmail address, she fails to claim that this
alleged deception played a role in her decision to continue to
share the documents with the account after Mr. St. Pierre was
fired.  Given these circumstances, Mrs. St. Pierre is in no
position to claim that Griffin accessed the shared documents
without authorization.  See § 2701(a)(1).

Although Mrs. St. Pierre does not press the point, she also
lacks a plausible claim that Griffin exceeded any authorization
she gave him to access the documents by copying them,
distributing them, or using them for another improper purpose.
When access to electronically stored documents has been granted,
the SCA is not violated even if the person who was granted
access later uses the documents for an unauthorized purpose.
See TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo, 260 F.
Supp. 3d 154, 163 (D.P.R. 2016); Sherman & Co. v. Salton Maxim
Housewares, Inc., 94 F. Supp. 2d 817, 821 (E.D. Mich. 2000);
see also Van Buren v. United States, 141 S. Ct. 1648, 1655

(2021) (construing similar language in the Computer Fraud and
Abuse Act).

2.   Identity Fraud Claim

Mrs. St. Pierre asserts that Griffin is liable for identity
fraud because he used her husband's corporate Google account to
access documents on her Google Drive.  She bases her claim on
N.H. Rev. Stat. Ann. § 638:26, which makes it a crime to "pose[]
as another person with the purpose to defraud . . . ."

As Griffin notes, § 638:26 is a criminal statute.  It does
not provide a private civil right of action, and St. Pierre has
failed to point to any relevant legislative history or
controlling case law that allows a plaintiff to base a civil
claim on this provision.  Accordingly, I agree that the claim
must be dismissed.  See Menard v. Tyndall, 2018 WL 5839394, at
*1 (N.H. Sup. Ct. Oct. 26, 2018); Snierson v. Scruton, 145 N.H.
73, 79 (2000); Marquay v. Eno, 139 N.H. 708, 715–16 (1995).

3.   Invasion of Privacy Claims

Mrs. St. Pierre accuses Griffin of invading her privacy by
accessing certain files on her Google Drive that she had shared
with her husband's corporate Google account.  Although she
generally claims that she stored "pictures and information about
. . . her family, financials, health records, and other personal
matters" on her Google Drive, Compl., Doc. No. 1-1 ¶ 12, she
does not allege that she shared any sensitive personal files

8

with her husband's corporate account.  Instead, the only two files she specifically states were shared and later accessed by Griffin were "Seacoast Sports Village.docx" and "Seacoast Sports PP.pptx," neither of which on its face appears to contain sensitive personal information.  Compl., Doc. No. 1-1 ¶ 12; Pl's Reply, Doc. No. 11 ¶ 4.[2]

Based on these alleged facts, Mrs. St. Pierre claims that Griffin "invaded [her] privacy when he accessed her personal account and intentionally intruded upon her private affairs contained in her account."  Compl., Doc. No. 1-1 ¶ 50.  Reading her complaint generously, I construe Mrs. St. Pierre's complaint to assert a claim for invasion of privacy by "intrusion upon physical and mental solitude or seclusion."  See, e.g., Karch v. BayBank FSB, 147 N.H. 525, 534 (2002) (describing intrusion upon seclusion claim).[3]

---

[2] Mrs. St. Pierre also attached a screen shot of her husband's corporate Google Drive to her complaint.  Compl., Doc. No. 1-1 Ex. 4.  Mrs. St. Pierre says that she shared these files with her husband, but she does not allege that Griffin ever accessed the files, nor does she assert that any of those files contained sensitive personal information.  See id. ¶ 26.  Instead, she confirms that the files related to the administration of an ice hockey rink that the St. Pierres were involved with.  Id.

[3] I do not understand Mrs. St. Pierre to allege an invasion of privacy by public disclosure of private facts claim, see Karch, 147 N.H. at 535 (outlining elements of the tort), as she does not claim that either of the documents that Griffin shared was "intimate" as contemplated by the tort, see id.; see also Restatement (Second) of Torts § 652D cmt. b (1977) (explaining that relevant disclosures involve "intimate details . . . spread

A person who intentionally "intru[des], upon a plaintiff's physical and mental solitude or seclusion" is liable for intrusion upon seclusion when the intrusion is "offensive." Karch, 147 N.H. at 534; see also Restatement (Second) of Torts § 652B.  An intrusion will be insufficiently offensive to support an intrusion upon seclusion claim unless it exceeds "the limits of decency" such that the defendant "should have realized that" it would upset "persons of ordinary sensibilities." Karch, 147 N.H. at 534-35 (quoting Fischer v. Hooper, 143 N.H. 585, 590 (1999)).[4]  The privacy interest intruded upon must be "something secret, secluded or private pertaining to the plaintiff." Fischer, 143 N.H. at 590 (quoting Hamberger v. Eastman, 106 N.H. 107, 110 (1964)).

When considering whether an item is "secret, secluded, or private," the New Hampshire Supreme Court "determine[s] whether

---

before the public gaze in a manner highly offensive to the ordinary reasonable man").  And her complaint does not allege either of the remaining invasion of privacy torts: placing her in a false light in the public eye or appropriation of her name or likeness.  See Mansfield v. Arsenault, No. 2020-0100, 2021 WL 72370, at *1-2 (N.H. Jan. 8, 2021) (outlining elements of the torts); Compl., Doc. No. 1-1 ¶ 50.

[4] In Karch, the New Hampshire Supreme Court explained that Fischer was "consistent with the Restatement (Second) of Torts § 652B" with respect to how "offensive" a defendant's intrusion must be before it is actionable.  147 N.H. at 535.  Thus, even though the Restatement requires "highly offensive" conduct, I construe the New Hampshire Supreme Court's requirement of "offensive" conduct to be materially the same.

a person has a reasonable expectation of privacy in [it]."  See
Remsburg v. Docusearch, Inc., 149 N.H. 148, 156 (2003) (citing
Fischer, 143 N.H. at 589-90).

Whether there is a reasonable expectation of privacy can be
a question for a factfinder, but it "becomes a question of law
if reasonable persons can draw only one conclusion from the
evidence."  Remsburg, 149 N.H. at 156.  Factors that can be
considered include "the degree of intrusion, the context,
conduct and circumstances surrounding the intrusion as well as
the intruder's motives and objectives, the setting into which he
intrudes, and the expectations of those whose privacy is
invaded."  Id. (quotation omitted).

Although Griffin was never Mrs. St. Pierre's employer,
their conflict centers on his access to documents she created
and shared in a workplace setting.  Several courts have
considered the relevant privacy interests at stake when
employers access personal emails or files stored on company-
owned devices or accounts.  Those courts have concluded that
employees' privacy rights are often diminished but are not
necessarily expunged in the workplace.

For example, in Clark v. Teamsters Local Union 651, an
employer accessed a former employee's Dropbox[5] account "to search

---

[5] Dropbox is analogous to Google Drive; both are file storage and
collaboration services.

for work-related files." 349 F. Supp. 3d 605, 621 (E.D. Ky. 2018). The employee had "stored a mixture of work-related and personal documents" in the account and "tied [it] to her work e-mail." Id. at 622. The employer accessed the Dropbox account after using the "lost password" option, which sent a new password to the work email to which the employer had access. Id. at 621. The court first noted that in some settings, "district courts have held that an employee does not have a reasonable expectation of privacy in e-mails sent or received using a work e-mail address." Id. at 622 (collecting cases). And if an employee does not have a reasonable expectation of privacy in her work-related emails, then "it logically follows that [she] do[es] not have a reasonable expectation of privacy in a Dropbox account that is tied to [her] work e-mail." Id. Further, the court found that the intrusion was not offensive because the employer "had a legitimate business purpose to recover documents related to [its] operations." Id.

A district court in New Jersey reached a similar conclusion in Christie v. Nat'l Inst. for Newman Stud., No. CV 16-6572 (FLW), 2019 WL 1916204 (D.N.J. Apr. 30, 2019). The employer in Christie reviewed some of the employee's personal emails that were being automatically downloaded to a company desktop email application containing his work emails. Id. at *11. The employer never logged into the employee's personal email

account; she merely viewed emails that were passively downloaded
to his work desktop.  Id. at *8.  The court saw this intrusion
as "limited" and considered several factors to determine whether
there was a reasonable expectation of privacy in the relevant
emails.  Id. at *12.  It noted that it was the employee who
decided to use an email program that mixed his personal and
business email addresses.  Id.  It also identified that the
employer owned the computer, "was granted the authorization to
access the [employee's work] desktop," only reviewed a few
emails, and was only searching for emails it had a legitimate
business purpose to review.  Id.  Finding that there was no
reasonable expectation of privacy in personal emails in these
circumstances, the court held that any invasion was not
sufficiently offensive.  Id. at *13.

     Even when using an employer-provided account, employees can
retain some expectation of privacy in their files or messages,
such as where the employer condones personal use -- or the files
are marked as personal or confidential.  See Mintz v. Mark
Bartelstein & Assocs., 885 F. Supp. 2d 987, 990, 997 (C.D. Cal.
2012) (finding that an employee retained a "limited expectation
of privacy" in a phone's text messages, even when the employer
"owned the account and paid all the bills" because the employer
"was aware of and permitted [him] to make personal calls");
Convertino v. United States DOJ, 674 F. Supp. 2d 97, 108 (D.D.C.

2009) (holding that an employee who emails his lawyer through an employer-provided account can "reasonably expect[] his e-mails . . . to remain confidential").

Mrs. St. Pierre alleges that Griffin's actions were sufficiently offensive because he "target[ed] [her], posing as her husband."  Compl., Doc. No. 1-1 ¶ 51.  But nowhere does she say that Griffin ever induced her into believing that he was, in fact, Mr. St. Pierre, or that she had communicated with Mr. St. Pierre's Legacy account after Griffin took over.  She only claims that Griffin "accessed" her account "for several months." Id. ¶ 25.  The complaint only pleads with sufficient specificity that Griffin accessed the two files Mrs. St. Pierre shared with her husband's account.  See Christie, 2019 WL 1916204 *12 n.15 (explaining that plaintiffs must identify the "specific" documents the defendant supposedly read).  So her claim rests on whether she had a reasonable expectation of privacy in those files and whether Griffin went "beyond the limits of decency" in viewing them.  See Remsburg, 149 N.H. at 156.

Even construing the complaint generously, I determine that Mrs. St. Pierre did not have a reasonable expectation of privacy in the documents she alleges were accessed and shared by Griffin.  She concedes that she shared the documents with a corporate Google account and continued to share them after her husband transferred that account to Griffin.  She also made no

14

attempts to protect or encrypt the documents should her husband
lose access to his account, nor did she give the files names
that would flag that they were not business-related.  Griffin,
for his part, having terminated Mr. St. Pierre for allegedly
using Legacy resources in a competing venture, had a business
purpose for examining Mr. St. Pierre's files and is not alleged
to have induced Mrs. St. Pierre into believing he was her
husband.  Therefore, the documents were not "secret, secluded,
or private" such that Mrs. St. Pierre had a reasonable
expectation of privacy in them.  See Remsburg, 149 N.H. at 156.
Nor can any intrusion by Griffin in accessing the documents be
seen as "beyond the limits of decency" to people of "ordinary
sensibilities."  See id.  Accordingly, Mrs. St. Pierre's
invasion of privacy claim must be dismissed.

**B.   Litigation Activity Claims**

Griffin and Mr. St. Pierre are presently locked in an
acrimonious state court litigation.  While not a party to that
case, Mrs. St. Pierre received two subpoenas from Griffin's
attorneys.  One was for all her emails for the prior four years,
and the other for more information related to her computer and
cell phones.  Compl., Doc. No. 1-1 ¶ 21.  Mrs. St. Pierre
successfully had the subpoenas quashed in state court.  Id.
¶¶ 22-28.  The court described the subpoenas as "defective" and
"the classic explanation of a fishing expedition."  Id. ¶ 28.

Mrs. St. Pierre spends considerable time in the complaint explaining how Legacy's attempts to subpoena her were "intentionally deceitful," id. ¶ 23, and "fraudulent," id. ¶¶ 24, 26.  Despite her success in quashing the subpoenas, Mrs. St. Pierre now brings a claim that Griffin retaliated against her in the state court case after she reported him to law enforcement.  Id. ¶¶ 53-55.

Mrs. St. Pierre's complaint fails for two reasons.  First, she has failed to tie her allegations to a specific cause of action.  New Hampshire does not recognize a general tort for retaliation outside the workplace.  Cf. U.S. Equal Emp. Opportunity Comm'n v. Fred Fuller Oil Co., 168 N.H. 606, 609 (2016).

Next, to the extent that her complaint relies on Griffin's aggressive litigation tactics, it cannot survive under New Hampshire law, which immunizes "[s]tatements made in the course of judicial proceedings" from civil suit "if the statements are pertinent or relevant to the proceedings."  Lath v. City of Manchester, NH, 2017 DNH 057, 2018 WL 1718291, at *2 (D.N.H. Apr. 9, 2018) (quoting Provencher v. Buzzell-Plourde Assocs., 142 N.H. 848, 853 (1998)).  The appropriate venue for Mrs. St. Pierre to pursue redress for expenses related to the state court litigation is before the state court.  See Emerson v. Town of Stratford, 139 N.H. 629, 632 (1995) (explaining that "the trial

court is in the best position to decide whether a party's claim constitutes bad faith or is patently unreasonable" (quotation omitted)).

**C.     Defamation Claim**

Mrs. St. Pierre bases her defamation claim on statements Griffin made about her in his book.[6]  I focus here on certain statements Griffin made about the state of her marriage, as the other statements are either not defamatory on their face or are mere nonactionable statements of opinion.[7]

Griffin's most concerning false statements are his allegedly false claims that Mr. St. Pierre had told Griffin that "he had an 'awful' night dealing with his wife" where "she was yelling at him and he didn't want the kids to hear it from their

---

[6] Mrs. St. Pierre also cites several allegedly defamatory statements Griffin made about her husband.  She cannot ground her defamation claim on these statements, however, because they are not "'of and concerning' [her], a requirement for showing defamation."  Flotech, Inc. v. E.I. Du Pont de Nemours & Co., 814 F.2d 775, 778 n.3 (1st Cir. 1987) (quoting Rosenblatt v. Baer, 383 U.S. 75, 81-82 (1966)).

[7] For example, Griffin's statement that Mrs. St. Pierre had "just retired" is not defamatory on its face and his statements that she was a "classy lady" (intended sarcastically) and "ignorant" are quintessential examples of non-defamatory "opinion" statements.  See Restatement (Second) of Torts § 559 cmt. e. (describing defamation standard); Automated Transactions, LLC v. Am. Bankers Ass'n, 172 N.H. 528, 532-33 (2019) (opinion statements).

bedrooms," and that "things are not good between him and his wife."  Compl., Doc. No. 1-1 ¶ 33.[8]

New Hampshire law dictates that a statement is defamatory if it "hold[s] the plaintiff up to contempt, hatred, scorn or ridicule, or tend[s] to impair the plaintiff's standing in the community."  Boyle v. Dwyer, 172 N.H. 548, 554 (2019).  Although I do not doubt that false statements about marital discord can in some circumstances support a defamation claim, the statements Mrs. St. Pierre cites are simply not sufficiently damaging to

---

[8] Another statement that could have been understood as a non-opinion assertion is that Mrs. St. Pierre "thought it was appropriate to access the company's Google Drive and delete files."  Compl., Doc. No. 1-1 ¶ 30.  While this statement might, at first blush, be construed as a defamatory accusation of criminal behavior, the context surrounding it (which is incorporated into the complaint by reference) makes clear that Mrs. St. Pierre "had been provided access to certain folders on the company's Google Drive."  Stephen Griffin, Front Row Seat: Greed and Corruption in a Youth Sports Company (2020) (e-book). To echo my earlier summary about when the SCA applies, I do not understand this statement, seen in context, as an accusation of criminal conduct.

support a defamation claim.[9]  Accordingly, her defamation claim

also fails to state a viable claim for relief.[10]

---

[9] Three-quarters of a century ago, the D.C. Circuit wrote in
dicta that "[a] mere assertion of marital discord is libelous."
Thackrey v. Patterson, 157 F.2d 614, 615 (D.C. Cir. 1946).  This
language was later cited a handful of times but has not been
relied on in over four decades.  See Phillips v. Evening Star
Newspaper Co., 424 A.2d 78, 83 (D.C. 1980).  Defamation is
always contextual, and when "determining the defamatory
character of language, the meaning of which is clear . . . the
current standards of moral and social conduct" in the relevant
community is an "important factor."  Restatement (Second) of
Torts § 614 cmt. d.  Given the ever-evolving nature of social
change, what was defamatory "to one person at a given time and
place" may no longer "be derogatory of another person at a
different time or in a different place."  Id.  I am confident
that the public scorn associated with common "marital discord"
is significantly less than it was seventy-five years ago.

[10] In dismissing Mrs. St. Pierre's defamation claim, I attach no
weight to Griffin's argument that his statements cannot possibly
be defamatory because he did not use Mrs. St. Pierre's name and
included a disclaimer in the book that it is a work of fiction.
Such arguments are bound to fail whenever, as is the case here,
the details included in the book "would identify [the plaintiff]
unmistakably to anyone who has known [her] well for a long time
(members of [her] famil[y] for example) . . . and no more is
required for liability . . . in defamation law . . . ."  Haynes
v. Alfred A. Knopf, Inc., 8 F.3d 1222, 1223 (7th Cir. 1993)
(citing Baer, 383 U.S. at 79-87).

## IV.   <u>CONCLUSION</u>

Defendants' motion to dismiss (Doc. No. 6) is granted.

SO ORDERED.

<u>/s/ Paul J. Barbadoro</u>
Paul J. Barbadoro
United States District Judge

September 30, 2021

cc:  Amy St. Pierre
     Phillip Rakhunov, Esq.